# No. 22-2750

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

BORIS KOTLYARSKY, an individual,

*Plaintiff-Appellant,*

-against-

UNITED STATES DEPARTMENT OF JUSTICE, a Governmental Federal Agency, PREET BHARARA, in his official capacity, JAMES COMEY, in his official capacity,

*Defendants-Appellees.*

*On Appeal from the September 30, 2022 Order of the*

*United States District Court for the Southern District of New York*

*District Court Case No.: 1:20-cv-09230-PGG-SDA*

---

### APPENDIX

---

Boris Kotlyarsky
*Pro Se*
1900 East 22nd Street
Brooklyn, New York 11229
917-969-9984

# TABLE OF CONTENTS

DOCKET ENTRIES ……………………………………………………………..1

COMPLAINT……………………………………..............................................7

MOTION TO DISMISS………………………………………………....29

DECISION AND ORDER…………………………………………….133

JUDGMENT…………………………………………………………...145

NOTICE OF APPEAL……………………………………………….....146

DECLARATION OF OLEG MITNIK……………………………….....148

OLEG MITNIK E-MAIL…………………………………………….....153

PRESENTENCE INVESTIGATION REPORT………………………….154

FBI RECORDING TRANSCRIPTION…………………………………156

ANATOLY POTIK'S NOLLE PROSEQUI………………………….....159

DISMISSAL OF ANATOLY POTIK'S CRIMINAL CASE……………....163

CRIMINAL COMPLAINT AGAINST ANATOLY POTIK……………....165

CLOSED,APPEAL,CASREF,ECF

# U.S. District Court
## Southern District of New York (Foley Square)
## CIVIL DOCKET FOR CASE #: 1:20-cv-09230-PGG-SDA

Kotlyarsky v. United States Department of Justice et al
Assigned to: Judge Paul G. Gardephe
Referred to: Magistrate Judge Stewart D. Aaron
Cause: 42:1983 Prisoner Civil Rights

Date Filed: 11/03/2020
Date Terminated: 09/30/2022
Jury Demand: Plaintiff
Nature of Suit: 440 Civil Rights: Other
Jurisdiction: U.S. Government Defendant

## Plaintiff

**Boris Kotlyarsky**
*an individual*

represented by **Boris Kotlyarsky**
1900 E. 22nd Street, NY 11229
718/382-9393
PRO SE

**Irina Shpigel**
Shpigel Law P.C.
250 Greenwich Street
Ste 46th Floor
New York, NY 10007
212-390-1913
Fax: 646-355-0242
Email: ishpigel@iselaw.com
*ATTORNEY TO BE NOTICED*

V.

## Defendant

**United States Department of Justice**
*a Governmental federal agency*

represented by **Tara Schwartz**
DOJ-USAO
86 Chambers St
New York, NY 10007
212-637-2633
Email: tara.schwartz@usdoj.gov
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

## Defendant

**Preet Bharara**
*in his official capacity*

represented by **Tara Schwartz**
(See above for address)
*LEAD ATTORNEY*

*ATTORNEY TO BE NOTICED*

**Defendant**

**James Comey**
*in his official capacity*

represented by **Tara Schwartz**
(See above for address)
*LEAD ATTORNEY*
*ATTORNEY TO BE NOTICED*

| Date Filed | # | Docket Text |
|---|---|---|
| 11/03/2020 | 1 | COMPLAINT against Preet Bharara, James Comey, United States Department of Justice. (Filing Fee $ 400.00, Receipt Number BNYSDC-22435727)Document filed by Boris Kotlyarsky..(Shpigel, Irina) (Entered: 11/03/2020) |
| 11/03/2020 | 2 | CIVIL COVER SHEET filed..(Shpigel, Irina) (Entered: 11/03/2020) |
| 11/03/2020 | 3 | REQUEST FOR ISSUANCE OF SUMMONS as to United States Department of Justice, re: 1 Complaint. Document filed by Boris Kotlyarsky..(Shpigel, Irina) (Entered: 11/03/2020) |
| 11/04/2020 |  | ***NOTICE TO ATTORNEY REGARDING PARTY MODIFICATION. Notice to attorney Irina Shpigel. The party information for the following party/parties has been modified: Preet Bharara, James Comey, United States Department of Justice, Boris Kotlyarsky. The information for the party/parties has been modified for the following reason/reasons: party role was entered incorrectly; party text was omitted;. (pc) (Entered: 11/04/2020) |
| 11/04/2020 |  | ***NOTICE TO ATTORNEY REGARDING CIVIL. CASE OPENING STATISTICAL ERROR CORRECTION: Notice to attorney Irina Shpigel. The following case opening statistical information was erroneously selected/entered: Dollar Demand $5,000,000,000; County code Kings;. The following correction(s) have been made to your case entry: the Dollar Demand has been modified to blank; the County code has been modified to New York;. (pc) (Entered: 11/04/2020) |
| 11/04/2020 |  | CASE OPENING INITIAL ASSIGNMENT NOTICE: The above-entitled action is assigned to Judge Paul G. Gardephe. Please download and review the Individual Practices of the assigned District Judge, located at https://nysd.uscourts.gov/judges/district-judges. Attorneys are responsible for providing courtesy copies to judges where their Individual Practices require such. Please download and review the ECF Rules and Instructions, located at https://nysd.uscourts.gov/rules/ecf-related-instructions..(pc) (Entered: 11/04/2020) |
| 11/04/2020 |  | Magistrate Judge Stewart D. Aaron is so designated. Pursuant to 28 U.S.C. Section 636(c) and Fed. R. Civ. P. 73(b)(1) parties are notified that they may consent to proceed before a United States Magistrate Judge. Parties who wish to consent may access the necessary form at the following link: https://nysd.uscourts.gov/sites/default/files/2018-06/AO-3.pdf. (pc) (Entered: 11/04/2020) |
| 11/04/2020 |  | Case Designated ECF. (pc) (Entered: 11/04/2020) |

| 11/04/2020 | 4 | ELECTRONIC SUMMONS ISSUED as to Preet Bharara, James Comey, United States Department of Justice..(pc) (Entered: 11/04/2020) |
|---|---|---|
| 11/05/2020 | 5 | NOTICE OF PRETRIAL CONFERENCE: Per the SDNY COVID-19 COURTHOUSE ENTRY PROGRAM, anyone who appears at any SDNY courthouse must complete a questionnaire and have their temperature taken. Please see the instructions, attached below. Completing the questionnaire ahead of time will save time and effort upon entry. Only those individuals who meet the entry requirements established by the questionnaire will be permitted entry. Please contact chambers if you do not meet the requirements. (And as further set forth herein.) SO ORDERED. Initial Conference set for 2/11/2021 at 09:30 AM in Courtroom 705, 40 Centre Street, New York, NY 10007 before Judge Paul G. Gardephe. (Signed by Judge Paul G. Gardephe on 11/5/2020) (jca) (Entered: 11/05/2020) |
| 02/08/2021 | 6 | FIRST LETTER MOTION for Extension of Time *to serve Defendants and request to adjourn the conference scheduled for 2/11/2021* addressed to Judge Paul G. Gardephe from Irina Shpigel dated February 8th, 2021. Document filed by Boris Kotlyarsky.. (Shpigel, Irina) (Entered: 02/08/2021) |
| 02/10/2021 | 7 | ORDER granting 6 FIRST LETTER MOTION for Extension of Time to serve Defendants and request to adjourn the conference scheduled for 2/11/2021. The application is granted. The conference scheduled for February 11, 2021 is adjourned to April 1, 2021 at 10:15 a.m. by telephone. The parties are directed to dial 888-363-4749 to participate, and to enter the access code 6212642. The press and public may obtain access to the telephone conference by dialing the same number and using the same access code. The Court is holding multiple telephone conferences on this date. The parties should call in at the scheduled time and wait on the line for their case to be called. At that time, the Court will un-mute the parties' lines. Two days before the conference, the parties must email Michael_Ruocco@nysd.uscourts.gov and GardepheNYSDChambers@nysd.uscourts.gov with the phone numbers that the parties will be using to dial into the conference so that the Court knows which numbers to un-mute. The email should include the case name and case number in the subject line. SO ORDERED.. (Signed by Judge Paul G. Gardephe on 2/9/2021) (jca) (Entered: 02/10/2021) |
| 02/10/2021 | | Set/Reset Hearings: Initial Conference set for 4/1/2021 at 10:15 AM before Judge Paul G. Gardephe. (jca) (Entered: 02/10/2021) |
| 03/29/2021 | 8 | SUMMONS RETURNED EXECUTED. United States Department of Justice served on 3/2/2021, answer due 5/3/2021. Service was made by MAIL. Document filed by Boris Kotlyarsky..(Shpigel, Irina) (Entered: 03/29/2021) |
| 03/29/2021 | 9 | SUMMONS RETURNED EXECUTED. Preet Bharara served on 3/2/2021, answer due 5/3/2021. Service was made by MAIL. Document filed by Boris Kotlyarsky..(Shpigel, Irina) (Entered: 03/29/2021) |
| 03/29/2021 | 10 | SUMMONS RETURNED EXECUTED. James Comey served on 3/2/2021, answer due 5/3/2021. Service was made by Mail. Document filed by Boris Kotlyarsky..(Shpigel, Irina) (Entered: 03/29/2021) |

Case 22-2750, Document 34, 03/17/2023, 3485880, Page6 of 160

| 03/31/2021 | 11 | ORDER: The conference in this matter currently scheduled for April 1, 2021 is adjourned to May 6, 2021 at 9:45 a.m. SO ORDERED. Initial Conference set for 5/6/2021 at 09:45 AM before Judge Paul G. Gardephe. (Signed by Judge Paul G. Gardephe on 3/31/2021) (jca) (Entered: 03/31/2021) |
|---|---|---|
| 04/27/2021 | 12 | NOTICE OF APPEARANCE by Tara Schwartz on behalf of Preet Bharara, James Comey, United States Department of Justice..(Schwartz, Tara) (Entered: 04/27/2021) |
| 04/27/2021 | 13 | LETTER MOTION for Extension of Time *to Respond to Complaint and to Adjourn Initial Pretrial Conference* addressed to Judge Paul G. Gardephe from Tara Schwartz dated April 27, 2021. Document filed by Preet Bharara, James Comey, United States Department of Justice..(Schwartz, Tara) (Entered: 04/27/2021) |
| 04/28/2021 | 14 | ORDER granting 13 Letter Motion for Extension of Time. The Application is granted. SO ORDERED. (Signed by Judge Paul G. Gardephe on 4/28/2021) (ks) (Entered: 04/28/2021) |
| 04/28/2021 | | Set/Reset Deadlines: Preet Bharara answer due 6/3/2021; James Comey answer due 6/3/2021; United States Department of Justice answer due 6/3/2021. (ks) (Entered: 04/28/2021) |
| 06/01/2021 | 15 | LETTER MOTION for Conference *to Dismiss Complaint* addressed to Judge Paul G. Gardephe from Tara Schwartz dated June 1, 2021. Document filed by Preet Bharara, James Comey, United States Department of Justice. (Attachments: # 1 Exhibit 1). (Schwartz, Tara) (Entered: 06/01/2021) |
| 06/14/2021 | 16 | ORDER granting 15 Letter Motion for Conference re: 15 LETTER MOTION for Conference *to Dismiss Complaint* addressed to Judge Paul G. Gardephe from Tara Schwartz dated June 1, 2021. The following schedule will apply to Defendants' motion to dismiss: Defendants' motion to dismiss is due on July 6, 2021; Plaintiff's opposition is due on July 27, 2021; Defendants' reply, if any, is due on August 3, 2021.. (Signed by Judge Paul G. Gardephe on 6/14/2021) (nb) (Entered: 06/14/2021) |
| 06/14/2021 | | Set/Reset Deadlines: Motions due by 7/6/2021. Responses due by 7/27/2021 Replies due by 8/3/2021. (nb) (Entered: 06/14/2021) |
| 07/27/2021 | 17 | FIRST LETTER MOTION for Extension of Time *to serve opposition to the Motion to Dismiss* addressed to Judge Paul G. Gardephe from Irina Shpigel dated July 27, 2021. Document filed by Boris Kotlyarsky..(Shpigel, Irina) (Entered: 07/27/2021) |
| 07/28/2021 | 18 | ORDER granting 17 Letter Motion for Extension of Time. The Application is granted. SO ORDERED. (Signed by Judge Paul G. Gardephe on 7/28/2021) (vfr) (Entered: 07/28/2021) |
| 07/28/2021 | | Set/Reset Deadlines: Responses due by 8/3/2021. Replies due by 8/10/2021. (vfr) (Entered: 07/28/2021) |
| 08/06/2021 | 19 | MOTION to Dismiss *the Complaint*. Document filed by Preet Bharara, James Comey, United States Department of Justice..(Schwartz, Tara) (Entered: 08/06/2021) |
| 08/06/2021 | 20 | MEMORANDUM OF LAW in Support re: 19 MOTION to Dismiss *the Complaint*. . Document filed by Preet Bharara, James Comey, United States Department of Justice.. |

| | | (Schwartz, Tara) (Entered: 08/06/2021) |
|---|---|---|
| 08/09/2021 | 21 | AFFIDAVIT of Boris Kotlyarskiy in Opposition re: <u>19</u> MOTION to Dismiss *the Complaint*.. Document filed by Boris Kotlyarsky..(Shpigel, Irina) (Entered: 08/09/2021) |
| 08/09/2021 | 22 | REPLY MEMORANDUM OF LAW in Support re: <u>19</u> MOTION to Dismiss *the Complaint*. . Document filed by Preet Bharara, James Comey, United States Department of Justice..(Schwartz, Tara) (Entered: 08/09/2021) |
| 08/10/2021 | 23 | ORDER REFERRING CASE TO MAGISTRATE JUDGE: Order that case be referred to the Clerk of Court for assignment to a Magistrate Judge for Dispositive Motion (i.e., motion requiring a Report and Recommendation); Particular Motion: Dkt. No. 19. Referred to Magistrate Judge Stewart D. Aaron. SO ORDERED. Motions referred to Stewart D. Aaron. (Signed by Judge Paul G. Gardephe on 8/10/2021) (jca) (Entered: 08/10/2021) |
| 08/18/2021 | 24 | REPORT AND RECOMMENDATION re: <u>19</u> MOTION to Dismiss the Complaint filed by James Comey, Preet Bharara, United States Department of Justice: I respectfully recommend that Defendants' motion to dismiss be GRANTED. I further recommend that Plaintiff not be granted leave to replead, as any attempt to amend would be futile. Objections to R&R due by 9/1/2021. (Signed by Magistrate Judge Stewart D. Aaron on 8/18/2021) (Aaron, Stewart) (Entered: 08/18/2021) |
| 09/01/2021 | 25 | OBJECTION to <u>24</u> Report and Recommendations *and request to amend complaint* Document filed by Boris Kotlyarsky..(Shpigel, Irina) (Entered: 09/01/2021) |
| 09/07/2021 | 26 | RESPONSE re: <u>25</u> Objection to Report and Recommendations . Document filed by Preet Bharara, James Comey, United States Department of Justice..(Schwartz, Tara) (Entered: 09/07/2021) |
| 09/28/2022 | 27 | ORDER for <u>24</u> Report and Recommendations, <u>19</u> Motion to Dismiss filed by James Comey, Preet Bharara, United States Department of Justice. For the reasons stated above, Judge Aaron's R&R is adopted in its entirety, and the Complaint is dismissed with prejudice. The Clerk of Court is directed to terminate the motion (Dkt. No. 19), and to close this case. SO ORDERED. (Signed by Judge Paul G. Gardephe on 9/28/22) (yv) Transmission to Orders and Judgments Clerk for processing. (Entered: 09/29/2022) |
| 09/30/2022 | 28 | CLERK'S JUDGMENT re: <u>24</u> Report and Recommendations, <u>27</u> Order Adopting Report and Recommendations,. in favor of United States Department of Justice, James Comey, Preet Bharara against Boris Kotlyarsky. It is hereby ORDERED, ADJUDGED AND DECREED: That for the reasons stated in the Court's Order dated September 28, 2022, the Court adopts the Report & Recommendation in its entirety and the Complaint is dismissed with prejudice; accordingly, the case is closed. (Signed by Clerk of Court Ruby Krajick on 09/30/2022) (Attachments: # <u>1</u> Notice of Right to appeal) (nd) (Entered: 09/30/2022) |
| 10/18/2022 | 29 | NOTICE OF PRO SE APPEARANCE. by Boris Kotlyarsky. (sc) (Entered: 10/19/2022) |
| 10/18/2022 | 30 | NOTICE OF APPEAL from <u>28</u> Clerk's Judgment,,. Document filed by Boris Kotlyarsky. Filing fee $ 505.00, receipt number 7363. Form D-P is due within 14 days to the Court of Appeals, Second Circuit..(nd) (Entered: 10/21/2022) |

| 10/21/2022 | Transmission of Notice of Appeal and Certified Copy of Docket Sheet to US Court of Appeals re: 30 Notice of Appeal..(nd) (Entered: 10/21/2022) |
| 10/21/2022 | Appeal Record Sent to USCA (Electronic File). Certified Indexed record on Appeal Electronic Files for 30 Notice of Appeal filed by Boris Kotlyarsky were transmitted to the U.S. Court of Appeals..(nd) (Entered: 10/21/2022) |

| PACER Service Center | | | |
|---|---|---|---|
| **Transaction Receipt** | | | |
| 03/13/2023 15:25:52 | | | |
| PACER Login: | IrinaShpigel | Client Code: | |
| Description: | Docket Report | Search Criteria: | 1:20-cv-09230-PGG-SDA |
| Billable Pages: | 5 | Cost: | 0.50 |

Irina Shpigel
Shpigel and Associates, P.C.
*Attorneys for Plaintiff*
250 Greenwich Street, 46th Floor
New York, New York 10007
E-mail: ishpigel@iselaw.com
T 212-390-1913
F 646-355-0242

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BORIS KOTLYARSKY, an individual,<br><br>Plaintiff,<br><br> - against-<br><br><br>UNITED STATES DEPARTMENT OF JUSTICE, a Governmental federal agency, PREET BHARARA, in his official capacity, and JAMES COMEY, in his official capacity<br><br>Defendants. | Civil Action No.<br><br><br>**COMPLAINT FOR DAMAGES** |

Plaintiff, BORIS KOTLYARSKY (hereinafter referred to as "Plaintiff"), by and through

undersigned counsel, alleges upon information and belief the following against Defendants

UNITED STATES DEPARTMENT OF JUSTICE, a Governmental federal agency,

PREET BHARARA, in his official capacity, and JAMES COMEY, in his official capacity

; (collectively referred to as "Defendants").

1

**PRELIMINARY STATEMENT**

1.  This is an action pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' rights as secured by the United States Constitution. Defendants engaged in a baseless and malicious prosecution of Plaintiff which resulted in a  gross miscarriage of justice orchestrated by Defendants, in their official capacity; Comey as the director of the FBI, and Preet Bharrara, in his capacity as the U.S. Attorney for the Southern District of New York.

2.  Plaintiff BORIS KOTLYARSKY'S claims arise from the malicious prosecution that was achieved through numerous violations of Plaintiff's Constitutional rights under *Brady v. Maryland*, 373 U.S. 83(1963).  The FBI under the direction of James Comey, provided misleading information that led to the arrest of an  innocent man, BORIS KOTLYARSKY in order to protect an FBI informant: would be murderer, Anatoly Potik. While Anatoly Potik, who hired a hit man to kill his son-in-law walked out a free man, BORIS KOTLYRSKY, the hero who blew the whistle on the killer's plot, was arrested on fabricated extortion charges and served forty-one 41 months in prison.  The Government, under the direction and supervision of Preet Bharrar withheld critical exculpatory testimony of Boris Nayfeld (the "hitman" hired by the victim's father-in-law, Anatoly Potik, to kill the victim, Oleg Mitnik), in violation of *Brady*.

3.  Meanwhile, the Government dropped the charges against Anatoly Potik, the person who masterminded and paid for the murder of Oleg Mitnik. Even the hit-man who accepted employment to kill Mr. Mitnik, was offered a light sentence guideline and below guideline recommendation by the Government and consequently only served 23 months.

000008

4.  The government destroyed Mr. Kotlyarsky's life, reputation and livelihood and used him
    as a scape goat to protect their informant, Anatoly Potik, by filing false charges against
    Boris Kotlyarsky and failing to disclose favorable evidence that is material to his criminal
    matter. *Brady,* Id. 373 U.S. at 87. Accord: *Gantt v. Martuscello*, 2013 U.S. Dist. LEXIS
    183258, 35 (N.D.N.Y. 2013).

5.  Accordingly, Plaintiff brings this action for violations of his constitutional rights, malicious
    prosecution, and negligent infliction of severe emotional and mental distress and seeks
    monetary compensation in an amount not less than $250 million dollars.

### JURISDICTION AND VENUE

6.  This Court has subject matter jurisdiction over Plaintiff's claims pursuant to 28 U.S.C.
    §1331, as this case arises under the United States Constitution and federal statutes. On
    information and belief, all parties reside in this judicial district, and the events giving rise
    to the claims asserted herein occurred within the district.

### THE PARTIES

7.  Plaintiff, Boris Kotlyarsky ("Plaintiff") is a United States citizen. Plaintiff is a resident of
    the County and State of New York.

8.  Defendant The United States Department of Justice is a United States federal agency.

9.  Defendant Preet Bharrara, was the United States Attorney for the Southern District of
    New York. The United States Attorney is the chief federal law enforcement officer in his
    district. Bharrara is sued in his official capacity as the United States Attorney for the
    Southern District.

000009

10. Defendant James Comey, was the director of the Federal Bureau of Investigation, is a
    government agency charged with the investigation of crimes in the United States. James
    Comey is sued in his official capacity as the director of the Federal Bureau of
    Investigation.

## FACTS

### THE MURDER-FOR-HIRE PLOT

11.   Anatoly Potik contracted with Boris Nayfeld to assassinate Oleg Mitnik in exchange for
      the payment of One Hundred Thousand ($100,000) Dollars.

12. In the summer of 2015, Boris Kotlyarsky learned of Anatoly Potik's plot to murder Oleg
    Mitnik and immediately informed Oleg Mitnik about the contract on his life between
    Nayfeld and Potik.

13. Boris Kotlyarsky never sought nor received any financial gain from Nayfeld or Mitnik a
    fact that Nayfeld confirmed later under oath on October 12, 2016 when he entered a
    guilty plea before Honorable Katherine B. Forrest, when he represented to the court that
    Kotlyarsky never sought any financial gain from Nayfeld or Mitnik, nor had there ever
    been any agreement or conspiracy between them.

14. Nonetheless, on January 15, 2016 and despite a lack of any evidence whatsoever against
    Kotlyarsky he was charged with extortion by a criminal complaint filed in the Southern
    District of New York, Dkt. No. 1: 16-mag-0324, sworn to FBI Special Agent Luke
    Hardison.

15. On January 22, 2016 Potik was charged with MURDER-FOR HIRE in a criminal
    complaint U.S. v. Potik, filed in the United States District Court for the Southern District
    of New York and filed on January 22, 2016.

4

16. The Government dismissed the Complaint against Potik on June 8, 2016 but not before filing a new criminal information against Defendant Potik with a lesser charge and before a different judge on June 7, 2016.

17. In its application to seal the docket in that new case, the Government expressly cited Defendant Potik's safety and "active law enforcement operations and investigations" that would be in jeopardy if the docket were not sealed.

18. The Government subsequently filed a superseding indictment with a different, lesser charge of "misprision of felony".

19. When Defendant Potik attempted to plead guilty to that charge, Judge Hellerstein rejehfedplea, holding in his September 16, 2017 Order Rejecting Plea:

> A defendant is permitted to plead guilty to a lesser offense where
> the Government offers him that choice, but the factual basis for that
> plea cannot be manufactured by the lawyers involved in the case;
> it must be based on reality. That basis in reality is absent in this case.
> For these reasons, I reject Potik's plea of guilty.

20. On December 8, 2017 Judge Hellersetin denied Potik's motion for reconsideration, rejecting his attempt to plead guilty for the second time.

21. On December 11, 2017, the Government filed <u>nolle prosequi,</u> choosing not to prosecute Defendant Potik for medical reasons.  While the Government dismissed its Murder-For-Hire Criminal Complaint against cooperating Defendant Potik, it continued to prosecute Kotlyarsky based on the very same Murder-For-Hire plot.

000011

22. The Government charged Kotlyarsky with extortion, without a shred of evidence, even

though he saved Oleg Mitnik's life by blowing the whistle on Potik's MURDER-FOR-

HIRE plot.   On July 27, 2017, Nayfeld was sentenced on two counts of Interference

with commerce by threat or violence, to which he pled guilty pursuant to his plea deal with

with the government and was sentenced to 23 months.


### THE GOVERNMENT VIOLATED BRADY V. MARYLAND; THE GOVERNMENT VIOLATED ITS DUTY OF CANDOR

23 On or about October 12, 2016, co-defendant Boris Nayfeld, in the course of entering his

guilty plea, appeared before Hon. Katherine B. Forrest and in his allocution under oath, he

represented to the court that Plaintiff had not sought any financial gain from him or from

Mr. Mitnik, nor had there ever been any agreement or conspiracy between Mr. Nayfeld and

Mr. Kotlyarsky that Mr. Kotlyarsky would receive any financial benefit for informing Mr.

Mitnik of the plot to kill him. As Mr. Nayfeld averred:

> THE COURT: What I want to know is did you agree with
> anybody else to try to extort money to take money from the
> son-in-law?
> THE DEFENDANT: (In English) No.
> See Exhibit 12, page 36, lines 11-13.
> ***
> THE COURT: And so Mr. Kotlyarsky then got Mitnik to give
> you and Mr. Kotlyarsky money?
> THE DEFENDANT: (In English) No. This is after Mitnik
> have for me –
> Exhibit 12, page 44, lines 4 – 7.
> ***
> THE COURT: All right. Kotlyarsky says that -- sorry. Mr.
> Potik says he's got a job for you and Kotlyarsky then indicates
> to you that if you just go to the potential victim --
> THE DEFENDANT: (In English) Yes.
> THE COURT: -- and tell the victim about Potik wanting him
> dead, the victim will pay you money and you and Kotlyarsky
> would then somehow divide up that money, correct?

000012

> THE DEFENDANT: (In English) Yes.
> THE COURT: And that that actually happened.
> THE DEFENDANT: (In English) **No, no, no. Listen. I'm
> not -- I want the truth. I not tell -- he not tell me that --**
> THE COURT: Tell you?
> THE DEFENDANT: **He did not want any money.** He said
> that -- he told me that you will make some money.
> THE COURT: I see. So you and Mr. Kotlyarsky agreed that
> you would give the information to Mr. Mitnik.
> THE DEFENDANT: (In English) Yes.
> THE COURT: **But Mr. Kotlyarsky was not going to be
> paid?**
> THE DEFENDANT: **No. No. It was my intention to
> share the money with him but he said no.**
> Exhibit 12, page 44, lines 13 -- 25 through page 46, lines 1 -- 10
> (emphasis added).

24  Despite the *prima facie* value of this evidence to Plaintiff, at the request of the

Government, "particularly," in the Government's words, "because the upcoming trial

includes a charge of witness tampering," the transcript and docketing of the hearing was

ordered sealed.

25  . This exculpatory evidence was not released by the Government to Plaintiff, in violation

of *Brady v. Maryland*, 373 U.S. 83 (1963) and its progeny, and the transcript remains

sealed to this day.

26  And in fact, the docket of Boris Nayfeld contains no entries from October 6, 2016 to

April 5, 2017, and as such, Plaintiff was not even aware that any activity had occurred

which might have had beneficial value with respect to his decision to enter into a plea

agreement or for use at sentencing.

27  At a minimum, Judge Forrest anticipated that Hon. Lewis A. Kaplan would have access

to the sealed transcript at some point after Plaintiff's trial, and presumably before

sentencing.

000013

28  But the evidence contained in Mr. Nayfeld's testimony never made its way to Judge

Kaplan.

29  Indeed, at Plaintiff's sentencing on May 31, 2017, Judge Kaplan observed that:

> **Although I don't have specific evidence before me to**
> **make an express finding -- and I don't --** it seems to me
> that it would have been entirely reasonable to expect and,
> notwithstanding what I said already, more likely than not that
> you did expect that if Nayfeld was paid off, he would have
> something for you out of the payoff.
> **I understand there's been no express testimony or**
> **evidence that you and Nayfeld ever had a specific**
> **discussion or understanding,** but I do think the logic of the
> situation is such that that was your intent and expectation.

30  If not so previously, this is the point of no return where the Government should have

exercised its duty of candor to the tribunal, as more fully discussed. Here, the error lay in

the expressed belief held by the Court based on lack of access to testimony, the truth of

which was known to the Government.

31  The distinction is immaterial. In both cases, the Government's error lay in its silence in the

face of what it knows to be the truth, allowing the tribunal to proceed under a false

impression. Here, however, is evident the culpable concealment of exculpatory evidence

by the Government.

32  Given the revelations found in the sealed transcript of Boris Nayfeld's allocution of

October 12, 2016, as of the date of the Court's statement above on May 31, 2017, it cannot

be disputed that that the Government knew that there was "express testimony or evidence

that [Plaintiff] and Nayfeld ever had a specific discussion or understanding [regarding the

receipt or non-receipt of money by Plaintiff]" If the Court would have had access to Mr.

Nayfeld's exculpatory testimony, the Court would likely have rejected the Plaintiff's

000014

allocution and plea, because it would not have made out all of the elements of an extortion

under 18 U.S.C. § 1951(b)(2).

33  *United States v. Crispo*, 47 F. App'x 39, 40 (2d Cir. 2002) "To affirm the extortion

conviction below there must be proof of (1) **intent to obtain the property of another**,

with his consent, "induced by wrongful use of actual or threatened force, violence, or fear,"

18 U.S.C. § 1951(b)(2), and (2) interference with interstate commerce." (emphasis added);

*United States v. Enmons*, 410 U.S. 396, 419 n. 16 (1973): "Extortion requires an intent to

obtain that which in justice and equity the party is not entitled to receive."

34  Plaintiff never had any intent to obtain the property of Oleg Mitnik.

35  In Oleg Mitnik's Declaration in support of Plaintiff's 2255 motion to set aside his sentence,

Mr. Mitnik, the victim in this matter, makes the following statement:

> Based on those records and my knowledge of certain facts, I
> believe Mr. Kotlyarsky's sentence was based on a
> misapprehension of material facts.
> As such, I provide this Declaration to clarify the following
> relevant facts from my first-hand knowledge.
> After Mr. Kotlyarsky informed me of the murder plot, it was
> my idea, not his, for me to meet with the hit man, Boris
> Nayfeld. I asked Mr. Kotlyarsky, not the other way around, if
> he could arrange for a meeting between Mr. Nayfeld and me. I
> believe my initiating this request was recorded on a recording
> device provided to me by Special Agent Luke Hardison for the
> 12/3/2015 meeting between Mr. Kotlyarsky and me.
> From the onset (around late October 2015), Mr. Kotlyarsky
> told me that I should go to the police to get them involved. In
> early November 2015, I filed a complaint with my
> neighborhood police department. In mid-November 2015, my
> complaint was forwarded to an organized crime task force.
> Shortly thereafter, I met with federal authorities.
> At no point did Mr. Kotlyarsky ever ask me or lead me to
> believe that he expected in any way to be compensated
> financially for telling me about the murder plot, for arranging
> for the meeting with Mr. Nayfeld, or for his efforts in helping
> to save my life.
> Although Mr. Kotlyarsky and I did have a conversation about

9

000015

business, it was a casual conversation, the type that any two business men may have, who have long been friends, are catching up after a time of absence, and who think well of and wish well for each other. The conversation was unequivocally disconnected from anything to do with the murder plot. Mr. Kotlyarsky was not a stranger to me. We have known each other for many years, and were from the same country, Russia. In the sentencing of Mr. Kotlyarsky, the prosecutor stated that "not only was [Mr. Kotlyarsky's] intervention not the reason [I am] safe, but in intervening at all, Mr. Kotlyarsky made it worse and, in fact, risked greater harm. As the victim, I can state unequivocally that this statement could not be further from the truth. I fully believe that but for Mr. Kotlyarsky's intervention, I would not be alive today. Contrary to the prosecutor's contention, Mr. Kotlyarsky did not take "advantage of [my] specific fear of death", but rather, he helped prevent my death.

The Court, after hearing the prosecutor's statements, concluded that "in one way or another, there would be an economic benefit to [Mr. Kotlyarsky] no matter how it turned out". Most respectfully, as the intended victim, as the person conversing with Mr. Kotlyarsky at that time, I do not see it that way. Mr. Kotlyarsky could have easily asked me for compensation given what he did, but he did not.

From what I understand, the Government presented no evidence from Mr. Nayfeld demonstrating any agreement between Mr. Kotlyarsky and Mr. Nayfeld in which Mr. Kotlyarsky would receive a portion of what I paid Mr. Nayfeld. **Indeed, my understanding is that the Government stated there was no financial gain for Mr. Kotlyarsky from Mr. Nayfeld.**

To me that speaks volumes, given that Mr. Nayfeld entered a cooperative agreement with the Government, requiring him to fully disclose the crime and answer all questions.

As such, there was no expectation of financial gain for Mr. Kotlyarsky from me, and no evidence of any financial gain for Mr. Kotlyarsky from Mr. Nayfeld. **The Court's conclusion was thus completely unfounded and in [sic] diametrically opposed to the truth of what happened.**

While I understand that Mr. Kotlyarsky pled guilty in a plea bargain, as I've stated before, I do not believe that Mr. Kotlyarsky should have been charged with extortion in the first place. I stated so at the time of his arrest, and my feelings on the matter have not changed. I told this to the Probation Officer who noted my statement in Mr. Kotlyarsky's PSR. **It is my concerted feeling that Mr. Kotlyarsky's conviction and imprisonment, given the truth of what I know happened, and**

10

given probable outcome had he not intervened, constitutes a gross miscarriage of justice.

And just as disturbing to me is the severely disproportionate sentence imposed upon Mr. Kotlyarsky for his plea, compared to that of the mobster hit man, Mr. Nayfeld, and the mastermind financier of the murder plot, Mr. Potik.

Mr. Kotlyarsky, who saved my life, received a sentence of 41 months. In comparison, despite entering into a contract to murder me and subsequently extorting money from me to stave off the murder, Mr. Nayfeld was sentence by Judge Forrest to a mere 23 months. And despite conceiving, financing and setting in motion a murder plot against me, Mr. Potik somehow manipulated the Government to enter a *nolle prosequi!*

As a result, Mr. Kotlyarsky, whose intervention foiled the murder plot and saved my life, received a sentence nearly twice that of the hit man who intended to murder me, and the person who originally plotted and paid [for] my murder walks away scot-free.

Nothing could more closely constitute a gross miscarriage of justice to Mr. Kotlyarsky.

I repeat what I told the Probation Department. I do not believe that Mr. Kotlyarsky should ever have been charged with extortion in this case, and most certainly, at the age of 70, he should not have to serve 41 months of imprisonment, even if he did accept a plea bargain for reasons personal to him.

In the hopes that justice and sensibility may gain the upper hand in this case, I submit this Declaration in support of Mr. Kotlyarsky's motion.

I implore the Court to grant the relief requested by Mr. Kotlyarsky, and any other relief that may be just, fair and equitable.

36  If the Court would have had access to Oleg Mitnik's exculpatory testimony, the Court would have rejected the Plaintiff's allocution and plea, because it would not have made out all of the elements of a Hobbs Act extortion under 18 U.S.C. § 1951(b)(2).

37  If Plaintiff had had access to the exculpatory statements of Oleg Mitnik and Boris Nayfeld, Plaintiff would have chosen to proceed to trial, rather than plead guilty.

As maintained by Plaintiff from the beginning and even

11

000017

> through his plea allocution, the arrangement of meetings
> between Nayfeld and Mitnik were at Mitnik's request.
> "Meeting that I arrange happened in Brooklyn, but I arrange
> meeting because of ask him many times of Oleg Mitnik. He
> [Oleg Mitnik[ want to see this guy. Where it happen. In
> Brooklyn. It's on the request of Oleg Mitnik, this meeting was
> arranged."

38  As maintained by Plaintiff from the beginning and even through his plea allocution,

Plaintiff did not want and was not expecting to make any money from saving Oleg Mitnik's

life. "I would not expect to be paid any portion of the money Nayfeld would try to obtain

from Mitnik. There was no financial gain for me at all." And "I'm sorry one more time.

There is no financial or any other gain for me was in this case."

### THE GOVERNMENT'S BRADY VIOLATIONS, RESULTED IN THE GOVERNMENT CAUSING PLAINTIFF TO ENTER INTO THE PLEA AGREEMENT UNDER DURESS

42. More than a century ago, with respect to duress, *Brown v Pierce,* 7 Wall [74 US] 205, 214

[1869], The Supreme Court of the United States stated:

> "Duress, in its more extended sense, means that degree of constraint or danger,
> either actually inflicted or threatened and impending, which is sufficient, in
> severity or in apprehension, to overcome the mind and will of a person of
> ordinary firmness. (cited by *United States v. Ein Chem. Corp.*, 161 F. Supp.
> 238, 246 (S.D.N.Y. 1958)).

43. Here, the duress was the threat, to an innocent man, at the age of 69, of ten years of
imprisonment.

> To make a case of duress by threat of imprisonment, it must be shown that
> the threat was so pressing that it overcame the victim's will and induced his
> act or promise. Baker v. Morton, 12 Wall. 150, 20 L.Ed. 262; *United States v.
> Huckabee,* 16 [**4] Wall. 141, 21 L.Ed. 457; *Dunham v. Griswold,* 100 N.Y.

42. As further stated in *Gotlex Ind Men's Clothing Co. v. Gibson,* (CSH), 1995 U.S. Dist. LEXIS
9642, at *6 (S.D.N.Y. July 11, 1995):

> [D]uress by threat of a criminal prosecution for embezzlement or theft invalidates a
> contract induced thereby." 21 N.Y. Jur. 2d Contracts § 135. See also, Restatement §
> 176(1)(b) ("A threat is improper … if what is threatened is a criminal prosecution.").
> "It is immaterial whether such person was guilty or innocent of the act for which arrest
> or imprisonment was threatened in order for there to be duress." *Willig,* 438 N.Y.S.2d
> at 874. See also, Restatement § 176, Comment c.

43. Age is one of the factors to consider when determining the severity of the threat. See *Gottex Indus. v. Menczel*, 93 Civ. 6150 (CSH), 1995 U.S. Dist. LEXIS 9642, at *7 (S.D.N.Y. July 11, 1995).

44.  At age 69, Plaintiff was systematically led down the path of free man to incarcerated man for 41 months, despite the existence of freshly obtained exculpatory information provided to the Government by Boris Nayfeld, corroborated by the long-known statements from the victim himself, Oleg Mitnik.

45. The obligation under Local Civil Rule 1.6 to inform the court of related cases did not belong to trial counsel alone, but the Government as well ("It shall be the continuing duty of **each attorney appearing** in any civil or criminal case to bring promptly to the attention of the Court all facts which said attorney believes are relevant to a determination that said case and one or more pending civil or criminal cases should be heard by the same Judge..." (emphasis added).

46. The Government's failure to follow its related cases duty enabled its *Brady* violations and facilitated ideal duress conditions to obtain Plaintiff's plea agreement.

47. Sometime on or before October 1, 2016, an unidentified person informed the Government that Plaintiff had no expectation of receiving any money from Boris Nayfeld in connection with the alleged extortion or conspiracy to extort money from Oleg Mitnik. On October 1, 2016, without identifying who, the Government sent a letter to Plaintiff's counsel, attached as Exhibit 30, so stating: "[A] witness has informed the Government, in sum and substance,

000019

that the defendant was offered direct payment in connection with the events described in the Indictment, but declined the offer."

48. The Government did not characterized the disclosure as a *Brady* disclosure[1]. As well, the "witness" was not identified in the Government's letter. Plaintiff had no way of knowing if it was Boris Nayfeld, Mr. Nayfeld's son, Oleg Mitnik, or some other yet unknown witness to the case.

49. But, as is later learned from the sealed October 12, 2016 Boris Nayfeld allocution transcript, it was Boris Nayfeld who provided the exculpating information to the Government. The Government, however, did not reveal this to Plaintiff.

50. Additionally, from the beginning, the Government also knew that the victim, Oleg Mitnick, did not believe that Plaintiff had violated the law or should becharged with this crime:

> The victim views Kotlyarsky as a middle man in this conspiracy. He explained that the defendant did not initiate the contract on his life, he told him about the contract, and he never asked for or expected to be compensated financially for telling him about the contract. The victim does not feel that Kotlyarsky should have been charged with attempted murder [sic – should be extortion]. The victim is upset because Kotlyarsky wants to sue him for accusing him of committing extortion, but he had "nothing to do with how the Government files criminal charges." The victim continues to fear for his life because his father-in-law has not been imprisoned. The victim believes that if it were not for Kotlyarsky interceding in this scheme, he would be dead.

51. Instead of fully disclosing the evidence to Plaintiff, on October 5, 2016, the Government issued a Superseding Indictment against Plaintiff, with the object of exerting greater pressure. The Superseding Indictment added Obstruction of Justice to the charges against Plaintiff.

52. Likewise the Obstruction of Justice charge had no merit and was based on a proposed affidavit that Plaintiff's lawyer, Tony Mirvis drafted based on the facts in the case.

53. At his plea allocution on October 12, 2016, Mr. Nayfeld testified that Plaintiff had nothing to gain and sought no financial gain. But the Government, using the new Obstruction of

14

000020

Justice charge as a pretense that "the interests of justice would be served," asked the court to seal Mr. Nayfeld's plea transcript.

> The court granted the request:
>> THE COURT: *** Is there anything else we need to do?
>> MR. THOMAS: Two brief matters, your Honor. First, because this is, as the Court has recognized, an ongoing cooperation situation, and particularly because the upcoming trial includes a charge of witness tampering, the Government believes that the interests of justice would be served by sealing filings related to Mr. Nayfeld and delaying the docketing of these proceedings until the conclusion of the trial before Judge Kaplan, if one is held.
>> THE COURT: Mr. Tassone, do you have any view on that?
>> MR. TASSONE: I have no objection to the Government's request, your Honor.
>> THE COURT: Well, **I certainly have no reason to second guess sealing in this matter upon the basis that the Government has set forth. If there is an issue of potential witness tampering elsewhere, obviously we want to make sure that we have done what we can to prevent anything occurring here.** So, the proceedings will be sealed.
>> **Now, after the trial and assuming that the trial happens, this entire matter will get transferred over to Judge Kaplan and he would then be the Judge in charge of whether he wants to unseal it and what the terms of that unsealing would be.** If it remains in front of me, you will need to give me a time frame when the unsealing would potentially be accomplished and if the answer is never, then it is never. If the answer is two years, then it is two years. But, I always like to ask about that at sentencing. Okay? Because otherwise things sort of sit in sort of a limbo position for perpetuity. All right?

54.  It is not clear what the exact connection was that the Government was making. According to the Government, they had already disclosed that a witness had informed the government that Plaintiff had declined any offer of payment. And they had already issued a superseding indictment charging Plaintiff with attempting to tamper with Boris Nayfeld's testimony.

55. As backdrop, the Government had offered a cooperation agreement to Anatoly Potik and Boris Nayfeld, as well as to Plaintiff. Anatoly Potik and Boris Nayfeld accepted· Plaintiff, however,

000021

rejected the cooperation offer.

56. The Government knew that if it took Plaintiff to trial, the likelihood of success given Mr. Nayfeld's testimony coupled with that of Mr. Mitnik, and the lack of a viable nexus to interstate commerce, was slim.

57. Upon information and belief, the Government was not pleased with Plaintiff's refusal to cooperate and set out with new vigor to see to it that he was punished. Because Plaintiff had refused to be a cooperative witness, the Government affirmatively wanted the exculpatory evidence to be withheld from Plaintiff so that it could continue to pressure Plaintiff until he was left with no choice but to choose to accept a plea bargain under the fear that, because of the Government's spin on the case, he could conceivably be convicted of a crime he did not commit and serve out the remainder of his life behind bars.

58. On October 13, 2016, the day after Boris Nayfeld's plea allocution, with the knowledge that 1) the victim, Oleg Mitnik, believed that Plaintiff saved his life and should never have been arrested and charged, 2) Boris Nayfeld had just testified that Plaintiff had refused any form of payment, and 3) Boris Nayfeld's exculpatory testimony was safely sealed away until further notice, the Government successfully moved the District Court to have Mr. Kotlyarsky's bail revoked. Plaintiff was directly remanded to custody.

59.     Plaintiff experienced great distress at having been summarily removed from the bosom of his family and confined to the MDC, Brooklyn solitary confinement. For the first time in this case, he experienced the reality that, despite his innocence, the Government's unchecked power could deprive him of his freedom.

60. Plaintiff spent the next nine days in contemplation of his fate.

61. On October 22, 2016, the Government issued a "current position" letter to Plaintiff via counsel.

16

000022

The letter said, "[b]ased upon the calculations set forth above, the defendant's sentencing range is **97 – 121 months' imprisonment**" (approximately eight to ten years).

62. The imposing prospect of coming out of jail at the age of 79 for a crime he did not commit instilled extraordinary fear in Mr. Kotlyarsky. He entertained the very real prospect of dying in prison, or, at best, emerging from prison on the eve of being an octogenarian, with no realistic expectation of any significantly meaningful life ahead.

63. Allowing time for this to sink in, a few days later, the Government presented the first opportunity for Mr. Kotlyarsky to essentially incarcerate himself. The Government issued its first plea offer. The offer, on October 25, 2016, was 70 – 87 months – six to seven years. Mr. Kotlyarsky was given until the end of the next day to decide. To the 69-year old Kotlyarsky, even six to seven years was unpalatable and his state of mind was one of shock and denial.

64. Late the next day, on October 26, 2016, the Government issued a second plea offer of 41 – 51 months. The cover letter stated that the "plea offer expires at the end of the day on October 26, 2016." Mr. Kotlyarsky was given 2 hours to accept it.

65.; Boxed into the corner, irrational from the fear of ten years' imprisonment instilled in him through the Government's deliberated methodology, unaware of Mr. Nayfeld's exculpating testimony of October 12, 2016, encouraged by counsel who had, through inexcusable gross negligence, missed material opportunities to effectively assist him, under duress, Mr. Kotlyarsky took the lesser of the risks.

66. The threat of imprisonment until the age of 79, effectively exerted by the Government despite their knowledge of the exculpatory evidence, was so pressing that it overcame Mr. Kotlyarsky's will and induced his acquiescence.

67. Had he known of Boris Nayfeld's exculpatory allocution testimony, and had he not been

000023

handled in the manner in which he was, he would not have accepted the plea deal.

### PLAINTIFF IS INNOCENT OF HOBBS ACT EXTORTION

68.     Plaintiff is charged with Hobbs Act extortion as defined by 18 USCS § 1951(b)(2). § 1951.
Interference with commerce by threats or violence:

> (a) Whoever in any way or degree obstructs, delays, or affects
> commerce or the movement of any article or commodity in
> commerce, by robbery or extortion or attempts or conspires
> so to do, or commits or threatens physical violence to any
> person or property in furtherance of a plan or purpose to do
> anything in violation of this section shall be fined under this
> title or imprisoned not more than twenty years, or both.
> (b) As used in this section—
> ***
> (2) The term "extortion" means the obtaining of property
> from another, with his consent, induced by wrongful use of
> actual or threatened force, violence, or fear, or under color of
> official right.
> 18 USCS § 1951 (emphasis added).

69.     Plaintiff never used actual or threatened force, violence or fear to obtain the

property of Mr. Mitnik or anyone else.

70. As stated in the Declaration of Oleg Mitnik, Plaintiff did not act with any intent to

obtain any property belonging to him:

> At no point did Mr. Kotlyarsky ever ask me or lead me to
> believe that he expected in any way to be compensated
> financially for telling me about the murder plot, for arranging
> for the meeting with Mr. Nayfeld, or for his efforts in helping
> to save my life.
> Although Mr. Kotlyarsky and I did have a conversation about
> business, it was a casual conversation, the type that any two
> business men may have, who have long been friends, are
> catching up after a time of absence, and who think well of and
> wish well for each other. The conversation was unequivocally
> disconnected from anything to do with the murder plot. Mr.
> Kotlyarsky was not a stranger to me. We have known each
> other for many years, and were from the same country, Russia.

71. As well, as stated in the Declaration of Oleg Mitnik, Plaintiff had encouraged Mr. Mitnik to
file a report with the police. And in fact, that is what Mr. Mitnik did.

> From the onset (around late October 2015), Mr. Kotlyarsky
> told me that I should go to the police to get them involved. In
> early November 2015, I filed a complaint with my neighborhood police department.

000024

In mid-November 2015, my complaint was forwarded to an organized crime task
force. Shortly thereafter, I met with federal authorities.
After Mr. Kotlyarsky informed me of the murder plot, it was
my idea, not his, for me to meet with the hit man, Boris
Nayfeld. I asked Mr. Kotlyarsky, not the other way around, if
he could arrange for a meeting between Mr. Nayfeld and me. I
believe my initiating this request was recorded on a recording
device provided to me by Special Agent Luke Hardison for the
12/3/2015 meeting between Mr. Kotlyarsky and me.

72.    Intent is essential element of crime in violation of Hobbs Act (18 USCS § 1951). See,

*United States v. Green*, 246 F. 2d 155 (7th Cir. 1957); cert den., 355 US 871 (1957); *United States*

*v. Sweeney*, 262 F. 2d 272 (3d Cir. 1959).

73.  Under the conspiracy clause of 18 USCS § 1951, the Government must prove that the accused

acted with an intent to join and cooperate in conspiracy to obstruct commerce by extortion; under

clauses of § 1951 proscribing obstruction, delay, or attempt to obstruct commerce by robbery or

extortion, general intent to commit those crimes is required. *United States v. Warledo*, 557 F. 2d

721 (10th Cir. 1977).

74. A Hobbs Act violation is specific intent crime; intent is essential element of offense and must

be proved beyond reasonable doubt.

75.  Plaintiff's state of mind was that he believed by telling Oleg Mitnick about the Murder-for-

Hire plot against him, he was giving his long-time friend an opportunity to avert that fate, thus

saving his life.

76. Mr. Mitnik then set upon the course of action he thought best in saving his own life. He went

secretly to the authorities so that they could help him record, document, and ultimately arrest Mr.

Nayfeld and his father-in-law, Anatoly Potik, the prime mover and mastermind behind the Murder-

for-Hire plot.

77. In fact, Mr. Mitnik had no idea the Government was going to arrest his friend: The victim does

not feel that Kotlyarsky should have been charged with extortion....The victim is upset because

000025

Kotlyarsky allegedly wants to sue him for accusing him of committing extortion, but he had "nothing to do with how the government files criminal charges." ...The victim believes that if it were not for Kotlyarsky interceding in this scheme, he would be dead.

78. What ultimately happened is that Anatoly Potik and Boris Nayfeld cut deals with the Government and both are on the streets today. Regrettably, Mr. Kotlyarsky found himself enmeshed in a Governmental whirlwind from which he became unable to extricate himself because of prosecutorial fervor and misconduct in withholding Brady material.

79. By withholding the exculpatory evidence of Boris Nayfeld, the Government, manufactured the factual basis that Plaintiff was guilty of the crimes of Extortion and Conspiracy to Commit Extortion

80.    Accordingly, Plaintiff brings this action for violations of his Fourth Amendment rights, malicious prosecution and negligent infliction of severe emotional and mental distress that the Defendants' actions had caused and continue to cause him.

### COUNT I – 42 U.S.C. §1983
### Violation of the Fourth Amendment (Against All Defendants)

81. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

82. Defendants Brady violations as outlined above led to the wrongful prosecution of Plaintiff; thus, violating Plaintiffs' rights under the Fourth Amendment to the United States Constitution.

83. As a proximate result of the above detailed actions of Defendants, Plaintiff suffered injuries including pain and suffering, emotional distress and mental anguish.

### COUNT II
### Fourth Amendment- Unlawful Detention

84. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

000026

85. As described above, Defendant the Department of Justice and the Federal Bureau of Investigation, under the directions of James Comey falsely arrested Plaintiff knowing that there was no probably cause to prosecute Plaintiff; these actions were motivated by malice.

86. Defendant the Department of Justice, under the direction of Preet Bharrera in his official capacity, subjected Plaintiff to judicial proceedings for which there was no probably cause. These judicial proceedings were instituted and continued maliciously, resulting in injury.

87. The actions stated herein violate the United States Constitution, specifically the 4th and 14th Amendments.

88. The misconduct described herein was undertaken by Defendants Bharrera and Comey within the scope of their employment such that their employer is liable for their actions

89. As a result of the Defendants actions Plaintiff suffered pain and injury, including emotional anguish, humiliation, fear, anxiety, and the loss of Plaintiffs' liberty and livelihood.

<div align="center">

**COUNT III**

**Conspiracy (Against All Defendants)**

</div>

90. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

91. In agreeing to falsely charge Plaintiff with a criminal offense without any reason to believe he had committed a crime, Defendants acted in concert with each other to intentionally deprive Plaintiff of his Constitutional rights under color of law.

000027

92. In furtherance of this conspiracy, Defendant the Department of Justice took overt acts to suppress exculpatory evidence from the Plaintiff and the Court, all in violation of federal law.

93. The misconduct described herein was undertaken intentionally, with malice, willfulness, wantonness and reckless indifference to the rights of the Plaintiff.

94. As a result of the above-described wrongful infringement of Plaintiff's rights, he suffered damages.

95. The aforementioned actions of Defendants were the direct and proximate cause of violations of the United States Constitution, the Fourth Amendment and the Fourteenth Amendment.

### COUNT IV – STATE LAW CLAIM
#### Malicious Prosecution

96. Each of the foregoing Paragraphs is incorporated as if restated fully herein.

97. As described above, Defendants willfully and wantonly initiated and continued criminal proceedings against Plaintiff without probable cause to believe that Plaintiff had committed the crimes charged.

98. The charges were instituted and continued with malice.

99. The Plaintiff pled guilty under duress, but was actually and objectively innocent.

100.     As a result of the Defendants conduct, Plaintiff suffered injuries including emotional distress.

### COUNT V- STATE LAW CLAIM                    Intentional
#### Infliction of Emotional Distress

101.     Each of the foregoing Paragraphs is incorporated as if restated fully herein.

000028

102.    Defendants' by their actions as alleged herein caused Plaintiff to experience intense fear, anxiety and mental suffering.

103.    Defendants' infliction of severe emotional distress, extreme fear, anxiety and mental suffering was negligent.

104.    Defendants are jointly and severally liable to Plaintiff for his injuries in an amount not less then $250 million dollars.

### PRAYER FOR RELIEF AND JURY DEMAND

WHEREFORE, Plaintiff respectfully requests:

A.  Compensatory and consequential damages in an amount to be determined at trial but no less than $250 million for losses incurred by Plaintiff;

B.  Interest on those damages;

C.  Such other relief as is just, fair and equitable; and

D.  A jury trial on all counts.

Dated: New York, New York
       October 30, 2020

                                       Respectfully submitted,

                                       */s/ Irina Shpigel*
                                       Irina Shpigel, Esq.

000029

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BORIS KOTLYARSKY,

      Plaintiff,

     -v-

UNITED STATES DEPARTMENT OF JUSTICE,
PREET BHARARA, *in his official capacity*, JAMES
COMEY, *in his official capacity*,

      Defendants.

---

20 Civ. 9230 (PGG)

### DEFENDANTS' NOTICE OF MOTION TO DISMISS

  PLEASE TAKE NOTICE that upon the accompanying Memorandum of Law in Support of Defendants' Motion to Dismiss the Complaint, Defendants United States Department of Justice, Preet Bharara, in his official capacity, and James Comey, in his official capacity, by their attorney, Audrey Strauss, United States Attorney for the Southern District of New York, hereby move this Court for an order dismissing the Complaint pursuant to Rules 12(b)(1) and (b)(6) of the Federal Rules of Civil Procedure.

000030

Page 2

Dated:   July 6, 2021
         New York, New York

                          Respectfully submitted,

                          AUDREY STRAUSS
                          United States Attorney for the
                          Southern District of New York
                          *Attorney for the Defendants*


               By:    */s/ Tara Schwartz*
                          _____
                          TARA SCHWARTZ
                          Assistant United States Attorney
                          86 Chambers Street, 3rd Floor
                          New York, New York 10007
                          Tel.: (212) 637-2633
                          E-mail: tara.schwartz@usdoj.gov

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BORIS KOTLYARSKY,

               Plaintiff,

        -v-

UNITED STATES DEPARTMENT OF JUSTICE,
PREET BHARARA, *in his official capacity*, JAMES
COMEY, *in his official capacity*,

               Defendants.

20 Civ. 9230 (PGG)

---

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE COMPLAINT**


                                AUDREY STRAUSS
                                United States Attorney for the
                                Southern District of New York
                                86 Chambers Street, 3rd Floor
                                New York, New York 10007
                                Tel.: (212) 637-2633
                                E-mail: tara.schwartz@usdoj.gov


TARA SCHWARTZ
Assistant United States Attorney
– Of Counsel –

## TABLE OF CONTENTS

PRELIMINARY STATEMENT ..................................................................................1

BACKGROUND ......................................................................................................2

    I.      THE CRIMINAL CHARGES AGAINST KOTLYARSKY .................................2

    II.     KOTLYARSKY'S CRIMINAL PROCEEDINGS.......................................4

    III.    KOTLYARSKY'S GUILTY PLEA ......................................................5

    IV.    KOTLYARSKY'S SENTENCING.........................................................8

    V.     KOTLYARSKY'S § 2255 PETITION ..................................................11

STANDARD OF REVIEW ....................................................................................13

ARGUMENT........................................................................................................14

    I.      KOTLYARSKY'S COMPLAINT MUST BE DISMISSED ...............................14

        A.    Kotlyarsky's Claims Are Barred By Collateral Estoppel .........................14

            1.    Kotlyarsky is Collaterally Estopped from Rearguing that Defendants Violated Their *Brady* Obligations and Duty of Candor.......................................................................................16

            2.    Kotlyarsky is Collaterally Estopped From Arguing That The Government Should Have Elicited Exculpatory Testimony from Mitnik................................................................17

            3.    Kotlyarsky is Collaterally Estopped From Arguing That He Pleaded Guilty Under Duress.......................................................18

        B.    Kotlyarsky's Claims Are Barred By *Heck v. Humphrey* ...........................18

        C.    Kotlyarsky's Claims Are Barred By Sovereign Immunity .......................20

        D.    Defendants Cannot Be Sued Pursuant to § 1983 .......................................21

        E.    Kotlyarsky Has Failed to Plead the Elements of Malicious Prosecution.............................................................................................22

        F.    Kotlyarsky Has Failed to Plead the Elements of False Arrest...................23

        G.    Kotlyarsky Has Failed to Plead the Elements of Intentional infliction of Emotional Distress ................................................................24

CONCLUSION.....................................................................................................25

i

### TABLE OF AUTHORITIES

CASES

*Abdel-Whab v. Orthopedic Ass'n of Dutchess Cnty.*, 415 F. Supp. 2d 293 (S.D.N.Y. 2006) ...... 15

*Adickes v. S.H. Kress & Co.*, 398 U.S. 144 (1970) ................................................................... 21

*Ahlers v. Rabinowitz*, 684 F.3d 53 (2d Cir. 2012) ................................................................... 13

*Allen v. McCurry*, 449 U.S. 90 (1980) ................................................................................... 15

*Amaker v. Weiner*, 179 F.3d 48 (2d Cir. 1999) .................................................................. 19, 20

*APWU v. Potter*, 343 F.3d 619 (2d Cir. 2003) ....................................................................... 13

*Ashcroft v. Iqbal*, 556 U.S. 662 (2009) ................................................................................. 13

*Baez v. City of New York*, No. 17 Civ. 1767 (BMC) (PK), 2019 WL 1050996 (E.D.N.Y. Mar. 3, 2019) ................................................................................................................................... 19

*Bernard v. United States*, 25 F.3d 98 (2d Cir.1994) ............................................................. 23

*Broughton v. State*, 37 N.Y.2d 451 (1975) ....................................................................... 23, 24

*Cameron v. Fogarty*, 806 F.2d 380 (2d Cir. 1986) ................................................................. 24

*Chambers v. Time Warner, Inc.*, 282 F.3d 147 (2d Cir. 2002) ....................................... i, 13, 25

*Ciambriello v. Cnty. of Nassau*, 292 F.3d 307 (2d Cir. 2002) ............................................... 22

*Conklin v. Doe*, No. 01 Civ. 987 (LLS), 2002 WL 227067 (S.D.N.Y. Feb. 13, 2002) ................ 22

*Cox v. Aversa*, No. 18 Civ. 3898 (NSR), 2020 WL 815476 (S.D.N.Y. Feb. 19, 2020) .............. 19

*Davis v. United States*, No. 03 Civ. 1800 (NRB), 2004 WL 324880 (S.D.N.Y. Feb. 19, 2004).. 21

*District of Columbia v. Carter*, 409 U.S. 418 (1973) ............................................................ 21

*Duamutef v. Morris*, 956 F.Supp. 1112 (S.D.N.Y. 1997) ....................................................... 20

*Fairley v. Collins*, No. 09 Civ. 6894 (PGG), 2011 WL 1002422 (S.D.N.Y. Mar. 15, 2011)... 2, 14

*FDIC v. Meyer*, 510 U.S. 471 (1994) ................................................................................ 21, 22

*Guerrero v. Gates*, 442 F.3d 697 (9th Cir. 2006) .................................................................. 20

*Hayes v. County of Sullivan*, 853 F. Supp. 2d 400 (S.D.N.Y. 2012) ....................................... 15

*Hertz Corp. v. City of New York*, 1 F.3d 121 (2d Cir. 1992) ................................................... 13

*Hylton v. J.P. Morgan Chase Bank, N.A.*, 338 F. Supp. 3d 263 (S.D.N.Y. 2018) ..................... 14

*In re Agent Orange Prod. Liab. Litig.*, 818 F.2d 210 (2d Cir. 1987) ....................................... 22

*John's Insulation, Inc. v. Siska Const. Co.*, 774 F. Supp. 156 (S.D.N.Y. 1991) ........................ 22

*Johnson v. City of New York*, 551 F. App'x 14 (2d Cir. 2014) ................................................ 24

*Kotlyarsky v. United States*, No. 18 Civ. 1746 (LAK), 2019 WL 1957537 (S.D.N.Y. May 2, 2019) .............................................................................................................................. passim

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. 1995) ....................................................................... 23

ii

*Machibroda v. United States*, 368 U.S. 487 (1962) ........................................................ 19

*Magnotta v. Putnam Cty. Sheriff*, No. 13 Civ. 2752, 2014 WL 705281 (S.D.N.Y. Feb. 24, 2014)
............................................................................................................................................ 23

*Makarova v. United States*, 201 F.3d 110 (2d Cir. 2000) ............................................... 13

*Mangiafico v. Blumenthal*, 471 F.3d 391 (2d Cir. 2006) ............................................... 14

*McNeil v. United States*, 508 U.S. 106 (1993) ............................................................... 22

*Montana v. United States*, 440 U.S. 147 (1979) ............................................................ 14

*Murphy v. Lynn*, 118 F.3d 938 (2d Cir. 1997) ............................................................... 22

*Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252 (2d Cir. 1975) ..................... 22

*Noel Pane v. Town of Greenburgh*, No. 07 Civ. 3216 (LMS), 2012 WL 12886971 (S.D.N.Y. Mar. 21, 2012) ................................................................................................................... 25

*Peay v. Ajello*, 470 F.3d 65 (2d Cir. 2006) .................................................................... 19

*Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 WL 1046137 (E.D.N.Y. Apr. 17, 2009) .......... 20

*Poventud v. City of New York*, 750 F.3d 121 (2d Cir. 2014) .......................................... 19

*Rich v. Fox News Network, LLC*, 939 F.3d 112 (2d Cir. 2019) ...................................... 24

*Rivera v. City of Yonkers*, 470 F. Supp. 2d 402 (S.D.N.Y. 2007) ................................. 23

*Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502 (2d Cir. 1994) ....................... 20

*Romer v. Morgenthau*, 119 F. Supp. 2d 346 (S.D.N.Y. 2000) ...................................... 22

*Russell v. Smith*, 68 F.3d 33 (2d Cir. 1995) .................................................................. 23

*Salmon v. Blesser*, 802 F.3d 249 (2d Cir. 2015) ........................................................... 24

*Singer v. Fulton County Sheriff*, 63 F.3d 110 (2d Cir. 1995) ........................................ 23

*Tavarez v. Reno*, 54 F.3d 109 (2d Cir. 1995) ................................................................. 19

*TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370 (S.D.N.Y. 1999) ........................... 14

*United States v. Doe*, 537 F.3d 204 (2d Cir. 2008) ........................................................ 19

*United States v. Meregildo*, 920 F. Supp. 2d 434 (S.D.N.Y. 2013) ............................... 15

*United States v. Mitchell*, 463 U.S. 206 (1983) ............................................................. 20

*United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015) .................................................... 15

*United States v. Podell*, 572 F.2d 31 (2d Cir. 1978) ...................................................... 14

*United States v. Sherwood*, 312 U.S. 584 (1941) ........................................................... 20

*Weyant v. Okst*, 101 F.3d 845 (2d Cir. 1996) ................................................................ 23

*Wyler v. United States*, 725 F.2d 156 (2d Cir. 1983) ..................................................... 22

*Younger v. City of N.Y.*, 480 F. Supp. 2d 723 (S.D.N.Y. 2007) ..................................... 20

000035

<u>STATUTES</u>

18 U.S.C. § 1951 ................................................................................................. 4

18 U.S.C. § 2 ...................................................................................................... 4

28 U.S.C. § 1346 ............................................................................................... 22

28 U.S.C. § 2255 ......................................................................................... passim

28 U.S.C. §§ 2671 *et seq.* .............................................................................. 22

42 U.S.C. § 1983 ......................................................................................... passim

<u>RULES</u>

Federal Rule of Civil Procedure 12(b)(1) ................................................... 1, 13

Federal Rule of Civil Procedure 12(b)(6) ................................................... 1, 13

Federal Rule of Civil Procedure 4(i)(3) ......................................................... 21

000036

## PRELIMINARY STATEMENT

Defendants the United States Department of Justice, and Preet Bharara and James Comey, sued in their official capacities, by their attorney Audrey Strauss, United States Attorney for the Southern District of New York, hereby move to dismiss the Complaint pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim.

Plaintiff Boris Kotlyarsky ("Plaintiff" or "Kotlyarsky"), who was convicted in the United States District Court of the Southern District of New York of extortion and conspiracy to commit extortion, alleges that his arrest and prosecution violated his rights under the Fourth and Fourteenth Amendments and *Brady v. Maryland*, 373 U.S. 83 (1963).  But Kotlyarsky's civil claims, which attempt to relitigate his criminal case through the guise of a civil rights lawsuit, amount to nothing more than a collateral attack on his conviction and issues squarely decided against him in his criminal case.  Because a judgment in his favor would necessarily imply the invalidity of Kotlyarsky's criminal conviction, his claims are barred by *Heck v. Humphrey*, 512 U.S. 477 (1994).  Further, certain of the alleged constitutional violations Kotlyarsky asserts were raised directly and litigated fully in his habeas petition, brought pursuant to 28 U.S.C. § 2255, collaterally estopping him from rearguing them for a second time.

The Complaint suffers from numerous, additional infirmities including that the claims are barred by sovereign immunity, the Defendants cannot be sued pursuant to 42 U.S.C. § 1983, and the Complaint otherwise fails to state a claim.  For all of these reasons, and as set forth in greater detail below, the Complaint should be dismissed in its entirety, and judgment should be entered in favor of the Defendants.

1

000037

# BACKGROUND

## I.   The Criminal Charges Against Kotlyarsky

On January 15, 2016, the United States Attorney's Office for the Southern District of

New York (the "Government") filed a criminal complaint, sworn to by a Special Agent of the

Federal Bureau of Investigation ("FBI"), alleging that Kotlyarsky brokered a deal between Boris

Nayfeld ("Nayfeld") and Oleg Mitnik ("Mitnik"), wherein Mitnik agreed to pay Nayfeld

approximately $125,000 in exchange for Nayfeld's promise to halt a pending contract for

Mitnik's murder.  (*See* Criminal Complaint, No. 16 Cr. 215 (LAK), Dkt. #1 (S.D.N.Y. Jan. 15,

2016)).[1]  The murder contract was allegedly issued by Mitnik's father-in-law, Anatoly Potik.

(*See* Compl. ¶¶ 2-3, 11).

According to the criminal complaint, when Kotlyarsky learned that Potik planned to hire

Nayfeld to kill Mitnik, he arranged a meeting with Mitnik, on or around October 31, 2015.  (*See*

Dkt. #1 at ¶ 5(a); Transcript of Plea Hearing, Dkt. #49 at 16-18).  At that meeting, at a restaurant

in Brooklyn, Kotlyarsky informed Mitnik that Potik had approached Nayfeld with a contract to

kill Mitnik in exchange for $100,000.  (*See id.*).  Kotlyarsky told Mitnik that he could arrange a

deal between Mitnik and Nayfeld to avoid the harm.  (Dkt. #1 at ¶ 5(a)-(b)).  Unbeknownst to

Kotlyarsky or to Nayfeld, Mitnik contacted law enforcement.  (*See id.* at ¶ 5(c)).  Law

enforcement recorded subsequent meetings and communications that Mitnik had with Kotlyarsky

and Nayfeld relating to the murder contract.  (*See generally,* Dkt. #1).  On December 3, 2015,

---

[1]    The Court may take judicial notice of the public records in Kotlyarsky's criminal case,
which are both incorporated by reference and integral to the complaint.  *See e.g., Fairley v.
Collins,* No. 09 Civ. 6894 (PGG), 2011 WL 1002422, at *1 (S.D.N.Y. Mar. 15, 2011).  Unless
specified, all further docket citations in this letter refer to the docket in *United States v.
Kotlyarsky,* No. 16 Cr. 215 (LAK).

000038

Kotlyarsky again met with Mitnik and indicated that he could broker a deal between Mitnik and Nayfeld. (*See id.* at ¶¶ 6-7).

On January 7, 2016, Kotlyarsky called Mitnik and told him to meet with Nayfeld and either "end the problem, or instead [say] that he is busy" and not attend the meeting. (*See id.* at ¶ 9(b)). The next day, Kotlyarsky and Nayfeld met with the Mitnik. (*See id.* at ¶ 11). At the meeting, Kotlyarsky introduced Nayfeld to Mitnik and then excused himself to a nearby table to "allow [Mitnik] and Nayfeld to discuss business." (*Id.* at ¶¶ 12(a), 11(c)). During the meeting, Nayfeld informed Mitnik that Potik had promised him $250,000 to kill Mitnik and had already transferred him $50,000 as partial payment on the murder contract. (*Id.* at ¶ 12(b)). When Kotlyarsky arranged the meeting, Kotlyarsky believed and intended that Nayfeld would demand money from Mitnik to halt the murder contract, and that due to Nayfeld's criminal reputation, Mitnik would likely pay the money that Nayfeld demanded. (*See* Dkt. #49 at 16-18).

Three days later, on January 11, 2016, Kotlyarsky, Mitnik, and Nayfeld met again at another restaurant in Brooklyn. (Dkt. #1 at ¶ 13(a)). Kotlyarsky initially met with Nayfeld and Mitnik but then moved to a restaurant across the street, leaving Mitnik and Nayfeld to sit and discuss. (*Id.*). During the meeting, Nayfeld demanded $125,000, with $50,000 due by January 15, 2016. (*Id.* at ¶ 14(b)).

On January 14, 2016, Mitnik met Nayfeld at a restaurant. (*See id.* at ¶ 15). Mitnik asked Nayfeld to assure him that he would be safe. (*Id.* at ¶ 15(b)). Nayfeld agreed to call Potik; Mitnik dialed Potik's number from his cell phone, and handed the phone to Nayfeld. (*See id.*). Nayfeld then threatened the person on the other end of the phone, warning that person not to touch Mitnik. (*See id.*). In Nayfeld's presence, Mitnik then wrote a check in the amount of $50,000 which he gave to Nayfeld. (*Id.* at ¶ 15(c)). Upon leaving the restaurant where the

3

meeting took place, the FBI arrested Nayfeld and Kotlyarsky. (*See id.* at ¶¶ 15(d)-(e)). When

the law enforcement officers approached Nayfeld to arrest him, he tore up the check and uttered

an expletive. (*See id.*).

## II.   Kotlyarsky's Criminal Proceedings

On March 16, 2016, a federal grand jury indicted Kotlyarsky of one count of conspiracy

to commit Hobbs Act extortion, in violation of 18 U.S.C. § 1951, and one count of Hobbs Act

extortion, in violation of 18 U.S.C. §§ 1951 and 2. (*See* Dkt. #16). On August 16, 2016,

Kotlyarsky filed an omnibus pretrial motion which sought, *inter alia*, the dismissal of the

indictment on the grounds that it failed to state a crime. (Dkt. #27 at 3-5).[2] Kotlyarsky argued

that the Government had no evidence that he agreed with Nayfeld to extort Mitnik and that the

indictment was defective in failing to provide him with notice as to what he was accused of

doing in furtherance of the conspiracy. (*See id.*). The Government opposed the motion, and the

Court denied the motion to dismiss on September 14, 2016. (*See* Dkt. #32).

In the weeks before a scheduled November 7, 2016 trial, the Government discovered that

Kotlyarsky had attempted to shape or prevent Nayfeld's testimony against him by (a) drafting an

affidavit for Nayfeld's signature containing the false and miseadling statement that Nayfeld had

merely attempted to sell Mitnik information; (b) providing protected case documents to

Nayfeld's son; (c) proposing that Kotlyarsky sue Mitnik's family and share a portion of the

recovery with Nayfeld's family; and (d) asking Nayfeld's son whether Nayfeld had considered

what his criminal associates in Russia would think if they learned that Nayfeld had tesitified.

(*See* Dkt. #58 at 6-7; Dkt. #35).

---

[2]      The omnibus pretrial motion also sought: (i) a bill of particulars from the Government; (i)
the immediate disclosure of all *Brady* and *Giglio* material from the Government; and (iii) the
immediate disclosure of all Jencks Act material. (*See generally*, Dkt. #27).

000040

On October 1, 2016, the Government produced supplemental discovery to Kotlyarsky, including documents related to the obstruction conduct. (*See* Dkt. #71-3). In a letter to Kotlyarsky's prior counsel dated October 1, 2016 (the "October 1, 2016 Letter"), the Government informed Kotlyarsky that a witness had "informed the Government . . . [that] the defendant was offered direct payment in connection with the events described in the Indictment, but declined the offer." (*Id.*).

On October 5, 2016, a grand jury returned a superseding indictment alleging that, in addition to the plot relating to the murder contract, Kotlyarsky and Nayfeld had also conspired to commit extortion by agreeing to use Nayfeld's "reputation for violence and association with organized crime figures to recover Kotlyarsky's business interests in Russia." (Dkt. #35 at 3). The superseding indictment also contained a new count of attempted witness tampering, based on the allegations that Kotlyarsky had attempted to influence Nayfeld's testimony by seeking to persuade Nayfeld to sign a false affidavit. (*See id.* at 5).

On October 12, 2016, Nayfeld pleaded guilty to one count of conspiracy to commit Hobbs Act extortion and one count of Hobbs Act extortion before Judge Katherine Forrest. (*See* Compl. ¶ 23). In his plea allocution, Nayfeld stated, *inter alia*, that "[i]t was [his] intention to share the money with [Kotlyarsky] but he said no." (*Id.*). At the Government's request, Judge Forrest ordered that the transcript be sealed. (*Id.* at ¶ 24).

### III. Kotlyarsky's Guilty Plea

On October 27, 2016, pursuant to a plea agreement, Kotlyarsky pleaded guilty to Hobbs Act extortion and conspiracy to commit Hobbs Act extortion before United States Magistrate Judge Fox. (*See* Dkt. #49; Minute Entry at 10/27/2016). At the change of plea conference, Judge Fox, Kotlyarsky, and the Assistant United States Attorney had the following exchange:

000041

THE DEFENDANT:  In the summer of 2015, I learned that Boris Nayfeld had been hired by Anatoly Potik to kill an enemy of Anatoly Potik.  Based upon the description of the person, I believed the person to be killed was Potik's son-in-law, Oleg Mitnik because of dispute over $20 million divorce case.

I knew Oleg Mitnik for many years.  At one time I want Oleg Mitnik to marry my daughter, who sits here in the room, and I inform Boris Nayfeld of this.  I did not want to see Mitnik harm her.

On October 31, 2015, I met with Mitnik and informed him that I believed Nayfeld had been hired by Potik to kill son-in-law, Oleg Mitnik.

It was later confirmed to me that indeed it was Mitnik who Potik had hired Nayfeld to kill Potik's son-in-law, Anatoly Potik, person who wants to kill his son-in-law. I agreed with Nayfeld to introduce him and set up meeting with him and Mitnik, during which I suspect Nayfeld would demand money from Mitnik so that Nayfeld would not carry through his agreement with Potik.

I suspect that due to Nayfeld criminal reputation, Mitnik would fear Nayfeld and would likely pay [Nayfeld] the money he demanded.

Prior to Nayfeld meeting Mitnik, I did not know how much money Nayfeld would demand.  I would not expect to be paid any portion of the money Nayfeld would try to obtain from Mitnik.  There was no financial gain for me at all.

I have since learned that Nayfeld told Mitnik [$]125,000 and on January 14, Mitnik paid Nayfeld $50,000 with a check.  I learned later.  I didn't knew that it was going to happen [at the] meeting.

I know Mitnik did so out of fear that if he did not, Nayfeld might follow through on his agreement with Potik to kill Mitnik.  I want to prevent the tragedy and save human being lives.

My actions aided and abetted Nayfeld in obtaining money from Mitnik in this way.

I also know that this payment potentially affected interstate commerce in that Mitnik had a business based in New Jersey and the meetings with Mitnik and Nayfeld took place in Brooklyn, New York.

That's it, your Honor.  I'm sorry one more time.  There is no financial or any other gain for me was in this case.

THE COURT:  If I understood you correctly, you learned that a person's son in-law was to be killed and you agreed to set up a meeting where you suspected that an agreement would be made to prevent that killing for a demand of money.  Is that correct?

THE DEFENDANT:  I suspect, yes, sir.  Yes, your Honor.  I'm sorry.

THE COURT:  A demand for money was made of $125,000 and $50,000 was paid with respect to that demand, if I understood you correctly.

THE DEFENDANT:  Yes.  But I didn't know about $125,000.

6

THE COURT: And you aided and abetted the receipt of that money, if I understood what you said correctly. Is that right?

THE DEFENDANT: The answer is yes.

THE COURT: And because of the locations of the persons involved and their travel, this arrangement affected interstate commerce, if I understood you correctly, someone traveled from New Jersey --

THE DEFENDANT: Yes, sir. I did not -- his business was in New Jersey, but he live in New York. Yeah. I take full responsibility. I'm nervous. I'm sorry, your Honor. I understood that it could affect interstate commerce.

THE COURT: When you engaged in the activities that you have just been describing, did you know that what you were doing was wrong?

THE DEFENDANT: Yes. The answer is yes.

THE COURT: The meeting that you arranged where there would be a discussion about preventing the killing of someone's son-in-law, where did that occur?

THE DEFENDANT: Meeting that I arrange happened in Brooklyn, but I arrange meeting because of ask him many times of Oleg Mitnik. He want to see this guy. Where it happen. In Brooklyn. It's on the request of Oleg Mitnik, this meeting was arranged. It happened in Brooklyn. I'm sorry.

THE COURT: Are there any questions that the government would have me put to the defendant?

MR. THOMAS: Yes, your Honor. The government would invite the Court to inquire of the defendant whether he intended to create a circumstance where Mr. Nayfeld would be paid money. I heard the defendant say he suspected such a circumstance would exist, but to invite the Court to ask him whether he intended for that to happen.

THE DEFENDANT: I knew he will ask him for money.

THE COURT: Sir, when you engaged in the conduct you have been describing, did you intend through your actions to create a circumstance where money would be demanded and paid?

THE DEFENDANT: Number one, I tried to prevent a tragedy, but whole answer is yes. Yes, your Honor.

THE COURT: I want to be clear about what your answer is to my question.

THE DEFENDANT: Yes, your Honor.

THE COURT: When you arranged for the meeting you described and that meeting was to create a circumstance where someone's son-in-law would not be killed, did you intend through your actions, as you described them earlier, to create a circumstance where money would be demanded and paid?

THE DEFENDANT: The answer is yes, I suspect it.

THE COURT: I'm not asking about what you suspect.

7

000043

THE DEFENDANT:  I'm sorry.  Yes, your Honor.

THE COURT:  I'm asking about what you intended through your conduct.  Did you intend to create a circumstance?

THE DEFENDANT:  Yes.

THE COURT:  Where you arranged the meeting that you've been describing this morning?

THE DEFENDANT:  Yes, your Honor.

(Dkt. #49 at 16:22 to 21:09).  Judge Fox recommended that Judge Kaplan accept  Kotlyarsky's guilty plea (*id.* at 23:17-25), and on October 27, 2016, Judge Kaplan accepted Kotlyarsky's guilty plea (*see* Dkt. #45).

## IV.  Kotlyarsky's Sentencing

In advance of sentencing, the U.S. Probation Office prepared the Presentence Investigation Report ("PSR").  (*See generally* Dkt. #61).  The PSR included four paragraphs summarizing statements that Mitnik made to the Probation Office.  (*See* Dkt. #70).  Among those paragraphs, the PSR reported the following remarks:

- "the victim views Kotlyarsky as a middle man in this conspiracy";
- "[Kotlyarsky] never asked for or expected to be compensated financially for telling him about the contract";
- "The victim does not feel that Kotlyarsky should have been charged with extortion"; and
- "The victim is upset because Kotlyarsky allegedly wants to sue him for accusing him of committing extortion."

(*See id.* (quoting PSR ¶¶ 25-28)).

The Government did not object to the inclusion or content of those paragraphs in the PSR.  (*See id.*).  Kotlyarsky's counsel submitted a sentencing memorandum and, after the Government's submission, a supplemental letter that enclosed various transcripts of recordings.  (*See* Dkt. #56; Dkt. #59).  The fifteen-page sentencing memorandum included a number of arguments:

8

000044

- Kotlyarsky's involvement in the crime was not for profit;
- Kotlyarsky acted to assure Mitnik's safety;
- The Court should consider the fact that Nayfeld would likely receive a downward departure from the Sentencing Guidelines for assisting the Government;
- Kotlyarsky's age and health warranted consideration; and
- The Court should consider Kotlyarsky's character as described in letters from his children and son-in-law.

(*See* Dkt. #56). Among other things, the sentencing memorandum quoted the Government's October 1, 2016 Letter and the PSR's summary of Mitnik's remarks. (*See id.* at 4-5). The supplemental materials included transcripts of various discussions between Mitnik and Kotlyarsky. (*See* Dkt. #59).

On May 31, 2017, Judge Kaplan held a sentencing conference. (*See* Dkt. #61). Kotlyarsky's prior counsel argued, "Mr. Kotlyarsky clearly discussed the option with him of going to One Police Plaza and at that point in time, for whatever reason, neither Mr. Kotlyarsky or the victim decided at least to go at that point." (*Id.* at 7:20-23). Prior counsel also emphasized the Mitnik's view that Kotlyarsky deserved no punishment: "You Honor has the statement that appears in the presentence investigation report, and I can tell your Honor that the statement was echoed on the day of the arrest by the victim, that he wonders why Mr. Kotlyarsky was charged because were it not for Mr. Kotlyarsky, the victim believes that he would have been dead." (*Id.* at 8:16-21).

Much of the argument focused explicitly on Kotlyarsky's motivation. (*See id.* at 9-11). His prior counsel argued for a below Guidelines sentence because "the motivation for the individual involved in the extortion plot is a motivation to save a life, coupled with the facts, your Honor, that he asked for no money for himself directly from anyone and, in fact, when offered a percentage by Mr. Nayfeld, turned it down." (*Id.* at 9:07-12). Counsel repeatedly

9

emphasized that Kotlyarsky did not expect payment: "Again, if Mr. Kotlyarsky was in this for money, he would have easily taken a percentage from Mr. Nayfeld. That would have meant that the victim probably wouldn't have known about that anyway." (*Id.* at 9:25-10:3). In addition, Kotlyarsky's prior counsel attempted to minimize Kotlyarsky's business pitch to the Victim: "He probably could have gotten away with that and still pitched a deal, if that's what his intention was. So I would suggest, most respectfully, that his intention was a good intention and not a bad intention." (*Id.* at 10:4-7).

For its part, the Government argued that Kotlyarsky's "sole purpose" in structuring the meetings between Nayfeld and Kotlyarsky was not to protect Mitnik. (*See id.* at 13:12-14). The Government explained how Kotlyarsky made the situation more fraught by introducing Mitnik to a notorious mobster and by repeatedly emphasizing to Mitnik that his life was in danger. (*See id.* at 14:15-18). And, of course, notwithstanding his various offers to go to law enforcement, Kotlyarsky did not do so. (*See id.* at 14:23). Instead, he purposefully and intentionally arranged for Nayfeld to demand money from Mitnik in exchange for Mitnik's safety. (*See id.* at 15:06-16).

After hearing from both parties and Kotlyarsky himself, the Court imposed a forty-one month sentence of imprisonment, a sentence that fell at the lowest end of the Stipulated Guidelines Range. (*See id.* at 19:3-9). In explaining the sentence, the Court, in part, commented that Kotlyarsky's motives were not purely altruistic:

> For the reasons that are set out in the government's letter and that Mr. Thomas has just ably summarized, I do not accept that your conduct with respect to the extortion here was quite as selfless as you and your lawyer have portrayed it. You saw, in my judgment, a situation of which you could take advantage, and you set about endeavoring to structure matters so that at the end of the day, in one way or another, there would be an economic benefit to you no matter how it turned out. Although I don't have specific evidence before me to make an express finding—and I don't— it seems to me that it would have been entirely reasonable to expect and,

000046

notwithstanding what I said already, more likely than not that you did expect that if Nayfeld was paid off, he would have something for you out of the payoff. I understand there's been no express testimony or evidence that you and Nayfeld ever had a specific discussion or understanding, but I do think the logic of the situation is such that that was your intent and expectation.

Furthermore, you on more than one occasion discussed with the victim the possibility of your doing business, directly or indirectly, with the victim, which indicates that you expected, in one way or another, that if the victim survived this whole episode, there would be something in it for you from that side.

So, even assuming for the sake of discussion that you intervened in the first place with the goal of avoiding the murder of the victim at the instance of Potik, I do think—and I find—that you did it, in part, out of the view that you would and could benefit economically from that intervention.

(*Id.* at 17:11-16).

## V.   Kotlyarsky's § 2255 Petition

On February 23, 2018, Kotlyarsky filed a *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2255. (Dkt. #66). The petition was later supplemented by an 88-page attorney affirmation. (Dkt. #72 ("Affirmation" or "Aff.")). The Affirmation argued, *inter alia*, that: (i) Kotlyarsky's trial counsel was ineffective in failing to elicit Nayfeld's testimony; (ii) the Government violated its *Brady* obligations and duty of candor by failing to provide Kotlyarsky and the Court with Nayfeld's guilty plea transcript; (iii) Kotlyarsky's trial counsel was ineffective in failing to elicit, at sentencing, Mitnik's testimony that he believed Kotlyarsky to be innocent; (iv) Kotlyarsky's trial counsel was ineffective in failing to seek the consolidation of Kotlyarsky's case with that of Nayfeld and Potik; (v) these various errors on both the part of the Government and Kotlyarsky's trial counsel caused Kotlyarsky to plead guilty under duress; (vi) if the Court would have had access to Nayfeld's plea allocution, the Court would have rejected Kotlyarsky's allocution and plea; and (vii) Kotlyarsky's actions did not amount to extortion because he never intended to obtain money or property from Mitnik. (*See id.* at 21-30, 40-72). The government opposed the petition (*see* Dkt. #76-77), Kotlyarsky filed a reply brief (*see* Dkt.

000047

#78) and, on May 2, 2019, Judge Kaplan, who had overseen the criminal proceedings against

Kotlyarsky, denied the petition. *See Kotlyarsky v. United States*, No. 18 Civ. 1746 (LAK), 2019

WL 1957537 (S.D.N.Y. May 2, 2019) ("*Kotlyarsky I*").

On June 19, 2019, Kotlyarsky submitted what he claimed to be "new" information,

including a New York Post article and email submitted with the reply brief in support of his

original habeas petition, an affidavit from Mitnik, and specific lines from Nayfeld's plea

transcript. (*See* Dkt. #81). The Court treated the submission as a motion for reconsideration and

denied it because it was both untimely and without merit. (*See* Dkt. #83). Then, on February 27,

2020, Kotlyarsky again submitted pages of what he claimed to be "new" information. (*See id.*).

However, Kotlyarsky failed to include any motion form or brief along with the list of "new"

information. (*See id.*). Accordingly, the Court mailed Kotlyarsky a copy of the motion forms for

a § 2255 habeas petition and the pro bono appointment of counsel. (*Id.*). On July 23, 2020,

counsel for Kotlyarsky entered a notice of appearance on the docket and requested an extension

of time to file a second habeas petition on Kotlyarsky's behalf. (*See Kotlyarsky v. United States*,

No. 18 Civ. 1746 (LAK), Dkt. #19-20 (S.D.N.Y. July 23, 2020)). On July 24, 2020, the Court

denied the extension request. (*Id.* at Dkt. #21).

Most recently, on June 29, 2021, Kotlyarsky submitted two documents expressing a

desire to testify before the Court about what he claims are various instances of government

misconduct. (*See* Dkt. #84, 85). In his submission he reiterates his prior defense that his "only

goal was to prevent a tragedy from happening and to save the life OF human being" (Dkt. #85 at

1-2), and asserts that his actions were a "noble deed" (Dkt. #84 at 1). The same day the Court

received Kotlyarsky's submissions it issued an order notifying Kotlyarsky that, to the extent he

wishes to make a collateral attack on his conviction, he must do so pursuant to a motion under 28

000048

U.S.C. § 2255.[3] (*See* Dkt. #86).  The Court explained that because it had already denied

Kotlyarsky's prior § 2255 petition, he would need to seek leave from the Court of Appeals to file

a successive motion.  (*See id.*).  The Court ordered the Clerk to again send Kotlyarsky forms for

filing a § 2255 motion and for seeking the appointment of counsel.  (*See id.*).

## STANDARD OF REVIEW

The legal standard for motions brought pursuant to Rules 12(b)(1) and 12(b)(6) are well

settled.  "To survive a motion to dismiss, a complaint must contain sufficient factual matter,

accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556

U.S. 662, 678 (2009).  A district court must "accept[] all factual allegations in the complaint as

true, and draw[] all reasonable inferences in the plaintiff's favor." *Ahlers v. Rabinowitz*, 684

F.3d 53, 60 (2d Cir. 2012) (internal quotation marks omitted).  A case is properly dismissed for

lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory

or constitutional power to adjudicate it. *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.

2000).  When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of showing

by a preponderance of the evidence that subject matter jurisdiction exists." *APWU v. Potter*, 343

F.3d 619, 623 (2d Cir. 2003) (internal quotations omitted).

In deciding a motion under Rules 12(b)(1) and 12(b)(6), the Court may consider (among

other things) documents incorporated by reference, integral to the complaint, or "in plaintiffs'

possession or of which plaintiffs had knowledge and relied on in bringing suit." *Chambers v.

Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002); *see also Hertz Corp. v. City of New York*, 1

F.3d 121, 125 (2d Cir. 1992).  It is well established that a district court may rely on matters of

---

[3]      The Court also explained that, to the extent Kotlyarsky "seeks only to testify about
whatever he thinks he knows about alleged government misconduct over the years" he did not
raise a case or controversy under Article III of the Constitution. (Dkt. #86).

13

public record in deciding a motion to dismiss, including arrest reports, criminal complaints,

indictments, and criminal disposition data. *Fairley v. Collins*, 09 Civ. 6894 (PGG), 2011 WL

1002422, at *1 n.2 (S.D.N.Y. Mar. 15, 2011) (citations and alterations omitted); *see also*

*Mangiafico v. Blumenthal*, 471 F.3d 391, 398 (2d Cir. 2006); *Hylton v. J.P. Morgan Chase Bank,*

*N.A.*, 338 F. Supp. 3d 263, 272-73 (S.D.N.Y. 2018).

## ARGUMENT

## I.   KOTLYARSKY'S COMPLAINT MUST BE DISMISSED

### A.   Kotlyarsky's Claims Are Barred By Collateral Estoppel

Collateral estoppel bars relitigation of an issue that was "actually and necessarily

determined by a court of competent jurisdiction . . . in subsequent suits based on a different cause

of action involving a party to the prior litigation." *Montana v. United States*, 440 U.S. 147, 153

(1979) ("Under collateral estoppel, once an issue is actually and necessarily determined by a

court of competent jurisdiction, that determination is conclusive in subsequent suits based on a

different cause of action involving a party to the prior litigation."). Under federal law, collateral

estoppel applies where the following four elements are met: (1) the issues raised in both

proceedings are identical; (2) the relevant issues were actually litigated and decided in the prior

proceeding; (3) the party to be estopped had a full and fair opportunity to litigate the issues in

that prior proceeding; and (4) resolution of the issues was necessary to support a valid and final

judgment on the merits. *TM Patents, L.P. v. IBM Corp.*, 72 F. Supp. 2d 370, 375 (S.D.N.Y.

1999).

It is well settled that a criminal conviction, whether by jury verdict or guilty plea,

constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those

matters determined by the judgment in the criminal case. *United States v. Podell*, 572 F.2d 31,

35 (2d Cir. 1978). Accordingly, collateral estoppel forecloses Kotlyarsky from revisiting issues

14

that were litigated and decided in his criminal proceedings. *See Allen v. McCurry*, 449 U.S. 90,

102 (1980) (collateral estoppel applies when civil rights plaintiff attempts to relitigate issues

decided against him in the underlying criminal proceeding); *see also Hayes v. County of

Sullivan*, 853 F. Supp. 2d 400, 426-27 (S.D.N.Y. 2012) (collecting cases in which collateral

estoppel barred a plaintiff from bringing § 1983 action to relitigate issues already decided in the

plaintiff's criminal proceedings); *Abdel-Whab v. Orthopedic Ass'n of Dutchess Cnty.*, 415 F.

Supp. 2d 293, 307 (S.D.N.Y. 2006) (barring *Bivens* claim attempting to challenge conduct that

was litigated in criminal proceeding).

The Complaint regurgitates the arguments made in Kotlyarsky's § 2255 petition that: (i)

the Government violated its *Brady* obligations by failing to disclose Nayfeld's plea transcript and

the fact that, during his plea allocution, Nayfeld remarked that he had offered Kotlyarsky money

but Kotlyarsky declined; (ii) the Government is at fault for failing to introduce Mitnik's

"testimony" in Kotlyarsky's case;[4] and (iii) because of these violations, Kotlyarsky pleaded

---

[4]     It appears that Kotlyarsky alleges that the Government violated an unspecified disclosure
obligation by failing to put Mitnik's "testimony" before the court at his sentencing proceedings.
But of course the Government's obligations do not extend to calling witnesses to testify on
behalf of criminal defendants at sentencing. In any event, the "testimony" that Kotlyarsky cites
is a letter, authored by Mitnik after the conclusion of the criminal case, that Kotlyarsky
submitted to the district court in connection with his § 2255 petition in which he states, among
other things, that "[a]t no point did [ ] Kotlyarsky ever ask [Mitnik] or lead [Mitnik] to believe
that he expected in any way to be compensated financially." *Kotlyarsky I*, at *3.

    This letter was not subject to *Brady* as it was never within the Government's possession,
and it appears that it did not even exist at the time of the criminal proceedings. *See United States
v. Meregildo*, 920 F. Supp. 2d 434, 445 (S.D.N.Y. 2013) ("[T]he Government is not responsible
for information that is not in its possession. *Brady* does not require the government to act as a
private investigator and valet for the defendant, gathering evidence and delivering it to opposing
counsel."), *aff'd sub nom. United States v. Pierce*, 785 F.3d 832 (2d Cir. 2015). To the extent
that Kotlyarsky takes issue with his trial counsel's failure to introduce such testimony at
sentencing, such an argument was already raised and rejected in Kotlyarsky's § 2255 petition.
*See Kotlyarsky I*, at *7. And further, that argument is misdirected in a a civil rights action
against these Defendants.

000051

guilty under duress. (*See generally*, Compl.). Accordingly, collateral estoppel applies to the

entirety of Kotlyarsky's Complaint. All of Kotlyarsky's alleged constitutional violations were

raised directly and litigated fully in his § 2255 petition, collaterally estopping Kotlyarsky from

rearguing them for a second time. Indeed, Kotlyarsky's habeas petition was subject to extensive

briefing and denied in a written decision on May 2, 2019, the reconsideration of which was also

denied, on June 23, 2020. (*See* Dkt. #66, 70-71, 76-78; *see also Kotlyarsky v. United States*, No.

18 Civ. 1746 (LAK) (S.D.N.Y.)). Kotlyarsky had a full and fair opportunity to litigate the

Constitutional claims he raises in this § 1983 action, and these issues were finally decided by

Judge Kaplan.

### 1.    Kotlyarsky is Collaterally Estopped from Rearguing that Defendants Violated Their *Brady* Obligations and Duty of Candor

The Complaint alleges that Defendants violated their *Brady* obligation and duty of candor

by failing to disclose the testimony given by Nayfeld at his plea hearing, the transcript of which

was filed under seal. Specifically, Kotlyarsky claims that Nayfeld's plea allocution constituted

exculpatory evidence because it shows that Kotlyarsky never intended to obtain Mitnik's

property; that the Government should have disclosed the transcript from Nayfeld's plea hearing

to Kotlyarsky and to the Court; and that if the Court had had access to Nayfeld's testimony, it

would have rejected Kotlyarsky's guilty plea for failing to make out the elements of extortion.

(*See* Compl. ¶¶ 23-34). These exact arguments were raised in Kotlyarsky's § 2255 petition. *See*

Aff. ¶¶ 50-57, 59, 61-63. Judge Kaplan thoroughly rejected Kotlyarsky's *Brady* argument:

> Kotlyarsky first argues that the government violated Brady by not disclosing the
> testimony given by Nayfeld at his plea hearing.[5]  This argument fails because
> Nayfeld's testimony does not establish Kotlyarsky's factual innocence.  To the

---

5       Separately, Judge Kaplan pointed out that Kotlyarsky's counsel knew the relevant portion
of Nayfeld's testimony when Kotlyarsky entered into the plea agreement. *See Kotlyarsky I*, at
*6.

16

000052

> contrary, it established that Nayfeld conspired with Kotlyarsky to commit extortion. Kotlyarsky argues that the government was obligated to produce Nayfeld's statement that "[i]t was [his] intention to share the money with [Kotlyarsky] but he said no." As discussed above, the government sent Kotlyarsky's counsel a letter which advised that "a witness ha[d] informed the Government, in sum and substance, that the defendant was offered direct payment in connection with the events described in the Indictment, but declined the offer." Additionally, the intention of Nayfeld to share money from the extortion plot with Kotlyarsky and Kotlyarsky's declination of that offer does not establish Kotlyarsky's innocence with respect to the charges of conspiracy to commit and aiding and abetting extortion.

*Kotlyarsky I*, at *7. Accordingly, Kotlyarsky's claims based on the Government's compliance with its *Brady* obligations and duty of candor must be dismissed because Kotlyarsky is precluded from relitigating the identical issue that was directly raised and adjudicated in his habeas petition.

### 2. Kotlyarsky is Collaterally Estopped From Arguing That The Government Should Have Elicited Exculpatory Testimony from Mitnik

Kotlyarsky also argues that the Government somehow erred in failing to elicit "exculpatory" testimony from Mitnik that: (i) Kotlyarsky never asked Mitnik for money or led him to believe he expected to be financially compensated; (ii) he believes Kotlyarsky saved his life; and (iii) he believes Kotlyarsky should not have been charged with extortion. (*See* Compl ¶¶ 35-36). Again, Kotlyarsky raised this exact same argument in his habeas petition. (*Compare* Compl. ¶¶ 35-36 *with* Aff. ¶¶ 65-66). In rejecting this argument, Judge Kaplan held:

> Kotlyarsky argues also that the government knew that Mitnik did not believe that Kotlyarsky had violated the law and should not have been charged with extortion, but did not disclose this evidence to Kotlyarsky. This argument fails because the subjective impressions such as these of the victim of the extortion plot would have had no bearing on whether Kotlyarsky is in fact guilty of the charges against him. Additionally, the victim's perspective that Kotlyarsky's actions kept him from being killed is reflected in the criminal complaint.

17

*Kotlyarsky I*, at \*8.  Accordingly, Kotlyarsky's claim that the Government should have elicited Mitnik's testimony must be dismissed because Kotlyarsky is precluded from relitigating the identical issue that was directly raised and adjudicated in his habeas petition.

### 3. Kotlyarsky is Collaterally Estopped From Arguing That He Pleaded Guilty Under Duress

Finally, Kotlyarsky argues that the Government's *Brady* violations and failure to elicit Mitnik's testimony caused Kotlyarsky to plead guilty under duress.  (*See* Compl. ¶¶ 42-46, 65). Again, this argument was raised and rejected in Kotlyarsky's § 2255 petition.  (*See* Aff. ¶¶ 102-08, 127).  Judge Kaplan specifically rejected Kotlyarsky's contention that his plea agreement be set aside because he agreed to plead guilty under duress caused by the Government. *See Kotlyarsky I*, at 8.  Indeed, Judge Kaplan found that nothing about the circumstances of the plea negotiations gave rise to the belief that Kotlyarsky pleaded guilty under duress and "there [was] no evidence to support the allegation that the government violated its *Brady* obligations." *Id.* Accordingly, Kotlyarsky's claim that he pleaded guilty under duress must be dismissed because Kotlyarsky is precluded from relitigating the identical issue that was directly raised and adjudicated in his habeas petition.

### B. Kotlyarsky's Claims Are Barred By *Heck v. Humphrey*

In *Heck v. Humphrey*, the Supreme Court held that civil claims arising from a plaintiff's criminal conviction are barred unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." 512 U.S. 477, 487 (1994).  Pursuant to the rule announced in *Heck*, a plaintiff may not seek damages in a civil suit if a judgment in his favor "'would necessarily imply the invalidity' of a

18

000054

prior state or federal criminal conviction or sentence." *Cox v. Aversa*, No. 18 Civ. 3898 (NSR),

2020 WL 815476, at *3 (S.D.N.Y. Feb. 19, 2020) (quoting *Heck*, 512 U.S. at 487)).

     *Heck* mandates dismissal of the Complaint because a judgment in Kotlyarsky's favor

would necessarily imply the invalidity of his conviction and sentence.  512 U.S. at 487; *see also*

*Tavarez v. Reno*, 54 F.3d 109, 110 (2d Cir. 1995).  The gravamen of Kotlyarsky's complaint is

that Defendants violated *Brady* by failing to disclose Nayfeld's plea allocution to Kotlyarsky and

the Court.  Claims sounding in *Brady* — that the defendants withheld exculpatory evidence —

are barred by *Heck*.  *See Poventud v. City of New York,* 750 F.3d 121, 132-33 (2d Cir. 2014)

("This Court has emphatically and properly confirmed that *Brady*-based § 1983 claims

necessarily imply the invalidity of the challenged conviction in the trial (or plea) in which the

*Brady* violation occurred."); *Amaker v. Weiner*, 179 F.3d 48, 51 (2d Cir. 1999) (holding that

*Brady* claims implicate the validity of the resulting conviction and are therefore barred by *Heck*).

     Kotlyarsky's claim that he pleaded guilty under duress fares no better.  To show that his

guilty plea was coerced or given under duress, Kotlyarsky must show that it was induced by

threats, misrepresentation, or improper promises.  *See United States v. Doe*, 537 F.3d 204, 211

(2d Cir. 2008).  But such a showing would call into question the validity of his conviction

because "[a] guilty plea, if induced by promises or threats which deprive it of the character of a

voluntary act, is void." *Id.* (quoting *Machibroda v. United States*, 368 U.S. 487, 493 (1962));

*see, e.g., Peay v. Ajello*, 470 F.3d 65, 68 (2d Cir. 2006) (dismissing § 1983 claim premised on an

allegedly coerced guilty plea as barred by *Heck*); *Baez v. City of New York*, No. 17 Civ. 1767

(BMC) (PK), 2019 WL 1050996, at *3 (E.D.N.Y. Mar. 3, 2019) (holding plaintiff's § 1983

claim that his guilty plea was involuntary barred by *Heck*).

000055

Further, pursuant to *Heck*, courts routinely dismiss claims of, *inter alia*, malicious prosecution, conspiracy, false arrest, and deprivation of the right to a fair trial brought pursuant to § 1983 when such claims bear on the validity of an underlying conviction or sentence. *See, e.g., Amaker*, 179 F.3d at 51-52 (holding that *Heck* applies to § 1983 conspiracy); *Guerrero v. Gates*, 442 F.3d 697, 704 (9th Cir. 2006) (holding that *Heck* bars plaintiff's § 1983 claims of wrongful arrest, malicious prosecution, and conspiracy); *Younger v. City of N.Y.*, 480 F. Supp. 2d 723, 730 (S.D.N.Y. 2007) (holding that plaintiff's claims for false arrest, false imprisonment and malicious prosecution were barred by his plea of guilty pursuant to *Heck*); *Duamutef v. Morris*, 956 F.Supp. 1112, 1115-16 (S.D.N.Y. 1997) (dismissing § 1983 claims for, *inter alia*, malicious prosecution, false arrest, and perjury during trial due to a failure to state a claim under *Heck* because of the valid underlying criminal conviction); *Perez v. Cuomo*, No. 09 Civ. 1109 (SLT), 2009 WL 1046137, at *7 (E.D.N.Y. Apr. 17, 2009) ("A § 1983 claim for the violation of the due process right to a fair trial is, in essence, a claim for damages attributable to an unconstitutional conviction . . . . Since plaintiff's conviction remains valid, plaintiff's claim for violation of his right to a fair trial is not cognizable under § 1983, and must be dismissed as to all defendants[.]" (internal quotation marks and citations omitted)). Accordingly, Kotlyarsky's civil claims, all of which arise from his criminal conviction, are barred by *Heck*.

**C.     Kotlyarsky's Claims Are Barred By Sovereign Immunity**

The United States may not be sued without its consent; and the existence of consent is a prerequisite for jurisdiction. *United States v. Mitchell*, 463 U.S. 206, 212 (1983); *United States v. Sherwood*, 312 U.S. 584, 586 (1941). Since an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are barred under the doctrine of sovereign immunity, unless such immunity is waived. *Robinson v. Overseas Military Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994). Here, Kotlyarsky sues the

20

000056

United States Department of Justice, a federal agency, and Preet Bharara, the former United

States Attorney, and James Comey, the former director of the FBI, in their official capacities.[6]

Accordingly, Kotlyarsky attempts to maintain this action against the United States. However,

the United States has not waived sovereign immunity for claims arising under § 1983, or any

other constitutional tort claim. *FDIC v. Meyer*, 510 U.S. 471, 484-87 (1994) (holding that the

Federal Tort Claims Act does not waive sovereign immunity for constitutional torts, and *Bivens*

claims can be brought only against federal officials in their individual capacities, not against the

United States and its agencies); *Davis v. United States*, No. 03 Civ. 1800 (NRB), 2004 WL

324880, at *10 (S.D.N.Y. Feb. 19, 2004) ("[T]he United States has not waived sovereign

immunity for actions arising under 42 U.S.C. § 1983."). Accordingly, this action must be

dismissed for lack of subject matter jurisdiction.

**D.      Defendants Cannot Be Sued Pursuant to § 1983**

Kotlyarsky's claims must be dismissed for the additional reason that the Defendants

reliance on § 1983 is misplaced. The terms of § 1983 make plain the two elements that the

aggrieved party must prove for recovery, that (i) the defendant deprived him of a right secured

by the "Constitution and laws" and that (ii) the defendant deprived him of this right under color

of state law. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 150 (1970). Actions of the federal

government or its officers are exempt from the proscriptions of § 1983. *See District of Columbia*

*v. Carter*, 409 U.S. 418, 424-25 (1973). Accordingly, Kotlyarsky cannot maintain § 1983 claims

against the United States Department of Justice, as an agency of the federal government, and

---

[6]      Counsel for the Government represents defendants Preet Bharara and James Comey in
their official capacities only. To the extent that Kotlyarsky intends to sue Preet Bharara and
James Comey in their individual capacities, counsel notes that it does not appear that these
individuals have been served properly pursuant to Fed. R. Civ. P. 4(i)(3).

000057

James Comey and Preet Bharara, as former officers of the federal government. *See Conklin v. Doe,* No. 01 Civ. 987 (LLS), 2002 WL 227067, at *4 (S.D.N.Y. Feb. 13, 2002) (holding § 1983 claim cannot lie against FBI); *John's Insulation, Inc. v. Siska Const. Co.,* 774 F. Supp. 156, 161 (S.D.N.Y. 1991) (dismissing § 1983 claims against the United States Army).[7]

**E.     Kotlyarsky Has Failed to Plead the Elements of Malicious Prosecution**

The gist of a claim for malicious prosecution is the abuse of judicial process.[8] *Murphy v. Lynn,* 118 F.3d 938, 944 (2d Cir. 1997).  In order to state a claim for the tort of malicious prosecution, a plaintiff must prove "(1) the initiation or continuation of a criminal proceeding

---

[7]     To the extent Kotlyarsky attempts to plead a § 1983 claim for conspiracy, such claims must be dismissed for the additional reason that Kotlyarsky fails to plead any allegations concerning a meeting of the minds. *See Ciambriello v. Cnty. of Nassau,* 292 F.3d 307, 325 (2d Cir. 2002); *Romer v. Morgenthau,* 119 F. Supp. 2d 346, 363 (S.D.N.Y. 2000).

[8]     To the extent Kotlyarsky attempts to plead his claims for malicious prosecution, false arrest, and intentional infliction of emotional distress as state law tort claims, rather than constitutional claims, such claims fall within the purview of the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346(b), 2671 *et seq.*  Kotlyarsky has failed to allege that he has exhausted his administrative remedies by presenting his claim to the appropriate federal agency as required by the FTCA. *See* 28 U.S.C. § 2675(a); *McNeil v. United States,* 508 U.S. 106, 113 (1993) ("The FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies.  Because petitioner failed to heed that clear statutory command, the District Court properly dismissed his suit.").  In the absence of compliance with the FTCA's presentment requirement, a district court has no subject matter jurisdiction over the claim. *See Wyler v. United States,* 725 F.2d 156, 159 (2d Cir. 1983); *see also In re Agent Orange Prod. Liab. Litig.,* 818 F.2d 210, 214 (2d Cir. 1987) (holding that burden is on plaintiff to demonstrate subject matter jurisdiction in compliance with the FTCA's requirements).

Additionally, to the extent the complaint attempts to plead such claims pursuant to the FTCA, the United States is the only proper defendant in such action: the FTCA does not grant federal courts jurisdiction over actions against individual defendants such as federal employees nor against federal agencies. *See FDIC v. Meyer,* 510 U.S. 471, 476 (1994) ("[I]f a suit is cognizable under § 1346(b) of the FTCA, the FTCA remedy is exclusive and the federal agency cannot be sued in its own name."); *Myers & Myers, Inc. v. U. S. Postal Serv.,* 527 F.2d 1252, 1256 (2d Cir. 1975) ("[S]uit under the Federal Tort Claims Act lies here, if at all, only against the United States.  Neither the Postal Service nor the Postal Inspection Service, named as defendants, may be sued directly on claims brought under 28 U.S.C. § 1346(b)."); *see also* 28 U.S.C. §§ 2674, 2679(a).

000058

against plaintiff; (2) termination of the proceeding in plaintiff's favor; (3) lack of probable cause

for commencing the proceeding; and (4) actual malice as a motivation for defendant's actions."

*Russell v. Smith*, 68 F.3d 33, 36 (2d Cir. 1995). Here, Kotlyarsky's malicious prosecution claim

must be dismissed for the simple and straightforward reason that his criminal proceedings, which

resulted in a conviction pursuant to a guilty plea, did not terminate in his favor. *See Magnotta v.*

*Putnam Cty. Sheriff*, No. 13 Civ. 2752, 2014 WL 705281, at *6 (S.D.N.Y. Feb. 24, 2014) ("A

guilty plea, even if it was a plea to fewer than all the charges, does not satisfy the 'favorable'

termination element of a malicious prosecution claim." (citations omitted)); *Rivera v. City of*

*Yonkers*, 470 F. Supp. 2d 402, 408 (S.D.N.Y. 2007) ("It is well settled that a guilty plea is not a

termination in favor of the accused for purposes of a malicious prosecution claim.").

###### F.   Kotlyarsky Has Failed to Plead the Elements of False Arrest

Under New York law, a plaintiff claiming false arrest must show, *inter alia*, that the

defendant intentionally confined him without his consent and without justification. *Weyant v.*

*Okst*, 101 F.3d 845, 852 (2d Cir. 1996). A constitutional tort claim for false arrest, resting on the

Fourth Amendment right of an individual to be free from unreasonable seizures, including arrest

without probable cause, *see, e.g., Lennon v. Miller*, 66 F.3d 416, 423 (2d Cir. 1995), is

substantially the same as a claim for false arrest under New York law, *see, e.g., Singer v. Fulton*

*County Sheriff*, 63 F.3d 110, 118 (2d Cir. 1995). The existence of probable cause to arrest

constitutes justification and "is a complete defense to an action for false arrest," *Bernard v.*

*United States*, 25 F.3d 98, 102 (2d Cir.1994), whether that action is brought under state law or as

a federal civil rights claim, *see, e.g., Broughton v. State*, 37 N.Y.2d 451, 458 (1975) (under New

York law, "[j]ustification may be established by showing that the arrest was based on probable

cause"); *Singer*, 63 F.3d at 118 ("There can be no federal civil rights claim for false arrest where

the arresting officer had probable cause."). If, following the arrest, the plaintiff was convicted of

23

000059

the charges against him, that conviction normally "would be conclusive evidence of probable cause." *Broughton*, 37 N.Y.2d at 458; *Cameron v. Fogarty*, 806 F.2d 380, 387 (2d Cir. 1986) ("[T]he common-law rule, equally applicable to actions asserting false arrest, false imprisonment, or malicious prosecution, was and is that the plaintiff can under no circumstances recover if he was convicted of the offense for which he was arrested."); *see also Johnson v. City of New York*, 551 F. App'x 14, 15 (2d Cir. 2014).

Here Kotlyarsky does not come close to establishing that his arrest was without probable cause. Kotlyarsky was arrested pursuant to a criminal complaint that was sworn to by a Special Agent Luke Hardison of the FBI. (*See* Dkt. #1). But more to the point, Kotlyarsky was indeed convicted of the offenses for which he was arrested: extortion and conspiracy to commit extortion. (*See* Dkt. #63). That conviction serves as conclusive evidence of probable cause for Kotlyarsky's arrest, barring his cause of action for false arrest.

### G.   Kotlyarsky Has Failed to Plead the Elements of Intentional infliction of Emotional Distress

The tort of intentional infliction of emotional distress "may be invoked only as a last resort, to provide relief in those circumstances where traditional theories of recovery do not." *Salmon v. Blesser*, 802 F.3d 249, 256 (2d Cir. 2015) (internal citations omitted). Under New York law, then, a claim for intentional infliction of emotional distress requires a showing of: (i) extreme and outrageous conduct; (ii) intent to cause, or disregard of a substantial probability of causing, severe emotional distress; (iii) a causal connection between the conduct and injury; and (iv) severe emotional distress. *Rich v. Fox News Network, LLC*, 939 F.3d 112, 122 (2d Cir. 2019). Kotlyarsky has failed to adequately plead any of these elements. (*See* Compl. ¶¶ 102-104). Further, a claim for intentional infliction of emotional distress may not be sustained

000060

against a governmental entity.  *See Noel Pane v. Town of Greenburgh*, No. 07 Civ. 3216 (LMS),

2012 WL 12886971, at *6-7 (S.D.N.Y. Mar. 21, 2012).

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant

Defendants' motion to dismiss and dismiss Kotlyarsky's Complaint.

Dated:    July 6, 2021
          New York, New York

                                   Respectfully submitted,

                                   AUDREY STRAUSS
                                   United States Attorney for the
                                   Southern District of New York
                                   *Attorney for the Defendant*

                        By:     */s/ Tara Schwartz*
                                   TARA SCHWARTZ
                                   Assistant United States Attorney
                                   86 Chambers Street, 3rd Floor
                                   New York, New York 10007
                                   Tel.: (212) 637-2633
                                   E-mail: tara.schwartz@usdoj.gov

25

000061

**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

---

BORIS KOTLYARSKY, an individual,

        Plaintiff,

  - against-

UNITED STATES DEPARTMENT OF JUSTICE, a
Governmental federal agency, PREET BHARRARA, in
his official capacity, and JAMES COMEY, in his official
capacity

        Defendants.

---

Docket No. 20-Civ- 9230(PGG)

**AFFIDAVIT IN OPPOSITION**
**TO MOTION TO DISMISS**

STATE OF NEW YORK }
               }
COUNTY OF KINGS    }

Boris Kotlyarsky, being duly sworn, deposes and says:

1. I am the Plaintiff in this action and as such am familiar with all the facts and circumstances

    of this action.

2.   I submit this affidavit in opposition to the Defendants' Motion to Dismiss this action.

3. Upon information and belief Anatoly Potik contracted with Boris Nayfeld to assassinate

    Oleg Mitnik in exchange for the payment of TWO Hundred Fifty Thousand ($250.000)

    Dollars.

1

000062

4.  In the end of October( 27-29) of 2015, I learned of Anatoly Potik's plot to murder Personal

    Enemy .I  was informed on or about 08/14/2015 by Potik's son-in-law O.Mitnik regarding

    his divorce and $20.000.000 in settlement dispute  I immediately informed Oleg Mitnik

    about the contract  between Nayfeld and Potik 10/31/2015 I also advised to file complaint

    with F.B.I. which O.Mitnik did one week later, following my advice

5.  Had I not intervened and blew the whistle on this plot, Oleg Mitnik would have been dead.

6.  However, I was motivated to prevent tragedy and save a human life, and consequently

    immediately on or about 10/31/2015 notified Oleg Mitnik, possible victim.

7.  Upon information and belief Oleg Mitnik immediately contacted the Federal Bureau of

    Investigation (hereinafter "FBI"). I did not know this at the time.

8.  Oleg Mitnik asked me to set up a meeting with him and Nayfeld, and I refused. I told

    Mitnik to go to the Police. Upon his continual insentience to set up the meeting I

    acquiesced.

9.  Upon information and belief, the FBI, began an investigation which included recorded

    conversations between Boris Nayfeld, Oleg Mitnik and Boris Kotlyarsky which the FBI

    obtained via a wire hidden on Oleg Mitnik's body.

10. Mr. Mitnik admits in his affidavit that it was he who asked to arrange for a meeting with

    Mr. Nayfeld and that Mr. Mitnik's request to meet was recorded on a recording device

    provided to Mr. Mitnik by Special Agent Luke Hardison.

11. I never sought and never discussed any payment whatsoever with anyone involved in the

    Murder-for-Hire plot nor did I ever expect payment in exchange for saving Oleg Mitnik's

    life. The FBI recordings confirm this: DKT.# 58 page 5/6 05/04/2017( 01/07/2016), also

000063

statements of the victim and the government witness, supporting Noble Deed by Boris Kotlyarsky. (10/01/2016)

12. I never sought nor received any financial gain from Nayfeld, Mitnik or anyone else for that matter. Above statement was confirmed by Nayfeld to the Government on or about 10/01/2016 and later under oath as the Government Witness in the Court on or about October 12, 2016 when he entered a guilty plea before Honorable Katherine B. Forrest. When he represented to the court that I never sought any financial gain from Nayfeld nor had there ever been any agreement or conspiracy between Nayfeld and Anybody including Boris Kotlyarsky and Nayfeld.

13. Nonetheless, on January 15, 2016 and despite a lack of single evidence whatsoever against me, I was charged with extortion by a criminal complaint filed in the Southern District of New York, Dkt. No. 1: 16-mag-0324, sworn to FBI Special Agent Luke Hardison.

14. On or about June 08 2016 the Government filed <u>nolle prosequi,</u> and dismissed the Murder-for-Hire complaint against Potik. Also the Government filed nolle prosequi and dismissed one more case of conspiracy to extort between Potik and Nayfeld.

15. While the Government dismissed its Murder-For-Hire Criminal Complaint despite evidence to support The-Murder-For-Hire Plot (01-22-2016-&17-01/08/2016-01/11/2016-01/14/2016-10/12/2016) against cooperating Defendant Potik, it continued to prosecute the case against Boris Kotlyarsky for Hobbs Act extortion, despite the fact that there was not a single evidence against Boris Kotlyarsky and despite the fact that Nayfeld testified that he did not have any co-conspirators and that Boris Kotlyarsky refuse any financial gain from Nayfeld side money. Moreover, the victim of the Murder-for-Hire plot confirmed that Boris Kotlyarsky never expected any financial gain, or any gain from anyone.

3

000064

4. In the end of October( 27-29) of 2015, I learned of Anatoly Potik's plot to murder Personal Enemy .I was informed on or about 08/14/2015 by Potik's son-in-law O.Mitnik regarding his divorce and $20.000.000 in settlement dispute I immediately informed Oleg Mitnik about the contract between Nayfeld and Potik 10/31/2015 I also advised to file complaint with F.B.I. which O.Mitnik did one week later, following my advice

5. Had I not intervened and blew the whistle on this plot, Oleg Mitnik would have been dead.

6. However, I was motivated to prevent tragedy and save a human life, and consequently immediately on or about 10/31/2015 notified Oleg Mitnik, possible victim.

7. Upon information and belief Oleg Mitnik immediately contacted the Federal Bureau of Investigation (hereinafter "FBI"). I did not know this at the time.

8. Oleg Mitnik asked me to set up a meeting with him and Nayfeld, and I refused. I told Mitnik to go to the Police. Upon his continual insentience to set up the meeting I acquiesced.

9. Upon information and belief, the FBI, began an investigation which included recorded conversations between Boris Nayfeld, Oleg Mitnik and Boris Kotlyarsky which the FBI obtained via a wire hidden on Oleg Mitnik's body.

10. Mr. Mitnik admits in his affidavit that it was he who asked to arrange for a meeting with Mr. Nayfeld and that Mr. Mitnik's request to meet was recorded on a recording device provided to Mr. Mitnik by Special Agent Luke Hardison.

11. I never sought and never discussed any payment whatsoever with anyone involved in the Murder-for-Hire plot nor did I ever expect payment in exchange for saving Oleg Mitnik's life. The FBI recordings confirm this: DKT.# 58 page 5/6 05/04/2017( 01/07/2016), also

000063

statements of the victim and the government witness, supporting Noble Deed by Boris Kotlyarsky. (10/01/2016)

12. I never sought nor received any financial gain from Nayfeld, Mitnik or anyone else for that matter. Above statement was confirmed by Nayfeld to the Government on or about 10/01/2016 and later under oath as the Government Witness in the Court on or about October 12, 2016 when he entered a guilty plea before Honorable Katherine B. Forrest. When he represented to the court that I never sought any financial gain from Nayfeld nor had there ever been any agreement or conspiracy between Nayfeld and Anybody including Boris Kotlyarsky and Nayfeld.

13. Nonetheless, on January 15, 2016 and despite a lack of single evidence whatsoever against me, I was charged with extortion by a criminal complaint filed in the Southern District of New York, Dkt. No. 1: 16-mag-0324, sworn to FBI Special Agent Luke Hardison.

14. On or about June 08 2016 the Government filed <u>nolle prosequi,</u> and dismissed the Murder-for-Hire complaint against Potik. Also the Government filed nolle prosequi and dismissed one more case of conspiracy to extort between Potik and Nayfeld.

15. While the Government dismissed its Murder-For-Hire Criminal Complaint despite evidence to support The-Murder-For-Hire Plot (01-22-2016-&17-01/08/2016-01/11/2016-01/14/2016-10/12/2016) against cooperating Defendant Potik, it continued to prosecute the case against Boris Kotlyarsky for Hobbs Act extortion, despite the fact that there was not a single evidence against Boris Kotlyarsky and despite the fact that Nayfeld testified that he did not have any co-conspirators and that Boris Kotlyarsky refuse any financial gain from Nayfeld side money. Moreover, the victim of the Murder-for-Hire plot confirmed that Boris Kotlyarsky never expected any financial gain, or any gain from anyone.

3

000064

16. On or about October 12, 2016, co-defendant Boris Nayfeld, in the course of entering his

guilty plea, appeared before Hon. Katherine B. Forrest and in his allocution under oath, he

represented to the court that I had not sought any financial gain from him nor had there

ever been any agreement or conspiracy between Mr. Nayfeld and Mr. Kotlyarsky that Mr.

Kotlyarsky would receive any financial benefit for informing Mr. Mitnik of the plot to kill

him. As Mr. Nayfeld averred:

> THE COURT: What I want to know is did you agree with
> anybody else to try to extort money to take money from the
> son-in-law?
> THE DEFENDANT: (In English) No.
> See Exhibit 12, page 36, lines 11-13.
> ***
> THE COURT: And so Mr. Kotlyarsky then got Mitnik to give
> you and Mr. Kotlyarsky money?
> THE DEFENDANT: (In English) No. This is after Mitnik
> have for me —
> Exhibit 12, page 44, lines 4 — 7.
> ***
> THE COURT: All right. Kotlyarsky says that -- sorry. Mr.
> Potik says he's got a job for you and Kotlyarsky then indicates
> to you that if you just go to the potential victim --
> THE DEFENDANT: (In English) Yes.
> THE COURT: -- and tell the victim about Potik wanting him
> dead, the victim will pay you money and you and Kotlyarsky
> would then somehow divide up that money, correct?
> THE DEFENDANT: (In English) Yes.
> THE COURT: And that that actually happened.
> THE DEFENDANT: (In English) **No, no, no. Listen. I'm
> not — I want the truth. I not tell -- he not tell me that —**
> THE COURT: Tell you?
> THE DEFENDANT: **He did not want any money.** He said
> that -- he told me that you will make some money.
> THE COURT: I see. So you and Mr. Kotlyarsky agreed that
> you would give the information to Mr. Mitnik.
> THE DEFENDANT: (In English) Yes.
> THE COURT: **But Mr. Kotlyarsky was not going to be
> paid?**
> THE DEFENDANT: **No. No. It was my intention to**

000065

> share the money with him but he said no.
> Exhibit 12, page 44, lines 13 – 25 through page 46, lines 1 – 10
> (emphasis added).

17  On May 31, 2017, Judge Kaplan observed that:

> **Although I don't have specific evidence before me to
> make an express finding – and I don't** – it seems to me
> that it would have been entirely reasonable to expect and,
> notwithstanding what I said already, **more likely than not** that
> you did expect that if Nayfeld was paid off, he would have
> something for you out of the payoff.
> **I understand there's been no express testimony or
> evidence that you and Nayfeld ever had a specific
> discussion or understanding,** but I **do think** the logic of the
> situation is such that that was your intent and expectation.

18  *United States v. Crispo*, 47 F. App'x 39, 40 (2d Cir. 2002) "To affirm the extortion

conviction below there must be proof of (1) **intent to obtain the property of another,**

with his consent, "induced by wrongful use of actual or threatened force, violence, or fear,"

18 U.S.C. § 1951(b)(2), and (2) interference with interstate commerce." (emphasis added);

*United States v. Enmons*, 410 U.S. 396, 419 n. 16 (1973): "Extortion requires an intent to

obtain that which in justice and equity the party is not entitled to receive."

19  Boris Kotlyarsky never had any intent to obtain the property of Oleg Mitnik.

20  In Oleg Mitnik's Declaration in support of Boris Kotlyarsky 2255 motion to set aside the

sentence, Mr. Mitnik, the victim in this matter, made the following statement:

> Based on those records and my knowledge of certain facts, I
> believe Mr. Kotlyarsky sentence was based on a
> misapprehension of material facts.
> As such, I provide this Declaration to clarify the following
> relevant facts from my first-hand knowledge.
> After Mr. Kotlyarsky informed me of the murder plot, it was
> my idea, not his, for me to meet with the hit man, Boris

000066

Nayfeld. I asked Mr. Kotlyarsky, not the other way around, if
he could arrange for a meeting between Mr. Nayfeld and me. I
believe my initiating this request was recorded on a recording
device provided to me by Special Agent Luke Hardison for the
12/3/2015 meeting between Mr. Kotlyarsky and me.
From the onset (around late October 2015), Mr. Kotlyarsky
told me that I should go to the police to get them involved. In
early November 2015, I filed a complaint with my
neighborhood police department. In mid-November 2015,  my
complaint was forwarded to an organized crime task force.
Shortly thereafter, I met with federal authorities.
<u>At no point did Mr. Kotlyarsky ever ask me or lead me to
believe that he expected in any way to be compensated
financially for telling me about the murder plot, for arranging
for the meeting with Mr. Nayfeld, or for his efforts in helping
to save my life.</u>
Although Mr. Kotlyarsky and I did have a conversation about
business, it was a casual conversation, the type that any two
business men may have, who have long been friends, are
catching up after a time of absence, and who think well of and
wish well for each other. The conversation was unequivocally
disconnected from anything to do with the murder plot. Mr.
Kotlyarsky was not a stranger to me. We have known each
other for many years, and were from the same country, Russia.
In the sentencing of Mr. Kotlyarsky, the prosecutor stated that
"not only was [Mr. Kotlyarsky's] intervention not the reason [I
am] safe, but in intervening at all, Mr. Kotlyarsky made it
worse and, in fact, risked greater harm. As the victim, I can state unequivocally
that this statement could not be further from the truth. I fully
believe that but for Mr. Kotlyarsky's intervention, I would not
be alive today. Contrary to the prosecutor's contention, Mr.
Kotlyarsky did not take "advantage of [my] specific fear of
death", but rather, he helped prevent my death.
The Court, after hearing the prosecutor's statements,
concluded that "in one way or another, there would be an
economic benefit to [Mr. Kotlyarsky] no matter how it turned
out". Most respectfully, as the intended victim, as the
person conversing with Mr. Kotlyarsky at that time, I do not
see it that way. Mr. Kotlyarsky could have easily asked me for
compensation given what he did, but he did not.
From what I understand, the Government presented no
evidence from Mr. Nayfeld demonstrating any agreement
between Mr. Kotlyarsky and Mr. Nayfeld in which Mr.
Kotlyarsky would receive a portion of what I paid Mr.

6

000067

Nayfeld. **Indeed, my understanding is that the Government stated there was no financial gain for Mr. Kotlyarsky from Mr. Nayfeld.**

To me that speaks volumes, given that Mr. Nayfeld entered a cooperative agreement with the Government, requiring him to fully disclose the crime and answer all questions.

As such, there was no expectation of financial gain for Mr. Kotlyarsky from me, and no evidence of any financial gain for Mr. Kotlyarsky from Mr. Nayfeld. **The Court's conclusion was thus completely unfounded and in [sic] diametrically opposed to the truth of what happened.**

While I understand that Mr. Kotlyarsky pled guilty in a plea bargain, as I've stated before, I do not believe that Mr. Kotlyarsky should have been charged with extortion in the first place. I stated so at the time of his arrest, and my feelings on the matter have not changed. I told this to the Probation Officer who noted my statement in Mr. Kotlyarsky's PSR.

**It is my concerted feeling that Mr. Kotlyarsky's conviction and imprisonment, given the truth of what I know happened, and given probable outcome had he not intervened, constitutes a gross miscarriage of justice.**

And just as disturbing to me is the severely disproportionate sentence imposed upon Mr. Kotlyarsky for his plea, compared to that of the mobster hit man, Mr. Nayfeld, and the mastermind financier of the murder plot, Mr. Potik.

Mr. Kotlyarsky, who saved my life, received a sentence of 41 months. In comparison, despite entering into a contract to murder me and subsequently extorting money from me to stave off the murder, Mr. Nayfeld was sentence by Judge Forrest to a mere 23 months. And despite conceiving, financing and setting in motion a murder plot against me, Mr. Potik somehow manipulated the Government to enter a *nolle prosequi!*

As a result, Mr. Kotlyarsky, whose intervention foiled the murder plot and saved my life, received a sentence nearly twice that of the hit man who intended to murder me, and the person who originally plotted and paid [for] my murder walks away scot-free.

Nothing could more closely constitute a gross miscarriage of justice to Mr. Kotlyarsky.

I repeat what I told the Probation Department. I do not believe that Mr. Kotlyarsky should ever have been charged with extortion in this case, and most certainly, at the age of 70, he should not have to serve 41 months of imprisonment, even

000068

if he did accept a plea bargain for reasons personal to him.
In the hopes that justice and sensibility may gain the upper
hand in this case, I submit this Declaration in support of Mr.
Kotlyarsky's motion.
I implore the Court to grant the relief requested by Mr.
Kotlyarsky, and any other relief that may be just, fair and
equitable.

21  The government could not have proven any of the elements of Hobbs Act extortion under
18 U.S.C. § 1951(b)(2) because no money was exchanged or contemplated and most
importantly there was no victim and no co-conspirator.

22  I have maintained from the beginning and even through my plea allocution, I did not want
and was not expecting to make any money from saving Oleg Mitnik's life.

23  I would not expect to be paid any portion of the money Nayfeld could receive for Nayfeld
and Mitnik agreement. There was no financial gain or any gain for me at all.

24  On October 13, 2016, the day after Boris Nayfeld's plea allocution, with the knowledge
that: 1) the victim, Oleg Mitnik, believed that I saved his life and should never have been
arrested and charged; 2) Boris Nayfeld had just testified that I had refused any form of
payment and 3) Boris Nayfeld's exculpatory testimony on 10/12/2016 was **sealed**. The
Government by using the Affidavit DKT#42-1 which has false year of 2015. Not Genuine
2016 Affidavit which was emailed 05/07/2016 to Frank Tassone Esq.-Attorney for the
Witness to review and if approved to be signed by Nayfeld. This genuine 2016 Affidavit
was issued by Boris Kotlyarsky's Attorney Mirvis Esq. on 03/24/2016 not in 2015 as
presented by Government. Also Russian scheme manufactured by the Government to lay
out the base for extortion of Boris Kotlyarsky using Russian scheme +7 Levels to influence
me to either plea or die in prison for saving the life Oleg Mitnik. The Government
successfully moved the District Court by using the 2015 Affidavit, order of protection, and

8

concocted a Russian scheme to have my bail revoked. I was directly remanded to custody

with no point of return.

25  I experienced great distress at having been summarily removed from the bosom of my

family and confined to the MCC, solitary confinement (01/14/2016-01/21/2016.) After

01/14/2016 Video Post Arrest interrogation where I was declaring my innocence for 40

minutes. The government did not present my post arrest video and transcript to the Court

(06/02/2016 page 4 Ln#1/8). For the first time in this case, I experienced the reality that,

despite my innocence, the Government's unchecked power could deprive me of my life, to

die in prison

26  I spent the next nine days in contemplation of my fate between life and death.

27  On October 22, 2016, the Government issued a Trial outcome using Manufactured

plus 7 levels Russian Scheme letter to me via my counsel. The letter said, "[b]ased upon

the calculations set forth above, the defendant's sentencing range is **97 – 121 months'**

**imprisonment**" (approximately eight to ten years). The life sentence for seventy years old

U.S. Citizen for doing Noble Deed by saving life of U.S. Citizen Oleg Mitnik with not

financial or any gain for Boris Kotlyarsky.

28  The imposing prospect of coming out of jail at the age of 79 for a crime I did not commit

made me very fearful.  I entertained the very real prospect of dying in prison, or, at best,

emerging from prison on the eve of being an octogenarian, with no realistic expectation of

any significantly meaningful life ahead.

29  Allowing time for this to sink in, a few days later, the Government issued its first plea offer.

The offer, on October 25, 2016, was 70 – 87 months – six to seven years, again using

Manufactured plus 7 levels Russian scheme. I was given time until the end of the next day

000070

to except the plea. I was 69 at that time, and even six to seven years was unpalatable and

my state of mind was one of shock and denial but I refused this offer

30  Late the next day, on October 26, 2016, the Government issued a second plea offer of 41 –

51 months. The cover letter stated that the "plea offer expires at the end of the day on

October 26, 2016." I was given 2 hours to accept this offer or the Government Would

Return to 70-87 month as was offered 12/25/2016

31  Boxed into the corner, irrational from the fear of ten years' imprisonment instilled in me

through the Government's deliberated methodology and unaware of Mr. Nayfeld's

exculpating testimony of October 12, 2016, encouraged by counsel who had, through

inexcusable gross negligence, missed material opportunities to effectively assist me, under

duress, I took the chance for 41/51 months to make back Home and see the Government in

the Court. That what is happening right now. I did make through, including stroke in prison

32  The threat of imprisonment until the age of 79, effectively exerted by the Government

despite their knowledge of the exculpatory evidence, was so pressing that it overcame my

will and induced my acquiescence.

33  A Hobbs Act violation is specific intent crime; intent is essential element of offense.

34  I believed by telling Oleg Mitnick about the Murder-for-Hire plot against him, I was giving

my long-time friend an opportunity to avert that fate, thus saving his life.

35  Mr. Mitnik then set upon the course of action he thought best in saving his own life. He

went secretly to the authorities so that they could help him record, document, and

ultimately arrest Mr. Nayfeld and his father-in-law, Anatoly Potik, the prime mover and

mastermind behind the Murder-for-Hire plot.

36  The victim does not feel that Kotlyarsky should have been charged with extortion…The

000071

victim is upset, because Kotlyarsky allegedly wants to sue him for accusing him of committing extortion, but he had "nothing to do with how the government files criminal charges." ...The victim believes that if it were not for Kotlyarsky interceding in this scheme, he would be dead.

37 What ultimately happened is that Anatoly Potik and Boris Nayfeld cut deals with the Government and both are on the streets today. While I found myself enmeshed in a Governmental whirlwind from which I became unable to extricate myself because of prosecutorial fervor and misconduct in withholding Brady material.

38 Accordingly, by reason of the foregoing the Government's Motion to Dismiss should be denied.

The very crucial evidence which were also available to the Government and for reasons knowing to the government are missing in the Government back ground in their motion to dismiss:     September2015-10/31/2015-November2015-FBI-12/03/2015-12/16/2015 0007;01/04/2016-0016;01/07/2016-0021/0022/0023-DKT.#58page#5/6-01/07/2016 filed 05/04/2017 01/08/2016-01/11/2016-01/14/2016-the victim statement to S.A. Hardison one hour before arrest-01/14/2016 video post arrest interrogation two hours after arrest, then MCC Solitary Confinement (01/14/2016-01/21/2016) no commissary ,no phone communication with family ,01/22/2016&17audio-O2/03/2016-$20.000.000.Bail for A.Potik, 03/16/2016 03/22/2016 (Two Government Violations),06/02/2016 Pg.3/4; -01/22/2016-06/08/2016 crime#1 Dismissed -06/07/2016-12/11/2017 Crime#2-Dismissed 12/03/2017-12/14/2017 Declaration to the Court by the Victim 03/18/2018 New York interview by Oleg Mitnik: 'FED'S SOLD ME OUT'-07/19/2018 the Government Declaration to the Court. All these crucial evidence not included in motion to dismiss.

11

000072

From November 2015 Until Present The Government Never provide the name of Co Conspirator for Boris Kotlyarsky Not the Name of the victim who was extorted by Boris Kotlyarsky. Mr. Thomas stated to Honor. Katherine Forrest:10/12/2016 page32 Ln#12-25; page 33 Ln.1-15:As to Count One the Conspiracy Count! the Government would be required to prove beyond a reasonable doubt Two elements: First the existence of a conspiracy to commit Hobbs act extortion. Second that the defendant knowingly and voluntarily agreed to join that conspiracy. As to Count two the substantive Hobbs Act Extortion: First that defendant wrongfully obtained the property of another. Second the defendant obtained that property with the victim's consent but that that consent was compelled by the wrongful use or threat or force violence or fear. These are definitions of conspiracy to extort and extortion which did not exist here.

000073

**WHEREFORE,** it is respectfully requested that Defendants' Motion to Dismiss be denied

in all respects.

BORIS KOTLYARSKY

*N.Y.S.B.A 793148413*

*11/16/28*

Sworn to and subscribed before

me this *2nd* of August, 2021.

NOTARY PUBLIC

GALINA LUTSKER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LU6196893
Qualified in Kings County
My Commiss  Expires Nov  ber 24, 20

*8/2/21*

13

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| BORIS KOTLYARSKY, an individual, <br><br>           Plaintiff, <br><br><br>   - against- <br><br><br><br><br> UNITED STATES DEPARTMENT OF JUSTICE, a Governmental federal agency, PREET BHARRARA, in his official capacity, and JAMES COMEY, in his official capacity <br><br>         Defendants. | Docket No. 20-Civ- 9230(PGG) <br><br><br> **AFFIDAVIT IN OPPOSITION TO MOTION TO DISMISS** |

STATE OF NEW YORK }
                    }
COUNTY OF KINGS    }

Boris Kotlyarsky, being duly sworn, deposes and says:

1. I am the Plaintiff in this action and as such am familiar with all the facts and circumstances of this action.

2.   I submit this affidavit in opposition to the Defendants' Motion to Dismiss this action.

3. Upon information and belief Anatoly Potik contracted with Boris Nayfeld to assassinate Oleg Mitnik in exchange for the payment of TWO Hundred Fifty Thousand ($250.000) Dollars.

1

000075

4.  In the end of October( 27-29) of 2015, I learned of Anatoly Potik's plot to murder Personal
    Enemy .I  was informed on or about 08/14/2015 by Potik's son-in-law O.Mitnik regarding
    his divorce and $20.000.000 in settlement dispute  I immediately informed Oleg Mitnik
    about the contract  between Nayfeld and Potik 10/31/2015 I also advised to file complaint
    with F.B.I. which O.Mitnik did one week later, following my advice

5.  Had I not intervened and blew the whistle on this plot, Oleg Mitnik would have been dead.

6.  However, I was motivated to prevent tragedy and save a human life, and consequently
    immediately on or about 10/31/2015 notified Oleg Mitnik, possible victim.

7.  Upon information and belief Oleg Mitnik immediately contacted the Federal Bureau of
    Investigation (hereinafter "FBI"). I did not know this at the time.

8.  Oleg Mitnik asked me to set up a meeting with him and Nayfeld, and I refused. I told
    Mitnik to go to the Police. Upon his continual insentience to set up the meeting I
    acquiesced.

9.  Upon information and belief, the FBI, began an investigation which included recorded
    conversations between Boris Nayfeld, Oleg Mitnik and Boris Kotlyarsky which the FBI
    obtained via a wire hidden on Oleg Mitnik's body.

10. Mr. Mitnik admits in his affidavit that it was he who asked to arrange for a meeting with
    Mr. Nayfeld and that Mr. Mitnik's request to meet was recorded on a recording device
    provided to Mr. Mitnik by Special Agent Luke Hardison.

11. I never sought and never discussed any payment whatsoever with anyone involved in the
    Murder-for-Hire plot nor did I ever expect payment in exchange for saving Oleg Mitnik's
    life. The FBI recordings confirm this: DKT.# 58 page 5/6 05/04/2017( 01/07/2016), also

000076

statements of the victim and the government witness, supporting Noble Deed by Boris Kotlyarsky. (10/01/2016)

12. I never sought nor received any financial gain from Nayfeld, Mitnik or anyone else for that matter. Above statement was confirmed by Nayfeld to the Government on or about 10/01/2016 and later under oath as the Government Witness in the Court on or about October 12, 2016 when he entered a guilty plea before Honorable Katherine B. Forrest. When he represented to the court that I never sought any financial gain from Nayfeld nor had there ever been any agreement or conspiracy between Nayfeld and Anybody including Boris Kotlyarsky and Nayfeld.

13. Nonetheless, on January 15, 2016 and despite a lack of single evidence whatsoever against me, I was charged with extortion by a criminal complaint filed in the Southern District of New York, Dkt. No. 1: 16-mag-0324, sworn to FBI Special Agent Luke Hardison.

14. On or about June 08 2016 the Government filed <u>nolle prosequi,</u> and dismissed the Murder-for-Hire complaint against Potik. Also the Government filed nolle prosequi and dismissed one more case of conspiracy to extort between Potik and Nayfeld.

15. While the Government dismissed its Murder-For-Hire Criminal Complaint despite evidence to support The-Murder-For-Hire Plot (01-22-2016-&17-01/08/2016-01/11/2016-01/14/2016-10/12/2016) against cooperating Defendant Potik, it continued to prosecute the case against Boris Kotlyarsky for Hobbs Act extortion, despite the fact that there was not a single evidence against Boris Kotlyarsky and despite the fact that Nayfeld testified that he did not have any co-conspirators and that Boris Kotlyarsky refuse any financial gain from Nayfeld side money. Moreover, the victim of the Murder-for-Hire plot confirmed that Boris Kotlyarsky never expected any financial gain, or any gain from anyone.

3

000077

16. On or about October 12, 2016, co-defendant Boris Nayfeld, in the course of entering his

guilty plea, appeared before Hon. Katherine B. Forrest and in his allocution under oath, he

represented to the court that I had not sought any financial gain from him nor had there

ever been any agreement or conspiracy between Mr. Nayfeld and Mr. Kotlyarsky that Mr.

Kotlyarsky would receive any financial benefit for informing Mr. Mitnik of the plot to kill

him. As Mr. Nayfeld averred:

> THE COURT: What I want to know is did you agree with
> anybody else to try to extort money to take money from the
> son-in-law?
> THE DEFENDANT: (In English) No.
> See Exhibit 12, page 36, lines 11-13.
> ***
> THE COURT: And so Mr. Kotlyarsky then got Mitnik to give
> you and Mr. Kotlyarsky money?
> THE DEFENDANT: (In English) No. This is after Mitnik
> have for me –
> Exhibit 12, page 44, lines 4 – 7.
> ***
> THE COURT: All right. Kotlyarsky says that -- sorry. Mr.
> Potik says he's got a job for you and Kotlyarsky then indicates
> to you that if you just go to the potential victim --
> THE DEFENDANT: (In English) Yes.
> THE COURT: -- and tell the victim about Potik wanting him
> dead, the victim will pay you money and you and Kotlyarsky
> would then somehow divide up that money, correct?
> THE DEFENDANT: (In English) Yes.
> THE COURT: And that that actually happened.
> THE DEFENDANT: (In English) **No, no, no. Listen. I'm
> not – I want the truth. I not tell -- he not tell me that –**
> THE COURT: Tell you?
> THE DEFENDANT: **He did not want any money.** He said
> that -- he told me that you will make some money.
> THE COURT: I see. So you and Mr. Kotlyarsky agreed that
> you would give the information to Mr. Mitnik.
> THE DEFENDANT: (In English) Yes.
> THE COURT: **But Mr. Kotlyarsky was not going to be
> paid?**
> THE DEFENDANT: **No. No. It was my intention to**

000078

> **share the money with him but he said no.**
> Exhibit 12, page 44, lines 13 – 25 through page 46, lines 1 – 10
> (emphasis added).

17  On May 31, 2017, Judge Kaplan observed that:

> **Although I don't have specific evidence before me to**
> **make an express finding – and I don't –** it seems to me
> that it would have been entirely reasonable to expect and,
> notwithstanding what I said already, **more <u>likely</u> than not** that
> you did expect that if Nayfeld was paid off, he would have
> something for you out of the payoff.
> **I understand <u>there's been no express</u> testimony or**
> **evidence that you and Nayfeld ever had a specific**
> **discussion or understanding, but I <u>do think</u>** the logic of the
> situation is such that that was your intent and expectation.

18  *United States v. Crispo*, 47 F. App'x 39, 40 (2d Cir. 2002) "To affirm the extortion

conviction below there must be proof of (1) **intent to obtain the property of another,**

with his consent, "induced by wrongful use of actual or threatened force, violence, or fear,"

18 U.S.C. § 1951(b)(2), and (2) interference with interstate commerce." (emphasis added);

*United States v. Enmons*, 410 U.S. 396, 419 n. 16 (1973): "Extortion requires an intent to

obtain that which in justice and equity the party is not entitled to receive."

19  Boris Kotlyarsky never had any intent to obtain the property of Oleg Mitnik.

20  In Oleg Mitnik's Declaration in support of Boris Kotlyarsky 2255 motion to set aside the

sentence, Mr. Mitnik, the victim in this matter, made the following statement:

> Based on those records and my knowledge of certain facts, I
> believe Mr. Kotlyarsky sentence was based on a
> misapprehension of material facts.
> As such, I provide this Declaration to clarify the following
> relevant facts from my first-hand knowledge.
> After Mr. Kotlyarsky informed me of the murder plot, it was
> my idea, not his, for me to meet with the hit man, Boris

5

000079

Nayfeld. I asked Mr. Kotlyarsky, not the other way around, if
he could arrange for a meeting between Mr. Nayfeld and me. I
believe my initiating this request was recorded on a recording
device provided to me by Special Agent Luke Hardison for the
12/3/2015 meeting between Mr. Kotlyarsky and me.

From the onset (around late October 2015), Mr. Kotlyarsky
told me that I should go to the police to get them involved. In
early November 2015, I filed a complaint with my
neighborhood police department. In mid-November 2015,  my
complaint was forwarded to an organized crime task force.
Shortly thereafter, I met with federal authorities.

At no point did Mr. Kotlyarsky ever ask me or lead me to
believe that he expected in any way to be compensated
financially for telling me about the murder plot, for arranging
for the meeting with Mr. Nayfeld, or for his efforts in helping
to save my life.

Although Mr. Kotlyarsky and I did have a conversation about
business, it was a casual conversation, the type that any two
business men may have, who have long been friends, are
catching up after a time of absence, and who think well of and
wish well for each other. The conversation was unequivocally
disconnected from anything to do with the murder plot. Mr.
Kotlyarsky was not a stranger to me. We have known each
other for many years, and were from the same country, Russia.
In the sentencing of Mr. Kotlyarsky, the prosecutor stated that
"not only was [Mr. Kotlyarsky's] intervention not the reason [I
am] safe, but in intervening at all, Mr. Kotlyarsky made it
worse and, in fact, risked greater harm. As the victim, I can state unequivocally
that this statement could not be further from the truth. I fully
believe that but for Mr. Kotlyarsky's intervention, I would not
be alive today. Contrary to the prosecutor's contention, Mr.
Kotlyarsky did not take "advantage of [my] specific fear of
death", but rather, he helped prevent my death.

The Court, after hearing the prosecutor's statements,
concluded that "in one way or another, there would be an
economic benefit to [Mr. Kotlyarsky] no matter how it turned
out". Most respectfully, as the intended victim, as the
person conversing with Mr. Kotlyarsky at that time, I do not
see it that way. Mr. Kotlyarsky could have easily asked me for
compensation given what he did, but he did not.

From what I understand, the Government presented no
evidence from Mr. Nayfeld demonstrating any agreement
between Mr. Kotlyarsky and Mr. Nayfeld in which Mr.
Kotlyarsky would receive a portion of what I paid Mr.

6

000080

Nayfeld. **Indeed, my understanding is that the Government stated there was no financial gain for Mr. Kotlyarsky from Mr. Nayfeld.**

To me that speaks volumes, given that Mr. Nayfeld entered a cooperative agreement with the Government, requiring him to fully disclose the crime and answer all questions.

As such, there was no expectation of financial gain for Mr. Kotlyarsky from me, and no evidence of any financial gain for Mr. Kotlyarsky from Mr. Nayfeld. **The Court's conclusion was thus completely unfounded and in [sic] diametrically opposed to the truth of what happened.**

While I understand that Mr. Kotlyarsky pled guilty in a plea bargain, as I've stated before, I do not believe that Mr. Kotlyarsky should have been charged with extortion in the first place. I stated so at the time of his arrest, and my feelings on the matter have not changed. I told this to the Probation Officer who noted my statement in Mr. Kotlyarsky's PSR. **It is my concerted feeling that Mr. Kotlyarsky's conviction and imprisonment, given the truth of what I know happened, and given probable outcome had he not intervened, constitutes a gross miscarriage of justice.**

And just as disturbing to me is the severely disproportionate sentence imposed upon Mr. Kotlyarsky for his plea, compared to that of the mobster hit man, Mr. Nayfeld, and the mastermind financier of the murder plot, Mr. Potik.

Mr. Kotlyarsky, who saved my life, received a sentence of 41 months. In comparison, despite entering into a contract to murder me and subsequently extorting money from me to stave off the murder, Mr. Nayfeld was sentence by Judge Forrest to a mere 23 months. And despite conceiving, financing and setting in motion a murder plot against me, Mr. Potik somehow manipulated the Government to enter a *nolle prosequi!*

As a result, Mr. Kotlyarsky, whose intervention foiled the murder plot and saved my life, received a sentence nearly twice that of the hit man who intended to murder me, and the person who originally plotted and paid [for] my murder walks away scot-free.

Nothing could more closely constitute a gross miscarriage of justice to Mr. Kotlyarsky.

I repeat what I told the Probation Department. I do not believe that Mr. Kotlyarsky should ever have been charged with extortion in this case, and most certainly, at the age of 70, he should not have to serve 41 months of imprisonment, even

7

000081

if he did accept a plea bargain for reasons personal to him.
In the hopes that justice and sensibility may gain the upper
hand in this case, I submit this Declaration in support of Mr.
Kotlyarsky's motion.
I implore the Court to grant the relief requested by Mr.
Kotlyarsky, and any other relief that may be just, fair and
equitable.

21  The government could not have proven any of the elements of Hobbs Act extortion under

18 U.S.C. § 1951(b)(2) because no money was exchanged or contemplated and most

importantly there was no victim and no co-conspirator.

22  I have maintained from the beginning and even through my plea allocution, I did not want

and was not expecting to make any money from saving Oleg Mitnik's life.

23  I would not expect to be paid any portion of the money Nayfeld could receive for Nayfeld

and Mitnik agreement. There was no financial gain or any gain for me at all.

24  On October 13, 2016, the day after Boris Nayfeld's plea allocution, with the knowledge

that: 1) the victim, Oleg Mitnik, believed that I saved his life and should never have been

arrested and charged; 2) Boris Nayfeld had just testified that I had refused any form of

payment and 3) Boris Nayfeld's exculpatory testimony on 10/12/2016 was **sealed**. The

Government by using the Affidavit DKT#42-1 which has false year of 2015. Not Genuine

2016 Affidavit which was emailed 05/07/2016 to Frank Tassone Esq.-Attorney for the

Witness to review and if approved to be signed by Nayfeld. This genuine 2016 Affidavit

was issued by Boris Kotlyarsky's Attorney Mirvis Esq.  on 03/24/2016 not in 2015 as

presented by Government. Also Russian scheme manufactured by the Government to lay

out the base for extortion of Boris Kotlyarsky using Russian scheme +7 Levels to influence

me to either plea or die in prison for saving the life Oleg Mitnik. The Government

successfully moved the District Court by using the 2015 Affidavit, order of protection, and

8

concocted a Russian scheme to have my bail revoked. I was directly remanded to custody with no point of return.

25 I experienced great distress at having been summarily removed from the bosom of my family and confined to the MCC, solitary confinement (01/14/2016-01/21/2016.) After 01/14/2016 Video Post Arrest interrogation where I was declaring my innocence for 40 minutes. The government did not present my post arrest video and transcript to the Court (06/02/2016 page 4 Ln#1/8). For the first time in this case, I experienced the reality that, despite my innocence, the Government's unchecked power could deprive me of my life, to die in prison

26 I spent the next nine days in contemplation of my fate between life and death.

27 On October 22, 2016, the Government issued a Trial outcome using Manufactured plus 7 levels Russian Scheme letter to me via my counsel. The letter said, "[b]ased upon the calculations set forth above, the defendant's sentencing range is **97 – 121 months' imprisonment**" (approximately eight to ten years). The life sentence for seventy years old U.S. Citizen for doing Noble Deed by saving life of U.S. Citizen Oleg Mitnik with not financial or any gain for Boris Kotlyarsky.

28 The imposing prospect of coming out of jail at the age of 79 for a crime I did not commit made me very fearful. I entertained the very real prospect of dying in prison, or, at best, emerging from prison on the eve of being an octogenarian, with no realistic expectation of any significantly meaningful life ahead.

29 Allowing time for this to sink in, a few days later, the Government issued its first plea offer. The offer, on October 25, 2016, was 70 – 87 months – six to seven years, again using Manufactured plus 7 levels Russian scheme. I was given time until the end of the next day

000083

to except the plea. I was 69 at that time, and even six to seven years was unpalatable and my state of mind was one of shock and denial but I refused this offer

30 Late the next day, on October 26, 2016, the Government issued a second plea offer of 41 – 51 months. The cover letter stated that the "plea offer expires at the end of the day on October 26, 2016." I was given 2 hours to accept this offer or the Government Would Return to 70-87 month as was offered 12/25/2016

31 Boxed into the corner, irrational from the fear of ten years' imprisonment instilled in me through the Government's deliberated methodology and unaware of Mr. Nayfeld's exculpating testimony of October 12, 2016, encouraged by counsel who had, through inexcusable gross negligence, missed material opportunities to effectively assist me, under duress, I took the chance for 41/51 months to make back Home and see the Government in the Court. That what is happening right now. I did make through, including stroke in prison

32 The threat of imprisonment until the age of 79, effectively exerted by the Government despite their knowledge of the exculpatory evidence, was so pressing that it overcame my will and induced my acquiescence.

33 A Hobbs Act violation is specific intent crime; intent is essential element of offense.

34 I believed by telling Oleg Mitnick about the Murder-for-Hire plot against him, I was giving my long-time friend an opportunity to avert that fate, thus saving his life.

35 Mr. Mitnik then set upon the course of action he thought best in saving his own life. He went secretly to the authorities so that they could help him record, document, and ultimately arrest Mr. Nayfeld and his father-in-law, Anatoly Potik, the prime mover and mastermind behind the Murder-for-Hire plot.

36 The victim does not feel that Kotlyarsky should have been charged with extortion…The

10

000084

victim is upset, because Kotlyarsky allegedly wants to sue him for accusing him of committing extortion, but he had "nothing to do with how the government files criminal charges." ...The victim believes that if it were not for Kotlyarsky interceding in this scheme, he would be dead.

37 What ultimately happened is that Anatoly Potik and Boris Nayfeld cut deals with the Government and both are on the streets today. While I found myself enmeshed in a Governmental whirlwind from which I became unable to extricate myself because of prosecutorial fervor and misconduct in withholding Brady material.

38 Accordingly, by reason of the foregoing the Government's Motion to Dismiss should be denied.

The very crucial evidence which were also available to the Government and for reasons knowing to the government are missing in the Government back ground in their motion to dismiss:      September2015-10/31/2015-November2015-FBI-12/03/2015-12/16/2015 0007;01/04/2016-0016;01/07/2016-0021/0022/0023-DKT.#58page#5/6-01/07/2016  filed 05/04/2017 01/08/2016-01/11/2016-01/14/2016-the victim statement to S.A. Hardison one hour before arrest-01/14/2016 video post arrest interrogation two hours after arrest, then MCC Solitary Confinement (01/14/2016-01/21/2016) no commissary ,no phone communication with family ,01/22/2016&17audio-O2/03/2016-$20.000.000.Bail for A.Potik, 03/16/2016 03/22/2016 (Two Government Violations),06/02/2016 Pg.3/4; - 01/22/2016-06/08/2016 crime#1 Dismissed -06/07/2016-12/11/2017 Crime#2-Dismissed 12/03/2017-12/14/2017 Declaration to the Court by the Victim 03/18/2018 New York interview by Oleg Mitnik: 'FED'S SOLD ME OUT'-07/19/2018 the Government Declaration to the Court. All these crucial evidence not included in motion to dismiss.

000085

From November 2015 Until Present The Government Never provide the name of Co Conspirator for Boris Kotlyarsky Not the Name of the victim who was extorted by Boris Kotlyarsky. Mr. Thomas stated to Honor. Katherine Forrest:10/12/2016 page32 Ln#12-25; page 33 Ln.1-15:As to Count One the Conspiracy Count! the Government would be required to prove beyond a reasonable doubt Two elements: First the existence of a conspiracy to commit Hobbs act extortion. Second that the defendant knowingly and voluntarily agreed to join that conspiracy. As to Count two the substantive Hobbs Act Extortion: First that defendant wrongfully obtained the property of another. Second the defendant obtained that property with the victim's consent but that that consent was compelled by the wrongful use or threat or force violence or fear. These are definitions of conspiracy to extort and extortion which did not exist here.

000086

**WHEREFORE,** it is respectfully requested that Defendants' Motion to Dismiss be denied

in all respects.

BORIS KOTLYARSKY

NYSID 793148413
11/16/28

Sworn to and subscribed before

me this _2nd_ of August, 2021.

NOTARY PUBLIC

GALINA LUTSKER
NOTARY PUBLIC-STATE OF NEW YORK
No. 01LU6196693
Qualified in Kings County
My Commiss   Expires Nov  ber 24, 20 21

8/2/21

13

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BORIS KOTLYARSKY,

                    Plaintiff,

            -v-                                          20 Civ. 9230 (PGG)

UNITED STATES DEPARTMENT OF JUSTICE,
PREET BHARARA, *in his official capacity*, JAMES
COMEY, *in his official capacity*,

                    Defendants.

---

## REPLY MEMORANDUM OF LAW IN SUPPORT OF
## DEFENDANTS' MOTION TO DISMISS THE COMPLAINT

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633
E-mail: tara.schwartz@usdoj.gov

TARA SCHWARTZ
Assistant United States Attorney
– Of Counsel –

## **TABLE OF CONTENTS**

TABLE OF CONTENTS ............................................................................................... 2

PRELIMINARY STATEMENT ................................................................................... 1

ARGUMENT ................................................................................................................ 1

   I.   PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL ..................... 1

   II.  PLAINTIFF'S CLAIMS ARE BARRED BY *HECK v. HUMPHREY* ............................... 3

   III.   PLAINTIFF'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY ................... 4

   IV.   DEFENDANTS CANNOT BE SUED PURSUANT TO § 1983 ................................... 4

   V.  THE COMPLAINT FAILS TO STATE A TORT CLAIM ................................................ 5

CONCLUSION ............................................................................................................. 5

000089

## PRELIMINARY STATEMENT

Defendants the United States Department of Justice, and Preet Bharara and James Comey, sued in their official capacities, (collectively, "Defendants") by their attorney Audrey Strauss, United States Attorney for the Southern District of New York, respectfully submit this reply in further support of Defendants' motion to dismiss Plaintiff Boris Kotlyarsky's ("Plaintiff") Complaint.

Defendants' opening brief explained why the Complaint must be dismissed: (i) Plaintiff's claims are barred by collateral estoppel, *Heck v. Humphrey*, and sovereign immunity; Defendants cannot be sued pursuant to 42 U.S.C. § 1983; and Plaintiff fails to state a claim for malicious prosecution, false arrest, or intentional infliction of emotional distress.  Far from contending with the issues raised in Defendants' motion to dismiss, Plaintiff's opposition — in the form of an affidavit — merely repeats the same allegations that amount to nothing more than a collateral attack on his conviction and issues squarely decided against him in his criminal case that warrant dismissal of the Complaint.  For all of these reasons set forth in Defendants' opening brief, and as set forth below, the Complaint should be dismissed in its entirety, and judgment should be entered in favor of the Defendants.

## ARGUMENT

### I.   PLAINTIFF'S CLAIMS ARE BARRED BY COLLATERAL ESTOPPEL

Plaintiff utterly fails to address Defendants' arguments that his claims are barred by collateral estoppel, *Heck v. Humphrey*, and sovereign immunity.  In opposition, Plaintiff merely repeats his allegations that: (i) his motivation in notifying Oleg Mitnik about the murder-for-hire plot was to save Mitnik's life; (ii) Plaintiff never discussed payment with anyone involved in the murder-for-hire plot; (iii) the Government could not prove the elements of Hobbs Act extortion

1

000090

because "no money was exchanged or contemplated"; (iv) Plaintiff did not expect to obtain money from saving Mitnik's life; (v) Plaintiff was coerced into pleading guilty; and (vi) Mitnik did not believe that Plaintiff should have been charged with a crime.

As carefully laid out in Defendants' opening brief, those claims are all subject to collateral estoppel. In his § 2255 petition, Plaintiff argued that: (i) "he was motivated to save the life of Oleg Mitnik, whom he had known for many years" (Dkt. #72 ("Aff.") at ¶ 90; *see id.* at 139); (ii) Plaintiff "did not want and was not expecting to make any money from saving Oleg Mitnik's life" (*id.* at ¶ 90); (iii) Plaintiff did not intend to obtain Mitnik's property nor did he benefit financially from informing Mitnik about the murder-for-hire plot (*id.* at ¶¶ 63-64, 133); (iv) the Government failed to prove extortion because Plaintiff never used actual or threatened force, violence, or fear to obtain the property of Mitnik or anyone else (*id.* at ¶ 132); (v) Plaintiff pleaded guilty under duress due to the Government's violations *Brady v. Maryland*, 373 U.S. 83 (1963), his actual innocence, his advanced age, and the timing and expiration of the Government's plea offer (*id.* at ¶¶ 102-130); and (vi) Mitnik believed, as evidenced by his letter in support of the petition, that Plaintiff should not have been charged with a crime (*see id.* at ¶¶ 65-66, 112, 141). Judge Kaplan thoroughly considered and rejected each of Plaintiff's arguments in a well-reasoned opinion. *See United States v. Kotlyarsky*, No. 16 Cr. 215 (LAK), 18 Civ. 1746 (LAK), 2019 WL 1957537 (S.D.N.Y. May 2, 2019).

Specifically, Judge Kaplan rejected Plaintiff's argument that "he acted solely based on altruistic motives." *Id.* at *7. Rather, Judge Kaplan, who oversaw the Government's criminal proceedings against Plaintiff stated:

> [At sentencing, the Court] reached its conclusion based on Kotlyarsky's other business interests with Nayfeld at the time, his discussions of other potential business during his meetings with Mitnik, and the observation that by ingratiating himself with both

<div align="center">2</div>

> Nayfeld and Mitnik through the extortion scheme, Kotlyarsky "saw
> ... a situation of which [he] could take advantage" so that "at the end
> of the day, in one way or another, there would be an economic
> benefit to [him] no matter how it turned out," regardless of whether
> he received a direct payment from the extortion plot.

*Id.* Judge Kaplan also rejected Plaintiff's arguments that he pleaded guilty under duress, *see id.*

at *8, and that his conviction should be set aside because Mitnik believed Plaintiff should not

have been charged with a crime, *see id.* at *6 ("Even if Mitnik believed that Kotlyarsky should

not have been charged with the crime of extortion, nothing in his affidavit changes the fact that

Kotlyarsky did in fact aid and abet the commission of the extortion plot.").

Plaintiff does not contend that Judge Kaplan did not already address these issues nor does

he contend that he did not have a full and fair opportunity to raise such claims in his criminal

proceeding.  Accordingly, collateral estoppel applies to bar Plaintiff from raising the same

arguments again.  *See Abdel-Whab v. Orthopedic Ass'n of Dutchess*, 415 F. Supp. 2d 293, 307

(S.D.N.Y. 2006) ("It is well settled that a criminal conviction, whether by jury verdict or guilty

plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to

those matters determined by the judgment in the criminal case." (citing *United States v. Podell*,

572 F.2d 31, 35 (2d Cir. 1978)).

## II.   PLAINTIFF'S CLAIMS ARE BARRED BY *HECK v. HUMPHREY*

For the same reasons that Defendants outlined in their opening brief, Plaintiff's claims

are barred by the doctrine established in *Heck v. Humphrey*, 512 U.S. 477 (1994).  The

arguments that Plaintiff raises in his opposition — that he did not expect to obtain or actually

obtain money from anyone for foiling the murder-for-hire plot, and therefore that the

Government failed to prove the elements of extortion, and that his guilty plea was coerced —

would necessarily imply the invalidity of his criminal conviction.  Because Plaintiff fails to even

3

000092

contend that his criminal conviction was reversed, expunged, declared invalid, or called into question, he cannot defeat the bar imposed on challenges to his conviction or sentence. *See Santana v. Denton*, No. 20 Civ. 04352 (LLS), 2020 WL 4505733, at *5 (S.D.N.Y. July 30, 2020) (dismissing plaintiff's claim that he was coerced to plead guilty as barred by *Heck*); *El v. City of New York*, No. 14 Civ. 9055 (GHW), 2015 WL 1873099, at *3 (S.D.N.Y. Apr. 23, 2015) (dismissing plaintiff's claim of coerced guilty plea because plaintiff had not shown that his conviction was reversed on direct appeal, expunged by executive order, or otherwise declared invalid).

## III.   PLAINTIFF'S CLAIMS ARE BARRED BY SOVEREIGN IMMUNITY

As explained in Defendants' opening brief, this action is barred by sovereign immunity because the United States has not waived sovereign immunity for claims arising under § 1983, or any other constitutional tort claim. *FDIC v. Meyer*, 510 U.S. 471, 484-87 (1994) (holding that the Federal Tort Claims Act does not waive sovereign immunity for constitutional torts, and *Bivens* claims can be brought only against federal officials in their individual capacities, not against the United States and its agencies); *Davis v. United States*, No. 03 Civ. 1800 (NRB), 2004 WL 324880, at *10 (S.D.N.Y. Feb. 19, 2004) ("[T]he United States has not waived sovereign immunity for actions arising under 42 U.S.C. § 1983."). In his opposition, Plaintiff fails to cite any other theory or law upon which his suit is premised. Accordingly, this action must be dismissed for lack of subject matter jurisdiction.

## IV.   DEFENDANTS CANNOT BE SUED PURSUANT TO § 1983

Again, as explained in Defendants' opening brief, Plaintiff's claims must be dismissed for the additional reason that actions of the federal government or its officers are exempt from the proscriptions of § 1983. *See District of Columbia v. Carter*, 409 U.S. 418, 424-25 (1973).

4

Accordingly, Plaintiff cannot maintain § 1983 claims against the United States Department of Justice, as an agency of the federal government, and James Comey and Preet Bharara, as former officers of the federal government.

## V.   THE COMPLAINT FAILS TO STATE A TORT CLAIM

Finally, the fact that Plaintiff fail to state a claim for malicious prosecution, false arrest, or intentional infliction of emotional distress provides an entirely separate ground for the dismissal of Plaintiff's Complaint.  Instead of attempting to argue why his allegations suffice to plead any of these claims, Plaintiff's opposition merely repeats allegations from his Complaint. For the reasons thoroughly explained in Defendants' opening brief, and should the Court reach this question, the Complaint should be dismissed because it fails to state a claim under any of these tort theories.

## CONCLUSION

For the foregoing reasons, Defendant respectfully requests that the Court grant Defendants' motion to dismiss and dismiss Plaintiff's Complaint.

Dated:   August 6, 2021
         New York, New York

<div style="margin-left:40%">

Respectfully submitted,

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
*Attorney for the Defendant*

By:     */s/ Tara Schwartz*
        _____
        TARA SCHWARTZ
        Assistant United States Attorney
        86 Chambers Street, 3rd Floor
        New York, New York 10007
        Tel.: (212) 637-2633
        E-mail: tara.schwartz@usdoj.gov

</div>

5

000094

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

Boris Kotlyarsky,

                                        **Plaintiff,**

          -against-

United States Department of Justice et al.,

                                        **Defendants.**

```
┌────────────────────────────────┐
│ USDC SDNY                       │
│ DOCUMENT                        │
│ ELECTRONICALLY FILED            │
│ DOC #:_____            │
│ DATE FILED:___8/18/2021_____    │
└────────────────────────────────┘
```

**1:20-cv-09230 (PGG) (SDA)**

<u>**REPORT AND RECOMMENDATION**</u>

**STEWART D. AARON, UNITED STATES MAGISTRATE JUDGE.**

**TO THE HONORABLE PAUL G. GARDEPHE, UNITED STATES DISTRICT JUDGE:**

          Pending before the Court is Defendants' motion, pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure, to dismiss the Complaint of Plaintiff Boris Kotlyarsky

("Plaintiff" or "Kotlyarsky"). (Defs.' Not. of Mot., ECF No. 19.) For the reasons set forth below, I

respectfully recommend that Defendants' motion be GRANTED.

<u>**BACKGROUND**</u>

**I.     <u>Prior Criminal Proceedings Against Plaintiff</u>**

          This action arises out of criminal proceedings in this Court against Kotlyarsky. In June

2017, following his plea of guilty, Kotlyarsky was convicted in this Court of one count of

Conspiracy to Commit Extortion and one count of Extortion. (*See* Judgment, *United States v.*

*Kotlyarsky*, No. 16-CR-00215 (S.D.N.Y. June 6, 2017), ECF No. 63.) A Memorandum Decision by

District Judge Lewis A. Kaplan regarding Kotlyarsky's motion to vacate his conviction or reduce

his sentence sets forth the offense conduct, as follows:

> In January, 2016, the government filed a criminal complaint alleging that
> Kotlyarsky brokered a deal between Boris Nayfeld and Oleg Mitnik, wherein
> Mitnik agreed to pay Nayfeld approximately $125,000 in exchange for Nayfeld's

promise to halt a pending contract for Mitnik's murder. The murder contract was ordered by a Russian businessman named Anatoly Potik, who was Mitnik's father-in-law. Kotlyarsky knew Nayfeld through Potik. Kotlyarsky learned that Potik planned to hire Nayfeld to kill someone and discerned that the intended victim was Mitnik. Kotlyarsky informed Mitnik of the pending murder contract and arranged meetings between Nayfeld and Mitnik. Kotlyarsky believed that Nayfeld would demand money from Mitnik to halt the murder contract, and that due to Nayfeld's criminal reputation, Mitnik would likely pay the money that Nayfeld demanded.

Unbeknownst to Kotlyarsky or to Nayfeld, Mitnik contacted law enforcement after Kotlyarsky informed him of the existence of the murder contract. Subsequent meetings and communications that Mitnik had with Kotlyarsky and Nayfeld relating to the murder contract were recorded. Mitnik agreed to pay Nayfeld the first $50,000 payment toward the agreed-upon sum of $125,000 at an in-person meeting. At that meeting, Mitnik wrote a check for $50,000 and gave it to Nayfeld. Upon leaving the restaurant where the meeting took place, the FBI arrested Nayfeld. Shortly thereafter, Kotlyarsky was arrested also.

*Kotlyarsky v. United States*, No. 18-CV-01746, 2019 WL 1957537, at *1 (S.D.N.Y. May 2, 2019) (footnotes omitted).

On March 16, 2016, a Grand Jury issued an Indictment against Kotlyarsky charging him with Conspiracy to Commit Extortion (Count One) and Extortion (Count Two). (*See* Indictment, *Kotlyarsky*, No. 16-CR-00215, ECF No. 16.) On October 5, 2016, the Government filed a superseding indictment against Kotlyarsky. (*See* Superseding Indictment, *Kotlyarsky*, No. 16-CR-00215, ECF No. 35.) "The superseding indictment charged that, in addition to the plot relating to the murder contract, Kotlyarsky and Nayfeld conspired to commit extortion also by agreeing to use Nayfeld's 'reputation for violence and association with organized crime figures to recover Kotlyarsky's business interests in Russia.'" *Kotlyarsky*, 2019 WL 1957537, at *1.The superseding indictment also contained a new count of attempted witness tampering. *Id.* at *1-2.

000096

On October 12, 2016, Nayfeld pleaded guilty to one count of Conspiracy to Commit Extortion and one count of Extortion before District Judge Katherine B. Forrest. *See Kotlyarsky*, 2019 WL 1957537, at *2. "In his plea allocution, Nayfeld stated, *inter alia*, that '[i]t was [his] intention to share the money with [Kotlyarsky] but he said no.'" *Id.* (alterations in original). Judge Forrest ordered the transcript sealed at the request of the government. *Id.*

On October 26, 2016, the Government offered to accept Kotlyarsky's plea to Counts One and Two of the original indictment, with a stipulated guidelines range of 41 to 51 months' imprisonment. *See Kotlyarsky*, 2019 WL 1957537, at *2. The same day, Kotlyarsky accepted the plea offer. *See id.* Thereafter, Judge Kaplan accepted Kotlyarsky's guilty plea and sentenced Kotlyarsky to 41 months' imprisonment. *See id.* at *3. Kotlyarsky did not appeal his conviction or sentence. *See id.*

On February 23, 2018, Kotlyarsky filed a motion, pursuant to 28 U.S.C. § 2255, to vacate, set aside or correct his sentence. (*See* Motion, *Kotlyarsky*, No. 18-CV-01746 (S.D.N.Y. Feb. 23, 2018), ECF No. 1.) As supplemented by later filings, Kotlyarsky's motion raised a number of arguments in support thereof, including that (1) his trial counsel was ineffective; (2) the Government violated its obligations under *Brady v. Maryland*, 373 U.S. 83 (1963), and under its duty of candor by failing to provide him with Nayfeld's guilty plea transcript; and (3) the Government caused him to plead guilty under duress. *See Kotlyarsky*, 2019 WL 1957537, at *5-8. On May 2, 2019, Judge Kaplan denied Kotlyarsky's § 2255 motion in all respects. *See id.* at 8.

On November 3, 2020, Kotlyarsky filed his Complaint in this action. (Compl., ECF No. 1.) Plaintiff brings this action, principally pursuant to 42 U.S.C. § 1983, against three defendants: the United States Department of Justice (the "Justice Department"); Preet Bharara ("Bharara"),

3

the former U.S. Attorney for the Southern District of New York, in his official capacity; and James Comey ("Comey"), the former director of the Federal Bureau of Investigation, in his official capacity. (*See id.* ¶¶ 1, 8-10.) Kotlyarsky brings Section 1983 claims for alleged violations of his constitutional rights (*see* Compl. Counts I-III, ¶¶ 81-95), as well as state-law claims for malicious prosecution (*see id.* Count IV, ¶¶ 96-100) and intentional infliction of emotional distress.[1] (*See id.* Count V, ¶¶ 101-04.)

The factual allegations underlying his claims set forth in the Complaint are a rehash of the arguments he previously made in connection with his Section 2255 motion. (*Compare, e.g.*, Compl. ¶¶ 23-34 *with* Affirmation, *Kotlyarsky*, No. 18-CV-01746 (S.D.N.Y. Apr. 9, 2018), ECF No. 7 ("Habeas Aff."), ¶¶ 50-57, 59, 61-63; Compl. ¶¶ 35-36 *with* Habeas Aff. ¶¶ 65-66; Compl. ¶¶ 42-46, 65 *with* Habeas Aff. ¶¶ 102-08, 127). In summary, Kotlyarsky alleges that the FBI, under the direction of Comey, provided misleading information that led to the Kotlyarsky's arrest in order to protect Potik, and that the Government, under the direction of Bharara, withheld exculpatory testimony of Nayfeld in violation of *Brady*. (*See Compl.* ¶ 2.)

On August 6, 2021, Defendants filed their motion to dismiss. (*See* Defs.' Not. of Mot.) On August 9, 2021, Kotlyarsky filed an affidavit in opposition to the motion to dismiss. (*See* Opp. Aff., ECF No. 21.) Later that same day, Defendants filed their reply memorandum. (*See* Reply, ECF No. 22.) On August 10, 2021, Defendants' motion to dismiss was referred to me for a report and recommendation. (*See* Order of Reference, ECF No. 23.)

---

[1] While Plaintiff asserts this claim under the section heading "Intentional Infliction of Emotional Distress," paragraphs 5, 80 and 103 of the Complaint allege "negligent" infliction of emotional distress. (*See* Compl. ¶¶ 5, 80, 103.)

4

000098

## LEGAL STANDARDS

### I.   Motion To Dismiss

Defendants bring the present motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6)

of the Federal Rules of Civil Procedure. (*See* Defs.' Not. of Mot., at 1.) Rule 12(b)(1) permits a

party to move to dismiss a complaint for "lack of subject-matter jurisdiction." Fed. R. Civ. P.

12(b)(1). "A case is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1)

when the district court lacks the statutory or constitutional power to adjudicate it." *Lyons v.*

*Litton Loan Servicing LP*, 158 F. Supp. 3d 211, 218 (S.D.N.Y. 2016) (quoting *Makarova v. United*

*States*, 201 F.3d 110, 113 (2d Cir. 2000)). "In resolving a motion to dismiss for lack of subject

matter jurisdiction under Rule 12(b)(1), a district court . . . may refer to evidence outside the

pleadings." *Makarova*, 201 F.3d at 113 (citing *Kamen v. American Tel. & Tel. Co.*, 791 F.2d 1006,

1011 (2d Cir. 1986)).

To survive a motion to dismiss for failure to state a claim upon which relief can be

granted under Rule 12(b)(6), a complaint must "contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). When ruling on a motion

to dismiss, pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, courts are required

to accept as true all factual allegations in the complaint and to draw all reasonable inferences in

the plaintiff's favor. *See Walker v. Schult*, 717 F.3d 119, 124 (2d Cir. 2013). However, this

requirement does not apply to legal conclusions, bare assertions or conclusory allegations. *See*

*Iqbal*, 556 U.S. at 678, 681 (citing *Twombly*, 550 U.S. at 555). "[O]nly a complaint that states a

plausible claim for relief survives a motion to dismiss." *Id.* at 679.

000099

## II.    Section 1983

Section 1983 creates liability for "[e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws," 42 U.S.C. § 1983. "A § 1983 claim has two essential elements: (1) the defendant acted under color of state law; and (2) as a result of the defendant's actions, the plaintiff suffered a denial of her federal statutory rights, or her constitutional rights or privileges." *Mahnevich v. MTGLQ Investors, L.P.,* No. 19-CV-00072 (AT) (SN), 2021 WL 3406484, at *7 (S.D.N.Y. Aug. 4, 2021) (quoting *Annis v. Cty. of Westchester*, 136 F.3d 239, 245 (2d Cir. 1998)).

Section 1983 "only provides redress for federal statutory and constitutional violations perpetrated under color of *state* law." *Nghiem v. U.S. Dep't of Veterans Affs.*, 451 F. Supp. 2d 599, 605 (S.D.N.Y. 2006) (emphasis in original), *aff'd*, 323 F. App'x 16 (2d Cir. 2009). "Actions of the federal government or its officers are exempt from the proscriptions of § 1983." *Id.* (collecting cases).

## III.    Federal Tort Claims Act ("FTCA")

The United States, as sovereign, is immune from suit absent a waiver of that immunity by statute. *See, e.g., Cooke v. United States*, 918 F.3d 77, 81 (2d Cir. 2019). "One such limited waiver of sovereign immunity is provided by the FTCA, which allows for a tort suit against the United States under specified circumstances." *Id.* (internal quotation marks and citation omitted).  "The FTCA requires that a claimant exhaust all administrative remedies before filing a complaint in federal district court. This requirement is jurisdictional and cannot be waived."

000100

*Celestine v. Mt. Vernon Neighborhood Health Ctr.*, 403 F.3d 76, 82 (2d Cir. 2005) (citing *McNeil v. United States*, 508 U.S. 106, 113 (1993)). "The burden is on the plaintiff to both plead and prove compliance with the statutory requirements of the FTCA. In the absence of such compliance, a district court has no subject matter jurisdiction over the plaintiff's claim[.]" *Thomas v. Metro. Correction Ctr.*, No. 09-CV-01769 (PGG), 2010 WL 2507041, at *5 (S.D.N.Y. June 21, 2010) (alterations omitted) (quoting In re *"Agent Orange" Prod. Liab. Litig.*, 818 F.2d 210, 214 (2d Cir. 1987)).

## ANALYSIS

In the first paragraph of his Complaint, Plaintiff asserts that "[t]his is an action pursuant to 42 U.S.C. Section 1983 to redress the deprivation under color of law of Plaintiffs' [*sic*] rights as secured by the United States Constitution." (Compl. ¶ 1.) Plaintiff's first three claims purport to allege violations of his constitutional rights. (*See id.* ¶¶ 81-95.) Since Defendants here are an agency of the federal government and two federal officers in their official capacities, however, their conduct is exempt from the proscriptions of Section 1983. *See Nghiem*, 451 F. Supp. 2d at 605. Thus, to the extent Plaintiff's claims are brought under Section 1983, they must be dismissed on that basis alone.[2]

---

[2] In addition, Defendants are protected from suit under Section 1983 by sovereign immunity. "[B]ecause an action against a federal agency or federal officers in their official capacities is essentially a suit against the United States, such suits are [] barred under the doctrine of sovereign immunity, unless such immunity is waived." *Harrison v. New York*, 95 F. Supp. 3d 293, 316 (E.D.N.Y. 2015) (quoting *Robinson v. Overseas Mil. Sales Corp.*, 21 F.3d 502, 510 (2d Cir. 1994)). "[W]aivers of sovereign immunity must be 'unequivocally expressed' in statutory text, and cannot simply be implied." *Adeleke v. United States*, 355 F.3d 144, 150 (2d Cir. 2004) (citing *United States v. Nordic Vill. Inc.*, 503 U.S. 30, 33-34 (1992)). Because "the United States has not waived sovereign immunity for actions arising under 42 U.S.C. § 1983," the Court lacks jurisdiction over any claim Plaintiff brings against Defendants pursuant to Section 1983. *Davis v. United States*, No. 03-CV-01800 (NRB), 2004 WL 324880, at *10 (S.D.N.Y. Feb. 19, 2004).

000101

Despite the opening invocation of 42 U.S.C. § 1983, Plaintiff's Complaint identifies his fourth and fifth claims, for malicious prosecution and intentional infliction of emotional distress, as "state law claim[s]." (Compl. at 22 (capitalization omitted).) The Court lacks subject matter jurisdiction over these claims as well, because they fall within the purview of the FTCA, but Plaintiff fails to allege that he has exhausted his administrative remedies by presenting his claims to the appropriate federal agency, as the FTCA requires. *See* 28 U.S.C. § 2675(a). In the absence of Plaintiff's compliance with the FTCA's pleading requirements, this Court lacks subject matter jurisdiction over his FTCA claims.[3] *Thomas*, 2010 WL 2507041, at *5.

There are additional, independent reasons for dismissal of Plaintiff's various claims. Insofar as Plaintiff's Complaint raises the same claims as were asserted in his Section 2255 motion, which was denied in its entirety, he is collaterally estopped from pursuing such claims. The Second Circuit has "long held that 'a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.'" *United States v. U.S. Currency in Amount of $119,984.00, More or Less*, 304 F.3d 165, 172 (2d Cir. 2002) (quoting *United States v. Podell*, 572 F.2d 31, 35 (2d Cir. 1978)); *see also, e.g., SEC v. Opulentica*, 479 F. Supp. 2d 319, 326 (S.D.N.Y. 2007) ("[Defendant] was convicted by guilty plea on securities-fraud charges related to the same activities at issue here. Thus, all questions of fact material to and

---

[3] In addition, the Court would lack jurisdiction over these particular Defendants in connection with claims otherwise validly brought under the FTCA, as such claims may only be brought against the United States itself. *See Myers & Myers, Inc. v. U. S. Postal Serv.*, 527 F.2d 1252, 1256 (2d Cir. 1975) (finding no subject matter jurisdiction over government agency and two of its employees on the basis that "[o]nly claims 'against the United States' are included within the Federal Tort Claims Act jurisdiction"); *see also Hui Yu v. U.S. Dep't of Homeland Sec.*, 568 F. Supp. 2d 231, 235 (D. Conn. 2008) ("A claim under the FTCA may only be brought against the United States and not against federal agencies." (citing *Mignogna v. Sair Aviation, Inc.*, 937 F.2d 37, 40 (2d Cir. 1991))).

000102

underlying [defendant's] criminal conviction, as established during the plea allocution, bind [defendant] in this subsequent civil action.").

Plaintiff's Section 1983 claims also fail under the doctrine established by the Supreme Court in *Heck v. Humphrey*, 512 U.S. 477, 487 (1994). In *Heck*, the Court held that Section 1983 claims arising from a plaintiff's criminal conviction are barred unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Id.* at 487. After *Heck*, a plaintiff may not seek damages in a Section 1983 suit if a judgment in his favor "'would necessarily imply' the invalidity' of a prior state or federal criminal conviction or sentence." *Cox v. Aversa*, No. 18-CV-03898 (NSR), 2020 WL 815476, at *3 (S.D.N.Y. Feb. 19, 2020) (quoting *Heck*, 512 U.S. at 487)). Here, any judgment in Plaintiff's favor on his Section 1983 claims necessarily would imply the invalidity of his conviction and sentence. (*See* Compl. at 20 (Claim I entailing "wrongful prosecution"); *id.* at 21 (Count II entailing "false[] arrest[]" and "judicial proceedings for which there was no probably [*sic*] cause"; Count III entailing "false[] charge[s]" brought against Plaintiff).) [4]

Further, even if it otherwise were viable against these particular federal defendants— which it is not—Plaintiff's malicious prosecution claim is meritless. Under New York law, a malicious prosecution claim has four elements: (1) initiation of a proceeding against the plaintiff; (2) termination of that proceeding in his favor; (3) lack of probable cause; and (4)

---

[4] To the extent Plaintiff brings his malicious prosecution claim under Section 1983, it too necessarily would imply the invalidity of his conviction and sentence and thus is barred by *Heck*. (*See* Compl. at 22 (Count IV entailing "wantonly initiated and continued criminal proceedings against Plaintiff without probable cause," where Plaintiff "was actually and objectively innocent").)

000103

malice.[5] *Id.* at 161. Here, Plaintiff pled guilty in the underlying proceeding. Thus, there was no termination of that proceeding in his favor. *See Magnotta v. Putnam Cty. Sheriff,* No. 13-CV-02752, 2014 WL 705281, at *6 (S.D.N.Y. Feb. 24, 2014) ("A guilty plea, even if it was a plea to fewer than all the charges, does not satisfy the 'favorable' termination element of a malicious prosecution claim.").[6]

Finally, Plaintiff has not pled the elements of an emotional distress claim. The New York state law tort of intentional infliction of emotional distress "has four elements: (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." *A.M. ex rel. J.M. v. NYC Dep't of Educ.,* 840 F. Supp. 2d 660, 690 (E.D.N.Y. 2012) (quoting *Bender v. City of New York,* 78 F.3d 787, 790 (2d Cir. 1996)), *aff'd sub nom. Moody ex rel. J.M. v. NYC Dep't of Educ.,* 513 F. App'x 95 (2d Cir. 2013). In the present case, no facts are pled to establish extreme or outrageous conduct by Bharara or Comey.[7] In addition, the intentional infliction of emotional distress claim against the Justice Department must be dismissed since such a claim cannot be

---

[5] Even if Plaintiff purported to bring his malicious prosecution claim under Section 1983, he would have to establish the elements of that offense under New York law. *See, e.g., Manganiello v. City of New York,* 612 F.3d 149, 160-61 (2d Cir. 2010) ("In order to prevail on a § 1983 claim against a state actor for malicious prosecution, a plaintiff must show a violation of his rights under the Fourth Amendment and must establish the elements of a malicious prosecution claim under state law." (citations omitted)).

[6] Similarly meritless is Plaintiff's Section 1983 claim for false arrest (*see* Compl., Count II, ¶¶ 84-89), since the existence of probable cause and a resulting conviction each constitute a complete defense. *See Jaegly v. Couch,* 439 F.3d 149, 154 (2d Cir. 2006) ("[W]e conclude here that a claim for false arrest turns only on whether probable cause existed to arrest a defendant[.]"); *Cameron v. Fogarty,* 806 F.2d 380, 388-89 (2d Cir. 1986) ("[W]here law enforcement officers have made an arrest, the resulting conviction is a defense to a § 1983 action asserting that the arrest was made without probable cause.").

[7] Plaintiff's claim fails on this ground even to the extent he intended to plead negligent, as opposed to intentional, infliction of emotional distress, as "[e]xtreme and outrageous conduct is also an element of negligent infliction of emotional distress." *Calicchio v. Sachem Cent. Sch. Dist.,* 185 F. Supp. 3d 303, 314 (E.D.N.Y. 2016) (citing *Franco v. Diaz,* 51 F. Supp. 3d 235 (E.D.N.Y. 2014)).

000104

brought against a governmental entity. *See Noel Pane v. Town of Greenburgh*, No. 07-CV-03216

(LMS), 2012 WL 12886971, at *6 (S.D.N.Y. Mar. 21, 2012).

## CONCLUSION

For the foregoing reasons, I respectfully recommend that Defendants' motion to dismiss

be GRANTED. I further recommend that Plaintiff not be granted leave to replead, as any

attempt to amend would be futile.[8] As set forth above, no Section 1983 claim is viable against

federal defendants and this Court lacks jurisdiction over any state law claims.

Dated: August 18, 2021
        New York, New York

*Stewt d. Aaron*
**STEWART D. AARON**
**United States Magistrate Judge**

\*               \*               \*

**NOTICE OF PROCEDURE FOR FILING OBJECTIONS TO THIS REPORT AND RECOMMENDATION**

The parties shall have fourteen (14) days (including weekends and holidays) from service

of this Report and Recommendation to file written objections pursuant to 28 U.S.C. § 636(b)(1)

and Rule 72(b) of the Federal Rules of Civil Procedure. *See also* Fed. R. Civ. P. 6(a), (d) (adding

three additional days when service is made under Fed. R. Civ. P. 5(b)(2)(C), (D) or (F)). A party

may respond to another party's objections within fourteen days after being served with a copy.

Fed. R. Civ. P. 72(b)(2). Such objections, and any response to objections, shall be filed with the

Clerk of the Court. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b). Any requests for an

extension of time for filing objections must be addressed to Judge Gardephe.

---

[8] Where an amendment would be futile, leave to amend is not required. *See Hill v. Curcione*, 657 F.3d
116, 123-24 (2d Cir. 2011).

000105

**THE FAILURE TO FILE THESE TIMELY OBJECTIONS WILL RESULT IN A WAIVER OF THOSE OBJECTIONS FOR PURPOSES OF APPEAL.** *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72(b); *Thomas v. Arn,* 474 U.S. 140 (1985).

000106

## UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BORIS KOTLYARSKY, an individual,<br><br>       Plaintiff,<br><br><br>- against-<br><br><br>UNITED STATES DEPARTMENT OF JUSTICE, a Governmental federal agency, PREET BHARRARA, in his official capacity, and JAMES COMEY, in his official capacity<br><br>       Defendants. | Docket No. 20-Civ- 9230(PGG)<br><br><br><br>**AFFIDAVIT IN SUPPORT OF OBJECTION** |

STATE OF NEW YORK }
              }
COUNTY OF KINGS   }

Boris Kotlyarsky, being duly sworn, deposes and says:

1. I am the Plaintiff in this action and as such am familiar with all the facts and circumstances

   of this action.

2. I submit this affidavit in support of my objection to Magistrate Judge's Steward D.

   Aaron's Report and Recommendation.

3. I respectfully request that the court allow me to replead my Complaint.

1

000119

4.  I was imprisoned without any evidence and am able to demonstrate through documentary evidence that the Government did not meet the requisite burden of proof and my case should have been dismissed.

5.  I respectfully ask the court give me an opportunity to re-plead my case because this is my last chance to get the justice which was granted by the United States Constitution.

6.  After this court will examine all the evidences, including government transcripts it will be clear that the Government did not have a basis for the conviction, let alone an arrest in this matter.

7.  Your Honor You are dealing with life of U.S. Citizen, whose ONLY crime was saving life of another U.S. Citizen with no financial or any gain. As recorded in the Government's transcript (12/16/2015-0007and 01/09/2016- 0025) my statements to the victim: 'In my heart I know that life was given to you, to me and to everybody else by our GOD the LORD, and only GOD the LORD has the right to take your life, nobody else' PO#0370: I did most important thing. Not before you, not before him. I did the most important thing before GOD the LORD, do you understand? PO.0372: The most important thing is that we are all clean before GOD the LORD."

8.  Based on the government, my act of saving the life of another human being became a sin for which I served time in prison. My noble deed was converted into a federal crime.

9.  I am an nnnocent law abiding United States Citizen who did a Noble deed by saving the life of Oleg Mitnik. There was absolutely nothing for me to gain for doing the right thing, nothing to gain for saving the life of Mr. Mitnik. There was no financial, personal or any other gain. Oleg Mitnik, the victim praised me for saving his life.

000120

10. Oleg Mitnik stated: "If it was not for Boris Kotlyarsky, I would not be alive today" (01/14/2016   statement to S.A. Hardison;   01/19/2017   PSR   §26-§27; 12/03/2017; 12/14/2017 Declaration to the court; 03/18/2018 New York Post Interview).

11. While the victim declared that I did a noble deed, the government accused me of extortion of the same Oleg Mitnik.

12. This could not be farther from the truth. At sentencing the government never provided the name of the victim of the extortion (01/15/2016; 03/16/2016; 03/22/2016; 10/05/2016; 10/13/2016; 10/22/2016; 10/25/2016;       10/26/2016; 10/27/2016;       01/19/2017 PSR §26-927;05/31/2017 sentencing the  court page 17; Line #20-21: Although  I DO NOT have specific    evidence       before me" Page 18,Line 1-2: "There has been N0 express testimony or evidence!'

13. All cases must be decided only on evidence presented. This is a contradictingstatement, as the government DID NOT present a single piece of evidence in support of why I was charged with conspiracy to extort and extortion. The government did not follow the law in this instance.

14. I am pursuing my claim in the instant matter because I am a U.S. Citizens, and my constitutional rights were violated.   The violation occurred by: falsely manufactured accusations, false arrest, false indictment, false superseding indictment, and false manufactured 2015   affidavit as a basis to revoke my bail to the   point of no return.

15. This scheme was done to be able to use extortion against me by      manufacturing Russian scheme and adding 7 levels which gave a very significant chance for me  to die in prison. For exchange for saving the life of Oleg Mitnik, for doing a Noble deed and saving U.S. Citizen. What was provided in exchange to me is a death sentence to serve in prison.

3

000121

This is what was done by U. S. Government.

16. If court will dismiss the case against the government, this would be a great injustice in the U.S court of law. As was charged in accusation, arrest, solitary confinement, indictments, extortion and a prison sentence so long it would offer a chance to die in prison. We ask for only one piece of information, which is the name of the victim who was extorted by Boris Kotlyarsky, if this name even exists. This is definitely not U.S. Citizen, Oleg Mitnik.

17. Besides all the   statements   that Oleg Mitnik made, he is ready to testify in front of this court to support my innocence and noble deed.

18. The Court sentenced me based on a lack of single evidence, without hearing  Mr. Oleg Mitnik's testimony.

19. All I ask for is just a chance to present all evidence and witnesses which will prove that an innocent U.S. Citizen was wrongfully convicted and humiliated for saving a human life.

20. This is my last chance to prove my innocence supported only by evidence.

21. When I was given a prison sentence for saving a human life, this was unjust and done with lack of even a single evidence. I was sentenced to prison with lack of facts or supporting accusation.

22. I am innocent and the government unjustly prosecuted and sentenced me. If the court was presented with the Government's transcripts, it would be clear that it cannot support a criminal conviction.

23. I plead with your Honor and beg you to uphold my rights granted by the U.S. Constitution.

24. The Government never presented the victim's name and the co-conspirator's name in this matter and therefore failed to establish that I was guilty of Hobbes Act Extortion. The evidence does not support the conviction.

000122

25. Now count one conspiracy to extort, definition of conspiracy to any crime are agreement between two or more persons. Russian mobster Boris Nayfeld who had an agreement with the master mind A. Potik to murder Oleg Mitnik, a U.S Citizen for $250,000 (01/08/2016-01/11/2016-01/22/2016&17-10/12/2016).

26. It was my intervention which prevented the murder for hire plot from being completed and executed (01/11/2016).

27. When Mr. Nayfeld was arrested on 01/14/2016 he provided 01/22/2016-§17 audio recording of the murder plot between A. Potik and B. Nayfeld of all meetings where the murder for hire plot was discussed. After 01/22/2016, Boris Nayfeld became the government witness for the third time, including two previous criminal cases he was charged.

28. Boris Nayfeld testified as the government witness on 10/01/2016-10/12/2016 under the oath he stated: Not financial or other gain for Mr. Kotlyarsky'.

29. Nayfeld did not conspire with anybody to extort U.S. Citizen Oleg Mitnik, (10/12/2016) also in the recorded transcripts 01/08/2016 and 01/11/2016 at the meetings between Oleg Mitnik and Boris Nayfeld. Boris Nayfeld stated: Page 0479 "Thank God someone like Borya Kotlyarsky came into the picture, because if it was not for him, basically what is difference to me? Thank god it turned out this way".

30. The second is U.S. Citizen Boris Nayfeld- the Hitman who then became the government witness. Both of these individuals stated that Mr. Kotlyarsky did not extort Oleg Mitnik- the victim. Mr. Kotlyarsky did not conspire to extort with Boris Nayfeld- the U.S. government witness. The government's own explanation 05/04/2017 DKT.#58 page5-6

5

000123

(01/07/2016) was in support of Oleg Mitnik statement, that he was not extorted by Mr. Kotlayrsky.

31. If the government witness Boris Nayfeld stated under oath on 10/01/2016-10/12/2 016 that there was no conspiracy to extort with Boris Kotlyarsky, no financial gain for Boris Kotlyarsky, then where did the Government's count one come from? Without the name of the co-conspirator, the name is definitely not Boris Nayfeld then the question remains: Who co-conspired with Mr. Kotlyarsky? Is there a name? - But not Boris Nayfeld.

32. If this court will allow me to re-plead my case , I will demonstrate that improper actions were taken by the government, and that I did a noble deed to save the life of Oleg Mitnik. My sole motivation was to save a human life, with no expectation of any financial or other gain. My only motivation was that of good will to save another human life, to give another person a chance to live his natural life.

33. The government will not be able to present this court with any evidence of any wrong doing. I did a kind and selfless deed and in return I received a prison sentence.

34. As a U.S. Citizen, I, Boris Kotlyarsky, beg of you, to do the right thing. I saved a life of human, please, save my soul.  Injustice was committed by the government against me, one of its own U.S Citizens.

35. I respectfully request that your Honor., to please give me a chance to re-plead my case and to establish that I, a U.S. Citizen, Boris Kotlyarsky am innocent and I further ask that this Court give me an opportunity to clear my name. I am now 74 years old; your Court is my last chance to do so.

36. Accordingly, by reason of the foregoing my Objection to the Recommendation and Report should be granted.

000124

**WHEREFORE,** it is respectfully requested that the relief requested by Plaintiff, Boris Kotlyarsky be granted in all respects.

BORIS KOTLYARSKY

Sworn to and subscribed before

me this _24_ of August, 2021.

NOTARY PUBLIC

TATIANA ODES
Notary Public, State of New York
No. 01OD6041834
Qualified in Kings County
Certificate filed in New York County
Commission Expires May 15, 20_22_

1

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

BORIS KOTLYARSKY,

                              Plaintiff,

                    -v-

UNITED STATES DEPARTMENT OF JUSTICE,
PREET BHARARA, *in his official capacity*, JAMES
COMEY, *in his official capacity*,

                              Defendants.

---

20 Civ. 9230 (PGG)

 

## DEFENDANTS' RESPONSE TO PLAINTIFF'S OBJECTIONS TO THE REPORT AND RECOMMENDATION

AUDREY STRAUSS
United States Attorney for the
Southern District of New York
86 Chambers Street, 3rd Floor
New York, New York 10007
Tel.: (212) 637-2633
E-mail: tara.schwartz@usdoj.gov

TARA SCHWARTZ
Assistant United States Attorney
– Of Counsel –

Case 1:20-cv-09230-PGG-SDA   Document 26   Filed 09/07/21   Page 2 of 7

## TABLE OF CONTENTS

BACKGROUND ............................................................................................................. 1

STANDARD OF REVIEW .............................................................................................. 2

ARGUMENT................................................................................................................... 3

CONCLUSION................................................................................................................ 5

Defendants the United States Department of Justice, and Preet Bharara and James Comey, sued in their official capacities, (collectively, "Defendants") by their attorney Audrey Strauss, United States Attorney for the Southern District of New York, respectfully submit this response to Plaintiff Boris Kotlyarsky's objections to Magistrate Judge Aaron's Report and Recommendation.

## BACKGROUND

On November 3, 2020, Plaintiff Boris Kotlyarsky ("Plaintiff") filed a complaint pursuant to 42 U.S.C. § 1983, alleging violations of his Constitutional rights, as well as tort claims, arising out of his prosecution and conviction for extortion. (Dkt. #1 ("Complaint")). Defendants moved to dismiss the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) on the grounds that: Plaintiff's claims are barred by collateral estoppel, the doctrine established in *Heck v. Humphrey,* 512 U.S. 477 (1994), and sovereign immunity; Defendants cannot be sued pursuant to 42 U.S.C. § 1983; and Plaintiff failed to state a claim for malicious prosecution, false arrest, or intentional infliction of emotional distress. (*See* Dkt. #19-20). Plaintiff filed an affidavit in opposition to Defendants' motion (Dkt. #21 ("Opposition")), and Defendants filed a reply brief (Dkt. #22).

On August 10, 2021, the Court referred the case to the Honorable Stewart D. Aaron, United States Magistrate Judge for a report and recommendation on Defendants' motion to dismiss. (Dkt. #23). On August 18, 2021, Magistrate Judge Aaron issued a report and recommendation recommending that the Court grant Defendants' motion in full. (Dkt. #24 ("R&R")). In the R&R, Magistrate Judge Aaron recommended that the Court dismiss the Complaint on the grounds that: (i) Plaintiff fails to state a § 1983 claim since conduct of the federal government is exempt from the proscriptions of § 1983 and sovereign immunity protects

1

Defendants from suit under § 1983; (ii) the Court lacks subject matter jurisdiction over Plaintiff's

state law tort claims since Plaintiff failed to exhaust his administrative remedies as required by

the Federal Tort Claims Act ("FTCA"), 28 U.S.C. §§ 1346, 2674 *et seq.*; (iii) Plaintiff's claims

are barred by collateral estoppel to the extent they raise the same claims as asserted in his habeas

petition, brought pursuant to 28 U.S.C. § 2255; (iv) Plaintiff's claims arising from his criminal

conviction as barred by *Heck*; and (v) Plaintiff malicious prosecution, false arrest, and emotional

distress claims are meritless.  (*See id.*).  Indeed, Magistrate Judge Aaron specifically

recommended that Plaintiff not be granted leave to replead, as any attempt to amend would be

futile.  (*Id.* at 11).

On September 1, 2021, Plaintiff filed an affidavit in support of his objections to the R&R.

(Dkt. #25 ("Objection")).  In the Objection, Plaintiff merely repeats the same allegations from

the Complaint and the Opposition (and his § 2255 petition), and requests leave to replead.  For

the reasons stated herein and in Defendants' motion to dismiss (*see* Dkt. #20, 22), the Court

should adopt the well-reasoned R&R in full and deny Plaintiff's request for leave to replead.

## STANDARD OF REVIEW

In reviewing a report and recommendation, a district court "may accept, reject, or modify, in

whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C.

§ 636(b)(1).  Pursuant to Federal Rule of Civil Procedure 72(b)(2), a party has 14 days to make

"specific written objections" to a report and recommendation and the opposing party has 14 days to

file a response.  Objected-to portions of a report and recommendation are reviewed *de novo*.  Fed. R.

Civ. P. 72(b)(3).  In contrast, "a district judge will not consider new arguments raised in objections to

a magistrate judge's report and recommendation that could have been raised before the magistrate

but were not." *United States v. Gladden*, 394 F. Supp. 3d 465, 480 (S.D.N.Y. 2019) (quoting

2

*Hubbard v. Kelley*, 752 F. Supp. 2d 311, 313 (W.D.N.Y. 2009)). And "courts will not consider objections that assert new factual allegations, unless the party justifies its failure to present those allegations to the magistrate judge." *Morrison v. New York City Dep't of Corrections*, No. 11 Civ. 9109 (DAB), 2013 WL 5308015, at *2 (S.D.N.Y. Sept. 20, 2013).

Further, although Rule 15(a) states that leave to amend a complaint "shall be given freely when justice so requires," it is within the discretion of a district court to deny leave to amend where the proposed amendment would be futile. Fed. R. Civ. P. 15(a); *see also Foman v. Davis*, 371 U.S. 178, 182 (1962); *John Hancock Mutual Life Ins. Co. v. Amerford Int'l Corp.*, 22 F.3d 458, 462 (2d Cir. 1994); *Jones v. Capital Cities/ABC Inc.*, 874 F. Supp. 626, 630 (S.D.N.Y. 1995) (denying plaintiff leave to amend complaint as futile); *Shoemaker v. State of Cal.*, No. 95 Civ. 2945 (LAP), 1995 WL 617368, at *1-2 (S.D.N.Y. Sept. 12, 1995) (denying request for leave to replead in objections to R&R where amendment would be futile), *aff'd*, 101 F.3d 108 (2d Cir. 1996). Futility of an amendment occurs when the complaint, as amended, does not state a claim upon which relief can be granted. *See Duling v. Gristede's Operating Corp.*, 265 F.R.D. 91, 103-04 (S.D.N.Y. 2010) (citing cases).

## ARGUMENT

Plaintiff's Objection merely repeats the same allegations from his Complaint and Opposition — namely, that the Government did not meet its burden of proof in his case; that he obtained no personal or financial gain from saving Oleg Mitnik's life; and that Mitnik is prepared to testify about Plaintiff's "noble deed" in saving his life. (*See generally*, Objection). These allegations, which Magistrate Judge Aaron already considered in the R&R (*see generally*, R&R), do nothing to save any of Plaintiff's claims.

3

The well-reasoned R&R explained the various legal deficiencies in Plaintiff's Complaint. *First*, Plaintiff's § 1983 claims are not viable because the conduct of the federal government and federal officers, acting in their official capacities, is exempt from the proscriptions of § 1983 and sovereign immunity makes Defendants immune from suit under § 1983. (*See* R&R at 7 & n.2). *Second*, to the extent the Complaint is construed as raising tort claims for malicious prosecution, intentional infliction of emotional distress, negligent infliction of emotional distress, and false arrest, pursuant to the FTCA, the Court lacks subject matter jurisdiction over such claims because Plaintiff failed to exhaust his administrative remedies. (*See id.* at 8). *Third*, Plaintiff's claims, which were already raised in his § 2255 petition, and denied by Judge Kaplan, are barred by collateral estoppel. (*See id.* at 8-9). *Fourth*, Plaintiff's claims, which imply the invalidity of his criminal conviction and sentence, are barred by the doctrine established in *Heck*. (*See id.* at 9). *Fifth*, Plaintiff's state law claims for malicious prosecution, false arrest, and emotional distress are entirely meritless. (*See id.* at 10-11).

Notably, the Objection does not contend with (let alone cure) any of the legal deficiencies identified in the R&R. His proposed amendment would merely repeat allegations from his Complaint and Opposition that Magistrate Judge Aaron already considered in issuing the R&R and which do not render viable any of Plaintiff's claims. *See MacKinnon v. City of New York/Human Resources Admin.*, 580 F. App'x 44, 45-46 (2d Cir. 2014) (affirming district court's denial of leave to replead where plaintiff sought "to re-litigate claims already adjudicated"). Accordingly, the Court should adopt the R&R in full and deny Plaintiff's request for leave to replead the grounds that it would be futile.

4

**CONCLUSION**

For the foregoing reasons, Defendants respectfully request that the Court adopt the R&R

dismissing Plaintiff's Complaint and deny Plaintiff leave to replead.

Dated:    September 7, 2021
          New York, New York

                              Respectfully submitted,

                              AUDREY STRAUSS
                              United States Attorney for the
                              Southern District of New York

          By:    */s/ Tara Schwartz*_____
                 TARA SCHWARTZ
                 Assistant United States Attorney
                 86 Chambers Street, 3rd Floor
                 New York, New York 10007
                 Tel.: (212) 637-2633
                 E-mail: tara.schwartz@usdoj.gov

                 *Attorney for the Defendants*

5

000132

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| BORIS KOTLYARSKY, | |
| Plaintiff, | |
| - against - | **ORDER** |
| UNITED STATES DEPARTMENT OF JUSTICE; PREET BHARARA, in his official capacity; and JAMES COMEY, in his official capacity, | 20 Civ. 9230 (PGG) (SDA) |
| Defendants. | |

PAUL G. GARDEPHE, U.S.D.J.:

        Plaintiff Boris Kotlyarksy brings this action against the United States Department

of Justice; Preet Bharara, the former United States Attorney for the Southern District of New

York, in his official capacity; and James Comey, the former Director of the Federal Bureau of

Investigation, in his official capacity ("Defendants"). Kotlyarsky alleges that Defendants

violated his constitutional rights in connection with his 2017 conviction for conspiracy to

commit Hobbs Act extortion and aiding and abetting Hobbs Act extortion. (Cmplt. (Dkt. No. 1))

        Pending before this Court is Defendants' motion to dismiss. (Dkt. No. 19) This

Court referred Defendants' motion to Magistrate Judge Stewart D. Aaron for a report and

recommendation ("R&R"). (Dkt. No. 23) Judge Aaron has issued an R&R, in which he

recommends that the Complaint be dismissed with prejudice. (R&R (Dkt. No. 24)) Plaintiff has

filed objections to the R&R. (Pltf. Obj. (Dkt. No. 25))

        For the reasons stated below, Judge Aaron's R&R will be adopted in its entirety,

and the Complaint will be dismissed with prejudice.

## BACKGROUND

### I.   PRIOR CRIMINAL PROCEEDINGS

This action arises out of criminal proceedings against Kotlyarsky in this District.

(See United States v. Boris Kotlyarsky, No. 16 Cr. 215 (LAK))  On October 27, 2016,

Kotlyarsky pled guilty to conspiracy to commit Hobbs Act extortion, in violation of 18 U.S.C. §

1951, and to aiding and abetting Hobbs Act extortion, in violation of 18 U.S.C. §§ 1951 and 2.

On May 31, 2017, Judge Kaplan sentenced Kotlyarsky to 41 months' imprisonment.

Kotlyarsky v. United States, No. 18 Civ. 1746 (LAK), 2019 WL 1957537, at *1-2 (S.D.N.Y.

May 2, 2019).  Kotlyarsky did not appeal his conviction or sentence.  (Id. at *3)

On February 23, 2018, pursuant to 28 U.S.C. § 2255, Kotlyarsky moved to vacate

or reduce his sentence on a variety of grounds, including that his conduct had not affected

interstate commerce; he had received ineffective assistance of counsel; the Government had

violated its Brady obligations; and his plea agreement should be invalidated.  Kotlyarsky v.

United States, No. 18 Civ. 1746, Dkt. No. 1; Kotlyarsky v. United States, 2019 WL 1957537, at

* 3.  In a May 2, 2019 memorandum opinion denying Kotlyarsky's motion, Judge Kaplan

described his offense conduct as follows:

> In January, 2016, the government filed a criminal complaint alleging that Kotlyarsky
> brokered a deal between Boris Nayfeld and Oleg Mitnik, wherein Mitnik agreed to pay
> Nayfeld approximately $125,000 in exchange for Nayfeld's promise to halt a pending
> contract for Mitnik's murder.  The murder contract was ordered by a Russian
> businessman named Anatoly Potik, who was Mitnik's father-in-law.  Kotlyarsky knew
> Nayfeld through Potik.  Kotlyarsky learned that Potik planned to hire Nayfeld to kill
> someone and discerned that the intended victim was Mitnik.  Kotlyarsky informed Mitnik
> of the pending murder contract and arranged meetings between Nayfeld and Mitnik.
> Kotlyarsky believed that Nayfeld would demand money from Mitnik to halt the murder
> contract, and that due to Nayfeld's criminal reputation, Mitnik would likely pay the
> money that Nayfeld demanded.
>
> Unbeknownst to Kotlyarsky or to Nayfeld, Mitnik contacted law enforcement after
> Kotlyarsky informed him of the existence of the murder contract.  Subsequent meetings

2

000134

and communications that Mitnik had with Kotlyarsky and Nayfeld relating to the murder contract were recorded. Mitnik agreed to pay Nayfeld the first $50,000 payment toward the agreed-upon sum of $125,000 at an in-person meeting. At that meeting, Mitnik wrote a check for $50,000 and gave it to Nayfeld. Upon leaving the restaurant where the meeting took place, the FBI arrested Nayfeld. Shortly thereafter, Kotlyarsky was arrested also.

(Id. at *1 (citations omitted))

## II.   THE INSTANT CASE

The Complaint was filed on November 3, 2020, and asserts claims pursuant to 42 U.S.C. § 1983 for Defendants' alleged violations of Kotlyarsky's constitutional rights, including suppression of exculpatory evidence and unlawful detention, in connection with Kotlyarsky's 2017 extortion convictions. (Cmplt. (Dkt. No. 1)) ¶¶ 81-95) The Complaint also asserts state law claims for malicious prosecution and intentional or negligent infliction of emotional distress.[1] (Id. ¶¶ 96-104) Kotlyarsky seeks $250 million in damages. (Id. at 23)

On August 6, 2021, Defendants moved to dismiss, pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), arguing, inter alia, that Kotlyarsky's claims are barred by (1) collateral estoppel; (2) Heck v. Humphrey, 512 U.S. 477 (1994); and (3) sovereign immunity. (See Dkt. Nos. 19-20) On August 9, 2021, Kotlyarsky filed an affidavit in opposition. (Pltf. Opp. (Dkt. No. 21)) The Government filed a reply memorandum later that day. (Def. Reply Br. (Dkt. No. 22))

On August 10, 2021, this Court referred Defendants' motion to Judge Aaron for an R&R. (Order of Reference (Dkt. No. 23)) On August 18, 2021, Judge Aaron issued an R&R in which he recommends that the Complaint be dismissed with prejudice. (R&R (Dkt. No. 24))

---

[1] The heading for Kotlyarsky's emotional distress claim states "Intentional Infliction of Emotional Distress" (Cmplt. (Dkt. No. 1) at 22), but elsewhere the Complaint alleges "negligent" infliction of emotional distress (see id. ¶¶ 5, 103).

3

000135

On September 1, 2021, Kotlyarsky filed objections in the form of an affidavit. (Pltf. Obj. (Dkt. No. 25)) Defendants filed a response on September 7, 2021. (Def. Resp. (Dkt. No. 26))

## DISCUSSION

I.   **LEGAL STANDARDS**

    A.   **Review of a Report and Recommendation**

A district court reviewing a magistrate judge's report and recommendation "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1)(C). "'The district judge evaluating a magistrate judge's recommendation may adopt those portions of the recommendation, without further review, where no specific objection is made, as long as they are not clearly erroneous.'" Gilmore v. Comm'r of Soc. Sec., No. 09 Civ. 6241 (RMB) (FM), 2011 WL 611826, at *1 (S.D.N.Y. Feb. 18, 2011) (quoting Chimarev v. TD Waterhouse Investor Servs., Inc., 280 F. Supp. 2d 208, 212 (S.D.N.Y. 2003)). A decision is "clearly erroneous" when, "upon review of the entire record, [the court is] left with the definite and firm conviction that a mistake has been committed." United States v. Snow, 462 F.3d 55, 72 (2d Cir. 2006) (quotation marks and citation omitted).

Where, as here, a timely objection has been made to a magistrate judge's recommendation, the district judge "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1)(C). However, "[o]bjections that are 'merely perfunctory responses argued in an attempt to engage the district court in a rehashing of the same arguments set forth in the original [papers] will not suffice to invoke de novo review.'" Phillips v. Reed Grp., Ltd., 955 F. Supp. 2d 201, 211 (S.D.N.Y. 2013) (second alteration in Phillips) (quoting Vega v. Artuz, No. 97

000136

Civ. 3775 (LTS)(JCF), 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002)). "To the extent . . . that the party . . . simply reiterates the original arguments, [courts] will review the Report strictly for clear error." IndyMac Bank, F.S.B. v. Nat'l Settlement Agency, Inc., No. 07 Civ. 6865 (LTS)(GWG), 2008 WL 4810043, at *1 (S.D.N.Y. Nov. 3, 2008) (citing Pearson-Fraser v. Bell Atl., No. 01 Civ. 2343 (WK), 2003 WL 43367, at *1 (S.D.N.Y. Jan. 6, 2003) and Camardo v. Gen. Motors Hourly-Rate Emp. Pension Plan, 806 F. Supp. 380, 382 (W.D.N.Y. 1992)); see also Ortiz v. Barkley, 558 F. Supp. 2d 444, 451 (S.D.N.Y. 2008) ("Reviewing courts should review a report and recommendation for clear error where objections are merely perfunctory responses, . . . rehashing . . . the same arguments set forth in the original petition." (quotation marks and citations omitted)).

"Courts generally do not consider new evidence raised in objections to a magistrate judge's report and recommendation." Tavares v. City of New York, No. 08 Civ. 3782 (PAE), 2011 WL 5877548, at *2 (S.D.N.Y. Nov. 23, 2011) (citation omitted). "The submission of new evidence following [a magistrate judge's R&R] is merited only in rare cases, where the party objecting . . . has offered a most compelling reason for the late production of such evidence, or a compelling justification for [the] failure to present such evidence to the magistrate judge." Fischer v. Forrest, 286 F. Supp. 3d 590, 603 (S.D.N.Y. 2018), aff'd, 968 F.3d 216 (2d Cir. 2020) (quotation marks and citations omitted).

**B.    Rule 12(b)(1) Motion to Dismiss**

"[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit ([i.e.,] subject-matter jurisdiction)." Sinochem Int'l Co., Ltd. v. Malaysia Int'l Shipping Corp., 549 U.S. 422, 430-31 (2007) (citation omitted). "A case is properly dismissed for lack of subject matter jurisdiction

5

under [Federal] Rule [of Civil Procedure] 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicate it." Makarova v. United States, 201 F.3d 110, 113 (2d Cir. 2000).  When subject matter jurisdiction is challenged, a plaintiff "bear[s] the burden of 'showing by a preponderance of the evidence that subject matter jurisdiction exists.'" APWU v. Potter, 343 F.3d 619, 623 (2d Cir. 2003) (quoting Lunney v. United States, 319 F.3d 550, 554 (2d Cir. 2003)).

In addressing a motion to dismiss under Rule 12(b)(1), the court "must accept as true all material factual allegations in the complaint, but [is] not to draw inferences from the complaint favorable to plaintiff[]." J.S. ex rel. N.S. v. Attica Cent. Sch., 386 F.3d 107, 110 (2d Cir. 2004).  The court "may consider affidavits and other materials beyond the pleadings to resolve the jurisdictional issue, but . . . may not rely on conclusory or hearsay statements contained in the affidavits." Id. (citations omitted).  In resolving a Rule 12(b)(1) motion, a court may also "consider matters of which judicial notice may be taken." Greenblatt v. Gluck, No. 3 Civ. 597 (RWS), 2003 WL 1344953, at *1 n.1 (S.D.N.Y. Mar. 19, 2003) (quotation marks and citations omitted).

### C.   Rule 12(b)(6) Motion to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Under this standard, a plaintiff is required only to set forth a "short and plain statement of the claim," Fed. R. Civ. P. 8(a), with sufficient factual "heft to 'sho[w] that the pleader is entitled to relief.'" Twombly, 550 U.S. at 557 (quoting Fed. R. Civ. P. 8(a)). Where "the allegations in a complaint, however true, could not raise a claim of entitlement to relief," id. at 558, or where a

6

plaintiff has "not nudged [his] claims across the line from conceivable to plausible, the[]

complaint must be dismissed." Id. at 570. "Threadbare recitals of the elements of a cause of

action, supported by mere conclusory statements, do not suffice [to establish entitlement to

relief]." Iqbal, 556 U.S. at 678 (citing Twombly, 550 U.S. at 555).

       In resolving a motion to dismiss, a court may "consider . . . the complaint and

any documents attached thereto or incorporated by reference and documents upon which

the complaint relies heavily." Bldg. Indus. Elec. Contractors Ass'n v. City of New York, 678

F.3d 184, 187 (2d Cir. 2012) (quotation marks and citation omitted).

## II.    REVIEW OF JUDGE AARON'S REPORT AND RECOMMENDATION

       In his R&R, Judge Aaron concludes that Kotlyarsky's claims should be dismissed

for multiple reasons, including that (1) his Section 1983 claims are not viable against a federal

agency and federal officials in their official capacity; (2) the Court lacks subject matter

jurisdiction over Kotlyarsky's state law claims, which are governed by the Federal Tort Claims

Act; (3) Kotlyarsky is collaterally estopped from pursuing his claims as a result of his

convictions and the adverse decision concerning his Section 2255 motion; and (4) Kotlyarsky's

claims are barred by Heck v. Humphrey, 512 U.S. 477, 487 (1994), in which the Supreme Court

held that Section 1983 claims are barred unless "the conviction or sentence has been reversed on

direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to

make such a determination, or called into question by a federal court's issuance of a writ of

habeas corpus." (See R&R (Dkt. No. 24) at 6-12)

       With respect to Kotlyarsky's Section 1983 claims, Judge Aaron notes that

"'[a]ctions of the federal government or its officers are exempt from the proscriptions of

§ 1983,'" since Section 1983 "'only provides redress for federal statutory and constitutional

000139

violations perpetrated under color of state law.'" (Id. at 6 (quoting Nghiem v. U.S. Dep't of Veterans Affs., 451 F. Supp. 2d 599, 605 (S.D.N.Y. 2006) (emphasis in original))) Judge Aaron also notes that federal agencies and federal officers sued in their official capacities under Section 1983 are protected from suit by sovereign immunity. (Id. at 7 n.2 (citing Harrison v. New York, 95 F. Supp. 3d 293, 316 (E.D.N.Y. 2015); Adeleke v. United States, 355 F.3d 144, 150 (2d Cir. 2004); and Davis v. United States, No. 03-CV-01800 (NRB), 2004 WL 324880, at *10 (S.D.N.Y. Feb. 19, 2004))) Accordingly, Judge Aaron concludes that Kotlyarsky's Section 1983 claims against Defendants – an agency of the federal government and two federal officers in their official capacities – must be dismissed. (Id. at 7)

As to Kotlyarsky's state law claims for malicious prosecution and intentional or negligent infliction of emotional distress, Judge Aaron concludes that the Court lacks subject matter jurisdiction over these claims, "because they fall within the purview of the [Federal Tort Claims Act ("FTCA")], [and Kotlyarsky] fails to allege that he has exhausted his administrative remedies . . . , as the FTCA requires." (Id. at 8 (citing 28 U.S.C. § 2675(a))) Judge Aaron also notes that the Court would lack jurisdiction over the Defendants in this case, in connection with otherwise procedurally proper FTCA claims, because such claims can only be brought against the United States itself. (Id. at 8 n.3 (citing Myers & Myers, Inc. v. U. S. Postal Serv., 527 F.2d 1252, 1256 (2d Cir. 1975) and Hui Yu v. U.S. Dep't of Homeland Sec., 568 F. Supp. 2d 231, 235 (D. Conn. 2008)))

Judge Aaron also identifies "additional, independent reasons" for the dismissal of Kotlyarsky's claims. (Id. at 8) First, Kotlyarsky is collaterally estopped from pursuing his claims, "[i]nsofar as [his] Complaint raises the same claims as were asserted in his Section 2255 motion, which was denied in its entirety." (Id.; see also id. ("The Second Circuit has 'long held

that a criminal conviction, whether by jury verdict or guilty plea, constitutes estoppel in favor of the United States in a subsequent civil proceeding as to those matters determined by the judgment in the criminal case.'" (quotation marks omitted) (quoting United States v. U.S. Currency in Amount of $119,984.00, More or Less, 304 F.3d 165, 172 (2d Cir. 2002))))

Judge Aaron also finds that Kotlyarsky's Section 1983 claims fail under the doctrine established in Heck v. Humphrey, 512 U.S. 477 (1994), which bars Section 1983 claims arising out of a plaintiff's criminal conviction, "unless 'the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus.'" (R&R (Dkt. No. 24) at 9 (quoting Heck, 512 U.S. at 487))

Finally, Judge Aaron finds that Kotlyarsky's state law claims would fail on the merits. With respect to Kotlyarsky's malicious prosecution claim, Judge Aaron notes that Kotlyarsky must allege four elements: "(1) initiation of a proceeding against the plaintiff; (2) termination of that proceeding in his favor; (3) lack of probable cause; and (4) malice." (Id. at 9-10 (citing Manganiello v. City of New York, 612 F.3d 149, 161 (2d Cir. 2010))) Because Kotlyarsky pled guilty in the underlying criminal proceeding, he cannot show that there was a termination of that proceeding in his favor. (Id. at 10) As to Kotlyarsky's emotional distress claim, Judge Aaron finds that Kotlyarsky has not pled facts establishing "extreme or outrageous conduct" – a necessary element – by Bharara or Comey. (Id. at 10 & n.7 (citing A.M. ex rel. J.M. v. NYC Dep't of Educ., 840 F. Supp. 2d 660, 690 (E.D.N.Y. 2012) and Calicchio v. Sachem Cent. Sch. Dist., 185 F. Supp. 3d 303, 314 (E.D.N.Y. 2016))) Judge Aaron also finds that an intentional infliction of emotional distress claim cannot be brought against a government

000141

Case 22-2750, Document 34, 03/17/2023, 3485880, Page134 of 160



Case 1:20-cv-09230-PGG-SDA   Document 27   Filed 09/28/22   Page 10 of 12


entity such as the Department of Justice. (Id. at 10-11 (citing Noel Pane v. Town of Greenburgh, No. 07 Civ. 3216 (LMS), 2012 WL 12886971, at *6 (S.D.N.Y. Mar. 21, 2012)))

In his objections, Kotlyarsky does not challenge any of the R&R's legal conclusions regarding the viability of his claims. Instead, he asks for leave to amend, arguing that he "was imprisoned without any evidence and [is] able to demonstrate through documentary evidence that the Government did not meet the requisite burden of proof and my [criminal] case should have been dismissed." (Pltf. Obj. (Dkt. No. 25) ¶¶ 3-4; see also id. ¶ 32 ("If this court will allow me to re-plead my case[,] I will demonstrate that improper actions were taken by the government, and that I did a noble deed to save the life of Oleg Mitnik."))

Because Kotlyarsky does not challenge Judge Aaron's legal conclusions, or otherwise take issue with Judge Aaron's legal analysis, the R&R will be reviewed for clear error.

Having reviewed the R&R, this Court finds no error in Judge Aaron's conclusion that Kotlyarsky's claims must be dismissed. As Judge Aaron finds, Section 1983 claims may not be brought against a federal agency or federal officials acting in their official capacity. Moreover, Kotlyarsky's state law claims are subject to the FTCA, and there is no evidence that he has exhausted his administrative remedies. Kotlyarsky's claims are also barred by collateral estoppel, as a result of his convictions and the adverse ruling on his Section 2255 motion. For all these reasons, the Complaint will be dismissed.

## III.  LEAVE TO AMEND

District courts "ha[ve] broad discretion in determining whether to grant leave to amend," Gurary v. Winehouse, 235 F.3d 792, 801 (2d Cir. 2000), and "leave to amend should be freely granted when 'justice so requires.'" Pangburn v. Culbertson, 200 F.3d 65, 70 (2d Cir. 1999) (quoting Fed. R. Civ. P. 15(a)). Leave to amend may properly be denied in cases of

"'undue delay, bad faith[,] or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of the allowance of the amendment, futility of amendment, etc.'" Ruotolo v. City of New York, 514 F.3d 184, 191 (2d Cir. 2008) (quoting Foman v. Davis, 371 U.S. 178, 182 (1962)). "Where the possibility exists that [a] defect can be cured," leave to amend "should normally be granted" at least once. Wright v. Ernst & Young LLP, No. 97 Civ. 2189 (SAS), 1997 WL 563782, at *3 (S.D.N.Y. Sept. 10, 1997), aff'd, 152 F.3d 169 (2d Cir. 1998) (citing Oliver Schs., Inc. v. Foley, 930 F.2d 248, 253 (2d Cir. 1991)). However, "'[w]here it appears that granting leave to amend is unlikely to be productive, . . . it is not an abuse of discretion to deny leave to amend.'" Lucente v. Int'l Bus. Machs. Corp., 310 F.3d 243, 258 (2d Cir. 2002) (quoting Ruffolo v. Oppenheimer & Co., 987 F.2d 129, 131 (2d Cir. 1993)).

As noted, Kotlyarsky has requested leave to amend in order to present new evidence to the Court. (See Pltf. Obj. (Dkt. No. 25) ¶¶ 3-5, 32, 35) He does not explain, however, how an amendment would overcome the legal obstacles to his claims that are discussed above and in the R&R. In his R&R, Judge Aaron recommends that Kotlyarsky's claims be dismissed without leave to amend, because "any attempt to amend would be futile." (R&R (Dkt. No. 24) at 11) This Court agrees that any amendment would be futile. Accordingly, leave to amend will be denied.

11

## CONCLUSION

For the reasons stated above, Judge Aaron's R&R is adopted in its entirety, and the Complaint is dismissed with prejudice.  The Clerk of Court is directed to terminate the motion (Dkt. No. 19), and to close this case.

Dated: New York, New York
      September 28, 2022

SO ORDERED.

Paul G. Gardephe
United States District Judge

12

000144

Case 1:20-cv-09230-PGG-SDA   Document 28   Filed 09/30/22   Page 1 of 1

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
-------------------------------------------------------------X
BORIS KOTLYARSKY,

                          Plaintiff,                20 **CIVIL** 9230 (PGG)(SDA)

         -against-                        **JUDGMENT**

UNITED STATES DEPARTMENT OF
JUSTICE; PREET BHARARA, in his
official capacity; and JAMES COMEY, in
his official capacity,
                         Defendants.
-------------------------------------------------------------X

      It is hereby **ORDERED, ADJUDGED AND DECREED:** That for the reasons

stated in the Court's Order dated September 28, 2022, the Court adopts the Report &

Recommendation in its entirety and the Complaint is dismissed with prejudice; accordingly, the

case is closed.

**Dated:** New York, New York
       September 30, 2022

                                 **RUBY J. KRAJICK**
                               _____
                                  **Clerk of Court**
      **BY:**                    _____
                                    **Deputy Clerk**

RECEIVED
OCT 18 2022
S.D.N.Y - APPEALS

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

BORIS KOTLYARSKY
_____
(List the full name(s) of the plaintiff(s)/petitioner(s).)

-against-

UNITED STATES DEPARTMENT
OF JUSTICE
_____
(List the full name(s) of the defendant(s)/respondent(s).)

20 CV 9230 (PGG)(SDA)

NOTICE OF APPEAL

Notice is hereby given that the following parties: BORIS KOTLYARSKY
_____
(list the names of all parties who are filing an appeal)

in the above-named case appeal to the United States Court of Appeals for the Second Circuit

from the ☑ judgment  ☐ order   entered on: September 30-2022
                                              (date that judgment or order was entered on docket)
that: CASE DISMISSED WITH PREJUDICE
_____
(If the appeal is from an order, provide a brief description above of the decision in the order.)

10-18-2022
_____
Dated

KOTLYARSKY BORIS
_____
Name (Last, First, MI)

1900 E 22 STREET Brooklyn, N.Y. 11229
Address              City        State      Zip Code

(718)3829393
_____
Telephone Number

(917)969-9984

_____
Signature

KOTLYARSKYB@GMAIL.COM
_____
E-mail Address (if available)

*Each party filing the appeal must date and sign the Notice of Appeal and provide his or her mailing address and telephone number, EXCEPT that a signer of a pro se notice of appeal may sign for his or her spouse and minor children if they are parties to the case.  Fed. R. App. P. 3(c)(2).  Attach additional sheets of paper as necessary.
Rev. 12/23/13

Generated: Oct 18, 2022 11:49AM

# U.S. District Court

## New York Southern - Manhattan

Receipt Date: Oct 18, 2022 11:49AM

Boris Kotlyarsky

| Rcpt. No: 7363 | | Trans. Date: Oct 18, 2022 11:49AM | | | Cashier ID: #PS |
|---|---|---|---|---|---|
| **CD** | **Purpose** | **Case/Party/Defendant** | **Qty** | **Price** | **Amt** |
| 203 | Notice of Appeal/Docketing Fee | | 1 | 505.00 | 505.00 |

| CD | Tender | Amt |
|---|---|---|
| CC | Credit Card | $505.00 |
| | Total Due: | $505.00 |
| | Total Tendered: | $505.00 |
| | Total Cash Received: | $0.00 |
| | Cash Change Amount: | $0.00 |

Comments: 20CV9230

Only when the bank clears the check, money order, or verifies credit of funds, is the fee or debt officially paid or discharged. A $53 fee will be charged for a returned check.

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF NEW YORK

UNITED STATES OF AMERICA,

     Plaintiff,

     v.                     Case No. 16-cr-215 (LAK)

BORIS KOTLYARSKY,

     Defendant.

### DECLARATION OF OLEG MITNIK

     I, Oleg Mitnik, declare under penalty of perjury pursuant to 28 USC § 1746 that the following statements are true and correct to the best of my knowledge and belief.

1.    I make this declaration in support of Mr. Kotlyarsky's motion for a sentence reduction.

2.    As the purported victim of the murder plot, I am familiar with many of the relevant fact of this case.

3.    I was recently contacted by Mr. Kotlyarsky's attorney for purposes of providing this Declaration.

4.    Before signing this Declaration, I reviewed records of this case, including transcripts of Mr. Kotlyarsky's plea allocution and sentencing, and excerpts of his Presentence Report (PSR).

5.    Based on those records and my knowledge of certain facts, I believe Mr. Kotlyarsky's sentence was based on a misapprehension of material facts.

6. As such, I provide this Declaration to clarify the following relevant facts from my first-hand knowledge.

7. After Mr. Kotlyarsky informed me of the murder plot, it was my idea, not his, for me to meet with the hit man, Boris Nayfeld. I asked Mr. Kotlyarsky, not the other way around, if he could arrange for a meeting between Mr. Nayfeld and me. I believe my initiating this request was recorded on a recording device provided to me by Special Agent Luke Hardison for the 12/3/2015 meeting between Mr. Kotlyarsky and me.

8. From the onset (around late October 2015), Mr. Kotlyarsky told me that I should go to the police to get them involved. In early November 2015, I filed a complaint with my neighborhood police department. In mid-November 2015, my complaint was forwarded to an organized crime task force. Shortly thereafter, I met with federal authorities.

9. At no point did Mr. Kotlyarsky ever ask me or lead me to believe that he expected in any way to be compensated financially for telling me about the murder plot, for arranging for the meeting with Mr. Nayfeld, or for his efforts in helping to save my life.

10. Although Mr. Kotlyarsky and I did have a conversation about business, it was a casual conversation, the type that any two business men may have, who have long been friends, are catching up after a time of absence, and who think well of and wish well for each other. The conversation was unequivocally disconnected from anything to do with the murder plot. Mr. Kotlyarsky was not a stranger to me. We have known each other for many years, and were from the same country, Russia.

11. In the sentencing of Mr. Kotlyarsky, the prosecutor stated that "not only was [Mr. Kotlyarsky's] intervention not the reason [I am] safe, but in intervening at all, Mr. Kotlyarsky made it worse and, in fact, risked

greater harm. See Sentencing Transcript, p. 13. As the victim, I can
state unequivocally that this statement could not be further from the
truth. I fully believe that but for Mr. Kotlyarsky's intervention, I would
not be alive today. Contrary to the prosecutor's contention, Mr.
Kotlyarsky did not take "advantage of [my] specific fear of death", Id.,
but rather, he helped prevent my death.

12. The Court, after hearing the prosecutor's statements, concluded that "in
one way or another, there would be an economic benefit to [Mr.
Kotlyarsky] no matter how it turned out". Id, p. 17. Most respectfully,
as the intended victim, as the person conversing with Mr. Kotlyarsky at
that time, I do not see it that way. Mr. Kotlyarsky could have easily
asked me for compensation given what he did, but he did not.

13. From what I understand, the government presented no evidence from
Mr. Nayfeld demonstrating any agreement between Mr. Kotlyarsky and
Mr. Nayfeld in which Mr. Kotlyarsky would receive a portion of what I
paid Mr. Nayfeld. Indeed, my understanding is that the Government
stated there was no financial gain for Mr. Kotlyarsky from Mr.
Nayfeld.

14. To me that speaks volumes, given that Mr. Nayfeld entered a
cooperative agreement with the government, requiring him to fully
disclose the crime and answer all questions.

15. As such, there was no expectation of financial gain for Mr. Kotlyarsky
from me, and no evidence of any financial gain for Mr. Kotlyarsky
from Mr. Nayfeld. The Court's conclusion was thus completely
unfounded and in diametrically opposed to the truth of what happened.

16. While I understand that Mr. Kotlyarsky pled guilty in a plea bargain, as
I've stated before, I do not believe that Mr. Kotlyarsky should have
been charged with extortion in the first place. I stated so at the time of

his arrest, and my feelings on the matter have not changed. I told this to the Probation Officer who noted my statement in Mr. Kotlyarsky's PSR. See PSR, Victim Impact.

17. It is my concerted feeling that Mr. Kotlyarsky's conviction and imprisonment, given the truth of what I know happened, and given probable outcome had he not intervened, constitutes a gross miscarriage of justice.

18. And just as disturbing to me is the severely disproportionate sentence imposed upon Mr. Kotlyarsky for his plea, compared to that of the mobster hit man, Mr. Nayfeld, and the mastermind financier of the murder plot, Mr. Potik.

19. Mr. Kotlyarsky, who saved my life, received a sentence of 41 months. In comparison, despite entering into a contract to murder me and subsequently extorting money from me to stave off the murder, Mr. Nayfeld was sentence by Judge Forrest to a mere 23 months. And despite conceiving, financing and setting in motion a murder plot against me, Mr. Potik somehow manipulated the government to enter a a *nolle prosequi*!

20. As a result, Mr. Kotlyarsky, whose intervention foiled the murder plot and saved my life, received a sentence nearly twice that of the hit man who intended to murder me, and the person who originally plotted and paid my murder walks away scot-free.

21. Nothing could more closely constitute a gross miscarriage of justice to Mr. Kotlyarsky.

22. I repeat what I told the Probation Department. I do not believe that Mr. Kotlyarsky should ever have been charged with extortion in this case, and most certainly, at the age of 70, he should not have to serve 41 months of imprisonment, even if he did accept a plea bargain for

000152

reasons personal to him.

23. In the hopes that justice and sensibility may gain the upper hand in this case, I submit this Declaration in support of Mr. Kotlyarsky's motion.

24. I implore the Court to grant the relief requested by Mr. Kotlyarsky, and any other relief that may be just, fair and equitable.

By _____

Oleg Mitnik

State of NY
County of New York

Affirmed before me this 14th day of December 2017.

_____

Notary Public

MICHAEL SENZ
Notary Public - State of New York
No. 01SE6114452
Qualified in New York County
My Comm. Expires Aug. 30, 2020



**Akiva Shapiro Law**

| | |
|---|---|
| **From:** | Oleg Mitnik |
| **Sent:** | Sunday, December 3, 2017 7:19 PM |
| **To:** | Akiva Shapiro Law |
| **Subject:** | Re: Declaration and Cvr Ltr for Boris Kotlyarsky |

Thank you. I will go over the letter with lawyers on Tuesday-Wednesday.
Will get back to you shortly.
Again and Again I'm very sorry about Boris being there. I had no choice and you can see in the documents I always told FBI not to even arrest or charge Kotlyarskiy. Was not my call. What choice did I have??? You see how they played him and let my rather in law walked away. I'm still fitting. Would love to get my hands on all the recordings I did and 3,5 hours tape between Nayfeld and Kotlyarskiy. I had the interview with New York Times. They supposed to write big story about this case. How innocent people go to jail and murders walk away by giving up to the government information.
This is American justice system. 97% off cases cooperation.
I'm sorry.

Oleg Mitnik
President

TRT International
250 Port Street
Newark NJ 07114

Main. +973 344 7100
Fax +973 344 7757

*#8*

P24063

# UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK
### PRESENTENCE INVESTIGATION REPORT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | Docket No.: 0208 1:16CR00215- 001(LAK) |
| | ) | |
| vs. | ) | |
| | ) | |
| | ) | |
| Boris Kotlyarsky | ) | Sentence Date: 01/27/2017 |
| | ) | |

**Prepared for:**  Honorable Lewis A. Kaplan
Senior U.S. District Judge

**Prepared by:**  Zondra Jackson
U.S. Probation Office
212-805-5172
zondra.jackson@nysp.uscourts.gov

**Assistant U.S. Attorney**
Andrew M. Thomas
U.S. Attorney's Office
One Saint Andrew's Plaza
New York, NY 10007
212-637-2106
andrew.thomas2@usdoj.gov

**Defense Counsel**
Dennis J. Ring
Law Office of Dennis J. Ring
148-29 Cross Island Parkway
Whitestone, NY 11357
718-357-1040
dennisringlaw@gmail.com

**Offense:**  **Count 1:**
Conspiracy to Commit Extortion
18 U.S.C. §1951
Not more than 20 years' imprisonment/up to 3 years' supervised release/ a
maximum fine of $250,000 or twice the gross gain/loss/$100 special
assessment
(Class C Felony)

**Count 2:**
Extortion
18 U.S.C. §1951
Not more than 20 years' imprisonment/up to 3 years' supervised release/ a
maximum fine of $250,000 or twice the gross gain/loss/$100 special
assessment
(Class C Felony)

Date Report Prepared: January 19, 2017          Date Report Revised:

<u>Victim Impact</u>

24.  Kotlyarsky participated in a conspiracy to extort $125,000 from the victim by informing him that there was a contract to kill him.

25.  On January 9, 2017, we conducted a telephone interview with the victim. The victim advised that upon learning about the threat on his life on October 31, 2015, he filed a complaint with his neighborhood precinct the first week of November 2015; however, they allegedly did not take his complaint seriously until he returned to follow-up on his complaint. In mid-November 2015, his case was forwarded to an organized crime task force and he met with federal authorities.

26.  The victim told us that his father-in-law contracted Boris Nayfeld to kill him and both are "bad men and well connected." As such, in February 2016, he applied for a gun permit. The victim believes that his father-in-law wants him dead for financial gain. The victim stated that he is in the process of divorcing his daughter, and he is worth a substantial amount of money. The victim told us that he owns real estate property and he has an $8 million life insurance policy.

27.  The victim views Kotlyarsky as a middle man in this conspiracy. He explained that the defendant did not initiate the contract on his life, he told him about the contract; and he never asked for or expected to be compensated financially for telling him about the contract. The victim does not feel that Kotlyarsky should have been charged with extortion but he feels that Nayfeld should have been charged with attempted murder. The victim is upset because Kotlyarsky allegedly wants to sue him for accusing him of committing extortion, but he had "nothing to do with how the government files criminal charges." The victim continues to fear for his life because his father-in-law has not been imprisoned. The victim believes that if it were not for Kotlyarsky interceding in this scheme, he would be dead.

28.  When we interviewed the victim, the victim reported that he subsequently learned that while Kotlyarsky was on bail, Kotlyarsky contacted Nayfeld's family and had $500 placed in Nayfeld's commissary account, so that Nayfeld would change his mind about testifying against Kotlyarsky, and the victim could be sued for making false statements.[1]

000156

*#7*

UNCLASSIFIED

UNITED STATES DEPARTMENT OF JUSTICE
FEDERAL BUREAU OF INVESTIGATION



26 Federal Plaza, New York, NY 10278

File Number: ▮▮▮▮▮▮▮

Requesting Official(s) and Office(s):    SA Hardison, NYO C-24

Task Number(s) and Date Completed:    528644, 9/13/2016

Name and Office of Linguist(s):    LA Ilona Desyatnik

Name and Office of Reviewer(s):    Click here to enter text.

Source Language(s):    Russian

Target Language:    English

Source File Information
   Name of Audio File or CD:
   *If Applicable*—Call Number:
      —Date, Time, Duration: 01/14/2016 1:30 PM  1 hrs 27 min
      —Target Number:
      —Direction, Number:

VERBATIM TRANSLATION

Participants:
CHS        CHS            BN        Boris Nayfeld
UM         Unknown Male

Abbreviations:
UI         Unintelligible       PH        Phonetic
OV         Voice overlap        SC        Simultaneous conversation
[ ]        Translator's exegesis   *Italics*   English

UNCLASSIFIED

000157

UNCLASSIFIED
01/14/2016
Task # 528644

SA Hardison:  This is Special Agent Luke Hardison.  Today's date is Thursday, January the 14th, 2016.  The time is approximately 1:40 PM.  The following is a consensually recorded conversation between CHS and Boris Nayfeld, Boris Kotlyarskiy and persons yet unknown.  I am handing the recording device to the CHS now.

[CHS driving] [Sound of heavy breath] [sound of cell phone message tone]

17:20     [Sound of message]

22:02     [Sound of ringtone]

25:10 .   [CHS on the phone]

CHS:      *Uh huh. Uh huh, okay, but...okay, thank you.*

26:00

CHS:      I am going to be ten to fifteen minutes late, but I will be there.  So, I don't know, I'm just letting you know.  [Another voice on the phone, very low volume, UI]  Thank you.  I'm sorry.

31:40     [Five spraying sounds]

33:25

CHS:      *Hello, it's not good because the told me last time.  Okay, I can call him but it's not going to be a good effect.  I'm sure he is home.  I don't know that, I'm not hiding anything.  But I'm just telling you for sure, if I call him, it's going to set off ringing bells.  I should have called him and asked him for the first time.  I told him I'm going to be late.  Ninety nine percent he is not going to come. He told me before.  You heard it on tape.  I introduced you.  From now on I do not really care, he is not insulted.* I give you 99 percent he is home, 99.9.  Okay, bye.

37:50     [CHS exits from the car]

40:10

UM:       *Hi, how are you?*

CHS:      *I'm just meeting somebody for a beer.  No it's okay, not long.*  What is today a holiday?  Jesus Christ?

UM:       I think someone died.

CHS:      Oh, there is no parking.  I drove around the building.

1
UNCLASSIFIED

BO_0110

01 – 14 – 2016
Statement by Oleg Mitnik – Son in law – "Victim".

Statements in English.

Statement by "CHS" to SA Luke Hardison regarding Boris Kotlyarsky.
33:25
CHS: Hello it's not good because the told me last time.

Okay I can call him but its not going to be a good effect.

I am sure he is home.

I don't know that, I am not hiding anything.

But I am just telling you for sure, if I call him its going to set off

ringing bells.

I should have called him and asked him for the first time.

I told him I'm going to be late.

Ninety nine percent he is not going to come.

## He told me before. You heard it on tape.

## I introduced you.

## From now on I do not really care, he is not

## involved.

01 – 14 – 2016: Continued

000159

#6

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - x

UNITED STATES OF AMERICA          :      SEALED NOLLE PROSEQUI

               -v.-               :      17 Cr. 232  (AKH)

ANATOLY POTIK,                    :

          Defendant.              :

- - - - - - - - - - - - - - - - x

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:
DATE FILED: 12/11/17

1.    The filing of this nolle prosequi will dispose of this case with respect to ANATOLY POTIK, the defendant.

2.    On June 7, 2016, Information 17 Cr. 232 was filed, charging ANATOLY POTIK with conspiring to collect debt through extortionate means, in violation of Title 18, United States Code, Section 894. On or about April 24, 2017, Information S1 17 Cr. 232 was filed, charging ANATOLY POTIK with misprision of felony, in violation of Title 18, United States Code, Section 4.

3.    On or about April 24, 2017, the defendant attempted to plead guilty to Information S1 17 Cr. 232 pursuant to a plea agreement. Among other things, that agreement included a waiver of venue with respect to the charged offense.

4.    On or about September 26, 2017, after holding a supplemental plea allocution, the Court rejected the defendant's plea of guilty.

4. In light of the Court's September 26, 2017 decision, and based on its review of the facts and the law, the Government has concluded that it will no longer proceed with the prosecution of ANATOLY POTIK, the defendant.

5.   Among other things, the Government has learned that the defendant has recently ████████████████████ ████████████████████████████, that have altered the equities of continued prosecution.

2

4.   In light of the foregoing, I recommend that an order of <u>nolle prosequi</u> be filed as to ANATOLY POTIK, the defendant, with respect to Information 17 Cr. 232 and Information S1 17 Cr. 232.

_____
Andrew Thomas
Assistant United States Attorney
(212) 637-2106

Dated:   New York, New York
         December 11, 2017

3

1093

Upon the foregoing recommendation, I hereby direct, with leave of the Court, that an order of <u>nolle prosequi</u> be filed as to ANATOLY POTIK, the defendant, with respect to Information 17 Cr. 232 and Information S1 17 Cr. 232.

JOON H. KIM
Acting United States Attorney
Southern District of New York

Dated:   New York, New York
         December 11, 2017

SO ORDERED:

HON. ALVIN K. HELLERSTEIN
United States District Judge
Southern District of New York

Dated:   New York, New York
         December 11, 2017

4

1093

000163

#5

Case 1:16-mj-00486-UA   Document 19   Filed 06/08/16   Page 1 of 1

## COMPLAINT/REMOVAL DISMISSAL
### United States District Court
### Southern District of New York

Mag. Judge Dkt. No. _____ 16-MJ-486 _____   Date 6-7-16

USAO No. _____ 2015R01696 _____

The Government respectfully requests the Court to dismiss without prejudice the ✓ Complaint _____ Removal Proceedings in

United States v. _____ Anatoly Potik _____

The Complaint/Rule 40 Affidavit was filed on _____

✓ U.S. Marshals please withdraw warrant.

ASSISTANT UNITED STATES ATTORNEY

Andrew Thomas
(Print name)

SO ORDERED:

_____ Kevin Nathaniel Fox _____

UNITED STAES MAGISTRATE JUDGE

DATE 6/8/16

Distribution:   White → Court     Yellow → U.S. Marshals     Green → Pretrial Services     Pink → AUSA Copy

*#4*
*§ 17*

## Crime # III

**01/22/2016&17 Totally unexpected by The Government! Recording provided by The Hit Man of all meetings where the murder for hire plot was discussed! Fully dismissing theory regarding Conspiracy of Extort and Extortion. Federal crime committed by government conversion of the murder for hire plot with 100% evidence in support into conspiracy to Extort and Extortion with not a single evidence in support.** To hide the crime, **The Government Sealed recordings from Court. Federal crime committed by the Government but used False manufactured evidence to mislead the court committing prosecutional misconduct and violation of the constitutional rights of U.S. Citizens:**
**Victim – Oleg Mitnik and Boris Kotlyarsky!!! 100% similar crime was committed by U.S. citizen Ira Bloom the Murder for Hire Plot as Anatoly Potik. Only one difference – zero time for Anatoly Potik and 240 months for US citizen – Ira Bloom. From the State of Connecticut (10/06/2016) – Hartford Connecticut. U.S Government Justice zero for One – 240 months for the second. More evidence to support the murder for hire: 01/08/2016-01/11/2016-01/14/2016-10/12/2016 by the Hitman/Government Witness.**

Case 1:16-mj-00486-UA   Document 1   Filed 01/22/16   Page 1 of 8

Approved: _____   ~~ORIGINAL~~
          ANDREW MARK THOMAS
          Assistant United States Attorney

Before:   HONORABLE DEBRA FREEMAN
          United States Magistrate Judge
          Southern District of New York

- - - - - - - - - - - - - - - - - - x   **16 MAG   486**
                                    :
UNITED STATES OF AMERICA            :   **COMPLAINT**
                                    :
          - v. -                    :   Violations of
                                    :   18 U.S.C. 1958 and 2
ANATOLY POTIK,                      :
                                    :   COUNTY OF OFFENSE
               Defendant.           :   NEW YORK    **DOC #_____**
                                    :
- - - - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     LUKE HARDISON, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI"), and charges as follows:

COUNT ONE

(Murder-for-Hire)

     1.   From on or about October 31, 2015 to on or about
January 21, 2016, in the Southern District of New York and
elsewhere, ANATOLY POTIK, the defendant, traveled in and caused
another to travel in interstate and foreign commerce, and used
and caused another to use the mail and any facility of
interstate and foreign commerce, with the intent that a murder
be committed in violation of the laws of a State and the United
States, as consideration for the receipt of, as consideration
for a promise or agreement to pay, anything of pecuniary value,
and aided and abetted the same, to wit, POTIK offered money to
an individual in exchange for the murder of a victim, which
arrangement depended in part on use of cellular telephones
operating on interstate networks and in part on international
travel.

     (Title 18, United States Code, Section 1958 and 2.)

16.   Based on physical surveillance conducted on or about January 14, 2016, and an interview of the Victim,[1] and a review of a draft English-language transcription of the January 14, 2016 telephone call from the Victim Cellphone to ANATOLY POTIK, I have learned, in part, the following:

a.   The Victim met the Hitman at Restaurant-2.

b.   The Victim asked the Hitman, in substance and in part, for assurances that the Victim would be safe. The Hitman agreed to call ANATOLY POTIK, the defendant. The Victim dialed POTIK's number on the Victim Cellphone, and handed the Victim Cellphone to the Hitman.

c.   The Hitman said aloud, in substance and in part, (1) Forget about your son-in-law, (2) I intend to get everything to the last penny from you, and (3) I will see you soon.

d.   The Hitman departed Restaurant-3. Shortly thereafter, the Hitman was arrested.

17.   On or about January 20, 2016 and on or about January 21, 2016, the Relative contacted the FBI. Based on conversations with the agent who spoke to the Relative, I have learned the Relative said, in substance and in part, the following:

a.   The Relative was in possession of an audio recording, stored on an electronic recording device, of a conversation between the Hitman and ANATOLY POTIK, the defendant.

b.   The audio recording captured a conversation between POTIK and the Hitman, during which POTIK offered the Hitman money to arrange for the Victim's murder.

c.   The Relative offered to provide the audio recording to law enforcement. The Relative said the Relative gave the tape to a lawyer in Florida ("Lawyer-1"), and the Relative provided the FBI with Lawyer-1's contact information.

---

[1] The Victim's conversation at Restaurant-2 on January 14, 2016, which was conducted primarily in Russian, was audio recorded with the Victim's knowledge. The FBI is currently translating and transcribing the recording; I have not yet reviewed any transcription.

6

§17. On or about January 20-21, 2016

The relative contacted the FBI.

**A)  The relative was in possession of an audio recording stored on an electronic recorded device, of conversations between the Hitman, and Anatoly Potik, the defendant.**

**B)  The audio recording captured a conversation between Potik and the Hitman during which Potik offered the Hitman money to arrange for the Victim's murder.**

**C)  The relative offered to provide the recording to law enforcement.**

# PRIORITY® MAIL ★


UNITED STATES
POSTAL SERVICE®

VISIT US AT USPS.COM®
ORDER FREE SUPPLIES ONLINE

FROM: *Boris Kotlyarsky*
*1900 E 22 street*
*Brooklyn, N.Y.*
*11229*
*Docket # 22-2750 PR*
*PRO SE CASE*

TO: *United States*
*Court of Appeals*
*United States Court House*
*Foley Square # 40*
*New York, N.Y. 10007*
*Docket # 22-2750 PR*
*PRO SE CASE*
*(212) 857-8500*

Label 228, March 2016     FOR DOMESTIC AND INTERNATIONAL USE

---



**PRIORITY MAIL®**

13 Lb 13.6 Oz

**RDC 20**

EXPECTED DELIVERY DAY: 03/16/23

C099

SHIP
TO:
40 FOLEY SQ
NEW YORK NY 10007-1502

USPS SIGNATURE® TRACKING #

9510 8138 9589 3074 3501 61



3509730324-2